UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY SMITH,                                    Case No. 2:21-cv-12070

    Plaintiff,                                  Hon. David M. Lawson

v

COUNTY OF WAYNE, ROBERT J. DONALDSON,
MONICA CHILDS, GENE KARVONEN,
ROGER MUELLER, WALTER LOVE, and
JOHN DEMBINSKI,

    Defendants.

_____/

| | |
|---|---|
| LAW OFFICE OF JARRETT ADAMS, PLLC<br>BY:  JARRETT ADAMS<br>(New York State Bar Number 5455712)<br>**Attorneys for Plaintiff**<br>40 Fulton Street, Floor 7<br>New York, NY 10038<br>Ph and Fax:  646-880-9707<br>JAdams@JarrettAdamsLaw.com | RICE LAW PLLC<br>BY:  PAMELA L. CAMPBELL (P75243)<br>**Counsel for Plaintiff**<br>23205 Gratiot #303<br>Eastpointe, MI 48021<br>Ph:  855-726-5292<br>Pam.rice.law@gmail.com |
| DAVIDDE A. STELLA (P69948)<br>Assistant Wayne County Corporation Counsel<br>JAMES W. HEATH (P65419)<br>Wayne County Corporation Counsel<br>ALLEGRA M. MASON (P77534)<br>Assistant Wayne County Corporation Counsel<br>**Attorneys for Defendants Wayne County and**<br>**Robert Donaldson**<br>500 Griswold St., Floor 30<br>Detroit MI 48226<br>(313) 224-5030<br>dstella@waynecounty.com;<br>jheath@waynecounty.com<br>amason1@waynecounty.com | CUMMINGS, MCCLOREY, DAVIS & ACHO,<br>P.L.C.<br>BY:   JAMES R. ACHO (P62175)<br>      SHANE R. NOLAN (P78008)<br>**Attorneys for Defendants Monica Childs,**<br>**Gene Karvonen, Roger Mueller,**<br>**Walter Love and John Dembinski**<br>17436 College Parkway<br>Livonia, MI 48152-2363<br>Ph:  734-261-2400 / Fax:  734-261-4510<br>jacho@cmda-law.com;<br>snolan@cmda-law.com |

PLUNKETT COONEY
BY: AUDREY J. FORBUSH (P41744)
**Attorney for Defendants County of**
**Wayne and Robert Donaldson**
Plaza One Financial Center
111 E. Court Street - Suite 1B
Flint, MI 48502
(810) 342-7014
(810) 232-3159 - fax
aforbush@plunkettcooney.com

_____/

## ANSWER TO PLAINTIFF'S AMENDED COMPLAINT, SPECIAL AND AFFIRMATIVE DEFENSES, RESERVATION OF ADDITIONAL DEFENSES, DEMAND FOR COMPULSORY JOINDER OF CLAIMS AND JURY RELIANCE ON BEHALF OF DEFENDANTS, MONICA CHILDS, GENE KARVONEN, ROGER MUELLER, WALTER LOVE, AND JOHN DEMBINSKI

Defendants, MONICA CHILDS, GENE KARVONEN, ROGER MUELLER,

WALTER LOVE, and JOHN DEMBINSKI, by and through their attorneys,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C. (who, pursuant to Section

13-11-1 of the Detroit City Code, reserve the right to withdraw as counsel for the

individually named Defendants in the event their representation requests are not

approved by the Detroit City Council), and answer Plaintiff's Amended Complaint

as follows:

### INTRODUCTION

1.      This is a federal civil rights action to obtain compensatory damages,

punitive damages, costs and attorneys' fees for the unlawful detention of, use of

fabricated evidence against, malicious prosecution of, and abuse of process against

Larry Smith, resulting in Mr. Smith being held in custody in violation of his constitutional rights for almost twenty-seven years. This action also seeks injunctive and equitable relief against the County of Wayne to reform the unconstitutional policy and/or custom that was the moving force behind the constitutional rights violations suffered by Mr. Smith.

**Defendants respond that the allegations contained therein constitute conclusions of law and, therefore, do not require a response. To the extent that the allegations require a response, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

## JURISDICTION

2. This action is brought under 42 U.S.C. § 1983 to address the deprivation under color of law of Larry Smith's rights as secured by the United States Constitution and under state law.

**Defendants respond that the allegations contained therein constitute conclusions of law and, therefore, do not require a response. To the extent that the allegations require a response, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs**

3. The Court has jurisdiction over Larry Smith's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over Mr. Smith's state law claims pursuant to 28 U.S.C. § 1367.

**Defendants respond that the allegations contained therein constitute conclusions of law and, therefore, do not require a response. To the**

**extent that the allegations require a response, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

4.      Venue is proper under 28 U.S.C. § 1391(b) because the Eastern District of Michigan is the judicial district where the constitutional rights violations suffered by Larry Smith occurred.

**Defendants respond that the allegations contained therein constitute conclusions of law and, therefore, do not require a response. To the extent that the allegations require a response, Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

## PARTIES

5.      Plaintiff, Larry Smith is a citizen of the United States of America who at all relevant times resided in Michigan.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

6.      Defendant, County of Wayne ("Defendant County"), is a body corporate under Article VII, Section 1 of the Michigan Constitution. At all relevant times, Defendant County was the principal and employer of Defendant, Robert J. Donaldson who acted pursuant to Defendant County's policies and customs.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

7.     Defendant, Robert J. Donaldson ("Defendant Donaldson"), at all relevant times, was an adult resident of the State of Michigan and was an assistant prosecuting attorney for the Wayne County Prosecutor's Office ("WCPO"), which is a department of Defendant County.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

8.     Defendant, Monica Childs ("Defendant Childs"), at all relevant times, was an adult resident of the State of Michigan and was a Detroit Police Department ("DPD") detective.

**Defendants admit the allegations contained therein.**

9.     Defendant, Gene Karvonen ("Defendant Karvonen"), at all relevant times, was an adult resident of the State of Michigan and was a DPD police officer.

**Defendants admit the allegations contained therein.**

10.    Defendant, Roger Mueller ("Defendant Mueller"), at all relevant times, was an adult resident of the State of Michigan and was a DPD police officer.

**Defendants admit the allegations contained therein.**

11.    Defendant, Walter Love ("Defendant Love"), at all relevant times, was an adult resident of the State of Michigan and was a DPD police officer.

**Defendants admit the allegations contained therein.**

12.     Defendant, John Dembinski ("Defendant Dembinski"), at all relevant times, was an adult resident of the State of Michigan and was a DPD police officer.

**Defendants admit the allegations contained therein.**

## FACTS

### Facts Pertaining to the Unlawful Detention of, the Use of Fabricated Evidence against, the Malicious Prosecution of, and the Abuse of Process against Larry Smith

13.     On March 24, 1994, Kenneth Hayes ("Hayes") was fatally shot in the City of Detroit.

**Defendants admit the allegations contained therein.**

14.     Larry Smith did not shoot Hayes.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

15.     There was no reason to suspect or believe that Larry Smith shot Hayes.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

16.     The same day as the shooting of Hayes, Larry Smith turned himself in to the DPD after learning that the DPD were looking for him in connection with the shooting of Hayes.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

17.     Defendant Childs interviewed Larry Smith regarding the shooting of Hayes.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

18.     After the interview of Larry Smith, Defendant Childs prepared written notes of the interview.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

19.     In her notes of the interview, Defendant Childs claimed that when she lied to Larry Smith and told him that witnesses to the shooting of Hayes saw his face and could identify him, Mr. Smith responded that no one could have seen his face because he had a hood on when the shooting happened.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

20.     In her notes of the interview, Defendant Childs claimed that Larry Smith's statement about having a hood on was incriminating.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

21.    On March 25, 1994, Larry Smith was charged with first-degree murder and possession of a firearm in the commission of a felony for the shooting of Hayes.

**Defendants admit that Plaintiff was charged with first-degree murder and possession of a firearm in the commission of a felony in relation to the shooting of Hayes.**

22.    Larry Smith was detained pursuant to legal process on March 27, 1994.

**Defendants admit the allegations contained therein.**

23.    Between Larry Smith's detention in March 1994 and his trial in November 1994, Defendant Donaldson asked Defendant Childs numerous times for her notes of the interview because they were not in Mr. Smith's criminal case file.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

24.    Defendant Childs finally produced the notes of the interview to Defendant Donaldson in August 1994, claiming to have found the notes of the interview in a different criminal case file.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

25.    Defendant Childs' notes of the interview were used against Larry Smith during his trial for the shooting of Hayes.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

26.    Defendant Childs never showed Larry Smith her notes of the interview.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

27.    Larry Smith never told Defendant Childs that he had a hood on at the time of the shooting of Hayes.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

28.    Defendant Karvonen, Defendant Mueller, and/or Defendant Love claimed to find seven spent shell casings from a .40 caliber weapon in the area where Hayes was shot.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

29.    The same day as the shooting of Hayes, the DPD conducted a search of the home where Larry Smith resided.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

30.     During the search, Defendant Dembinski claimed to find an empty box of .40 caliber bullets.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

31.     During the search, DPD Officer Keith Chisholm ("Chisholm") claimed to find one spent .40 caliber shell casing in an empty clothes hamper in Larry Smith's bedroom.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

32.     Chisholm took the spent .40 caliber shell casing from the clothes hamper and placed it in his pocket.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

33.     Keeping the spent .40 caliber shell casing in his pocket, Chisholm went to the DPD evidence room and put the casing in an envelope without placing an identifying mark on the casing.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

34.     The one spent .40 caliber shell casing allegedly found by Chisholm was kept separately in the DPD evidence room from the seven spent .40 caliber shell casings allegedly found in the area where Hayes was shot.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

35.     Prior to the trial of Larry Smith, the DPD removed the one spent .40 caliber shell casing allegedly found by Chisholm from the DPD evidence room and returned it several days later.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

36.     DPD did not remove any of the seven spent .40 caliber shell casings allegedly found in the area where Hayes was shot from the DPD evidence room.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

37.     Larry Smith did not have any spent .40 caliber shell casings in his bedroom or anywhere in his residence.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

38.     Larry Smith did not have an empty box of .40 caliber bullets in his bedroom or anywhere in his residence.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

39.     The trial of Larry Smith for the shooting of Hayes began on November 22, 1994.

**Defendants admit the allegations contained therein.**

40.     At the trial of Larry Smith, Defendant Karvonen and Defendant Mueller falsely testified that they found spent .40 caliber shell casings in the area where Hayes was shot.

**Defendants deny any allegations of false testimony by Defendants.**

41.     The spent .40 caliber shell casings allegedly found by Defendant Karvonen, Defendant Mueller, and/or Defendant Love were used against Larry Smith during his trial.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

42.     The report created by Defendant Mueller about allegedly finding the spent .40 caliber shell casings was used against Larry Smith during his trial.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

43.     At the trial of Larry Smith, Chisholm falsely testified that he found one spent .40 caliber shell casing in an empty clothes hamper in Mr.  Smith's bedroom.

**Defendants deny any allegations of false testimony.**

44.     The one spent .40 caliber shell casing allegedly found by Chisholm was used against Larry Smith during his trial.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

45.     At the trial of Larry Smith, Defendant Dembinski falsely testified that he found an empty box of .40 caliber bullets in Mr. Smith's bedroom.

**Defendants deny any allegations of false testimony.**

46.     The empty box of .40 caliber bullets allegedly found by Defendant Dembinski was used against Larry Smith during his trial.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

47.     The bullets recovered from Hayes's body after the shooting were .32 caliber and could not have been fired from a .40 caliber weapon.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

48.     Edward Chico Allen ("Allen") was in the DPD headequarters 9th floor lockup at the same time as Larry Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

49.     Allen was awaiting trial on charges of armed robbery for which he faced a possible sentence of life in prison.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

50.     Defendant Donaldson and/or Defendant Childs promised Allen leniency in his criminal case if he falsely testified that Larry Smith bragged about shooting Hayes.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

51.     Defendant Donaldson and/or Defendant Childs promised Allen housing at the DPD headquarters 9th floor lock-up instead of the jail if he falsely testified that Larry Smith bragged about shooting Hayes.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

52.     While housed at the DPD headquarters 9th floor lock-up, Allen was able to have outside visitors bring him food and drugs.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth**

**of the allegations and leaves Plaintiff to his proofs.**

53.     While housed at the DPD headquarters 9th floor lock-up, Allen was able to have guests brought to the witness rooms to have sex.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

54.     At the trial of Larry Smith, Allen falsely testified that Mr. Smith had confessed to shooting Hayes.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

55.     At no time did Larry Smith tell Allen that he shot Hayes.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

56.     On November 25, 1994, Larry Smith was convicted of first-degree murder and possession of a firearm in the commission of a felony.

> **Defendants admit the allegations contained therein.**

57.     After Allen falsely testified against Larry Smith, Defendant Childs and Allen had a sexual relationship.

> **Defendants deny the allegations contained therein for the reason that same are untrue.**

58.     Defendant Childs would remove Allen from the DPD headquarters 9th floor lock-up under the pretext of police business and then take Allen to a hotel to have sex.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

59.     On December 22, 1994, Larry Smith was sentenced to life in prison without the possibility of parole.

**Defendants admit the allegations contained therein.**

60.     In 2003, Allen admitted to Larry Smith that he lied during the trial when he testified that Mr. Smith confessed to shooting Hayes.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

61.     When the significant error rates by the DPD Crime Laboratory became public knowledge in 2008 after an audit by the Michigan State Police ("MSP"), Larry Smith requested that the ballistics evidence from the Hayes shooting case be re-tested by the MSP.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

62.     The MSP's review of the ballistics evidence determined that the one spent .40 caliber shell casing allegedly found in Larry Smith's bedroom had been

destroyed, while the seven spent .40 caliber shell casings allegedly found in the area where Hayes had been fatally shot had not been destroyed.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

63.     After recognizing that Larry Smith's criminal trial was unfair, the WCPO agreed that Mr. Smith's convictions should be vacated and that all charges against Mr. Smith should be dismissed.

> **Defendants admit only that the Wayne County Prosecutor's Office moved to vacate Plaintiff's conviction.**

64.     On February 4, 2021, the Third Judicial Circuit Court of Michigan terminated the criminal proceedings against Larry Smith in his favor by vacating his convictions, dismissing all charges against him, and ordering that he immediately be released from prison.

> **Defendants admit the allegations contained therein.**

65.     Larry Smith was released from prison on February 4, 2021.

> **Defendants admit the allegations contained therein.**

66.     Larry Smith was in custody from March 24, 1994 to February 4, 2021.

> **Defendants admit the allegations contained therein.**

67.     The conduct of Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski, as set

forth in the preceding paragraphs, resulted in damages and injuries to Larry Smith, including but not limited to loss of liberty, physical injury and sickness, and severe emotional pain and suffering.

**Defendants deny the allegations contained therein as to these Defendants for the reason that same are untrue.**

68.   The conduct of Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski, as set forth in the preceding paragraphs, was a proximate cause of Larry Smith's damages and injuries.

**Defendants deny the allegations contained therein as to these Defendants for the reason that same are untrue.**

69.   The conduct of Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski, as set forth in the preceding paragraphs, was objectively unreasonable, intentional, purposeful, knowing, willful, wanton, and/or reckless, and was undertaken with malice and/or reckless disregard of Larry Smith's constitutional rights.

**Defendants deny the allegations contained therein as to these Defendants for the reason that same are untrue.**

**Facts Pertaining to Defendant County's Unconstitutional Policy and/or Custom of the WCPO Obtaining False Statements and False Testimony  for Use Against Criminal Defendants**

70.     The policymakers for Defendant County and the WCPO are the Wayne County Executive, the Wayne County Commission, and/or the Wayne County Prosecutor.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

71.     As will be set forth below, Defendant County had/has a policy of the WCPO obtaining false statements and false testimony for use against criminal defendants.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

72.     As will be set forth below, Defendant County had/has a custom of tolerance and/or acquiescence of the WCPO obtaining false statements and false testimony for use against criminal defendants.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

73.     Defendant County's policymakers were/are aware of the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants prior to and after the constitutional violations suffered by Larry Smith, but have failed to take action to remedy the problem.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth**

**of the allegations and leaves Plaintiff to his proofs.**

74.     As will be set forth below, Defendant County had/has a policy of the WCPO concealing the fact that the statements and testimony were false from courts and criminal defendants.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

75.     As will be set forth below, Defendant County had/has a custom of tolerance and/or acquiescence of the WCPO concealing the fact that the statements and testimony were false from courts and criminal defendants.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

76.     Defendant County's policymakers were/are aware of the policy and/or custom of the WEPO concealing the fact that the statements and testimony were false from courts and criminal defendants prior to and after the constitutional violations suffered by Larry Smith, but have failed to take action to remedy the problem.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

77.     Defendant County, the WCPO and the DPD had/have a pattern and practice where prisoner informants were/are planted in the DPD headquarters 9th floor lock-up to lie by claiming that their fellow prisoners confessed to crimes.

**Defendants deny the allegations contained therein as to the Detroit Police Department for the reason that same are untrue.**

78.     Defendant County, the WCPO and the DPD have used these fabricated confessions against criminal defendants to bolster weak cases, such as the case against Larry Smith.

**Defendants deny the allegations contained therein as to the Detroit Police Department for the reason that same are untrue.**

79.     Defendant County, the WCPO, and the DPD have used these fabricated confessions to obtain criminal convictions in cases where the conviction could not have been obtained without the fabricated confessions, such as the case against Larry Smith.

**Defendants deny the allegations contained therein as to the Detroit Police Department for the reason that same are untrue.**

80.     Defendant County, the WCPO, and the DPD did not use these fabricated confessions for the purpose of bringing criminal offenders to justice, but instead to obtain criminal convictions regardless of innocence, such as the case against Larry Smith.

**Defendants deny the allegations contained therein as to the Detroit Police Department for the reason that same are untrue.**

81.     The prisoner informants falsely testified to the fabricated confessions at the criminal trials of their fellow prisoners, such as the case against Larry Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

82.     Defendant County, the WCPO, and/or the DPD provided favors and/or lenient treatment to the prisoner informants in exchange for the informants fabricating confessions from their fellow prisoners and/or for falsely testifying to the fabricated confessions.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

83.     Prisoner informants housed at the DPD headquarters 9th floor lock-up received favors not available at the jail or to non-informants at the lock-up in exchange for the informants' false statements and/or false testimony.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

84.     Prisoner informants have been able to have outside visitors bring them food and drugs.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

85.    Prisoner informants have been able to invite guests to the DPD police headquarters for sex.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

86.    For example, Allen is a long-time provider of false statements and testimony for Defendant County, the WCPO, and/or the DPD, both before and after he made false statements about and falsely testified against Larry Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

87.     Defendant County, the WCPO, and/or the DPD provided Allen with immunity from prosecution, sexual favours, drugs, food, and/or money in exchange for Allen's false statements and false testimony.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

88.    Besides the case against Larry Smith, Allen provided false statements and false testimony in numerous other murder cases for Defendant County, the WCPO, and/or the DPD.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

89.     Allen was shown police reports so that he could falsely state and testify that his fellow prisoners confessed to the information contained in the police reports.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

90.     Another example of prisoner informants to whom Defendant County, the WCPO, and/or the DPD gave leniency in exchange for fabricated prisoner confessions is Joe Twilley ("Twilley").

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

91.     Twilley acted as a prisoner informant providing false statements and/or false testimony in approximately 20 homicide cases.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

92.     In exchange for acting as a prisoner informant, Defendant County, the WCPO, and the DPD agreed that Twilley's criminal sentence of 12-25 years should be reduced to less than five years and that Twilley be released from custody.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

93.     On July 27, 1994, the Recorders Court for the County of Wayne held an *in camera* hearing regarding Twilley acting as an informant for Defendant County, the WCPO, and/or the DPD.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

94.     Rosemary Gordon ("Gordon") appeared for the WCPO at the hearing.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

95.     Gordon agreed that the hearing should be a suppressed hearing.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

96.     During the hearing, DPD Sergeant Dale Collins testified that Twilley had testified in at least 20 cases.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

97.     During the hearing, Defendant Collins testified that Twilley had assisted with numerous homicide investigations.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

98.     During the hearing, Defendant Collins testified that there were several homicide cases that could not have been prosecuted with Twilley's testimony, including a recent homicide case.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

99.     During the hearing, Gordon stated that Twilley had been extremely helpful to WCPO prosecutor Thomas Beadle ("Beadle") in an arson/homicide case.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

100.    During the hearing, Gordon stated that Beadle supported consideration for Twilley.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

101.    During the hearing, Gordon stated that she learned from other people who worked for the WCPO that Twilley had come to court to testify on numerous occasions.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

102.    On July 29, 1994, the Recorders Court for Defendant County held a sentencing hearing for Twilley.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

103.   Michael J. King ("King") appeared for the WCPO at the hearing.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

104.   During the hearing, the Court re-sentenced Twilley to less than five years and ordered his immediate release so that he did not have to return to prison.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

105.   King did not object to Twilley's re-sentencing and his release from prison.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

106.   Another example of prisoner informants to whom Defendant County, the WCPO, and/or the DPD gave leniency in exchange for prisoner confessions is John Davis, also known as John Hewitt-El ("Hewitt-El").

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

107.   Hewitt-El falsely testified in four murder cases prosecuted by Defendant County, the WCPO, and the DPD.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

108.   On September 6, 1995, attorney William Daniel ("Daniel") sent a letter to WCPO Chief Prosecuting Attorney John O'Hair ("O'Hair") about Hewitt-El's false testimony.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

109.   In the letter Daniel stated that he was the attorney for Anton Mann ("Mann") who was charged with murder by WCPO attorney Tom Dawson ("Dawson").

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

110.   In the letter, Daniel stated that Dawson told him to speak to Mary O'Connell ("O'Connell") who was the attorney for Hewitt-El.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

111.   In the letter, Daniel stated that Hewitt-El testified during a Preliminary Examination Hearing that Mann had confessed to the murder when Mann and Hewitt-El were both in custody at the 9th floor lockup of DPD headquarters.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

112.   In the letter, Daniel stated that O'Connell told him that Hewitt-El recanted his testimony about Mann's admission and would take the Fifth Amendment at Mann's trial.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

113.   In the letter, Daniel stated that O'Connell told him that Hewitt-El is a witness in three or four other murder cases where Hewitt-El falsely claimed that the defendants had confessed to the murders to Hewitt-El while they were in custody at the 9th floor lockup of DPD headquarters.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

114.   In the letter, Daniel stated that he spoke with attorneys Robert Slameka and Ben Gorek who also represented clients whom Hewitt-El falsely testified against.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

115.   Daniel concluded the letter by stating that he was seeking the WCPO's

guidance and to raise concern about fabricated confessions on behalf of his client,

as an officer of the court, and as a citizen of the community.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

116.   In 1998, Hewitt-El wrote a letter to an individual named Islam Lacino-

X.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

117.   In the letter, Hewitt-El identified Twilley, Oliver Cowan ("Cowan"),

Allen Bay, and an individual named Terry as inmate informants on the 9th floor

lockup at DPD headquarters.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

118.   In the letter, Hewitt-El stated that both the DPD and the WCPO knew

about inmate informants in the 9th floor lockup at DPD headquarters providing false

confessions in exchange for favors and deals.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

119.   On June 27, 2001, Hewitt-El signed an affidavit regarding his false testimony in criminal cases.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

120.   In the affidavit, Hewitt-El stated that DPD detectives from the homicide unit promised to help him if he testified to overhearing confessions from his fellow inmates in the 9th flood lockup of DPD headquarters.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

121.   In the affidavit, Hewitt-El stated that DPD detectives from the homicide unit provided him with the information he would need to testify.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

122.   On November 25, 2003, there was a Motion for Relief from Judgment Hearing in the criminal proceedings against Ramon Ward.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

123.   Janet Napp appeared for the WCPO at the Motion for Relief from Judgment Hearing.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

124.   Hewitt-El testified at the Motion for Relief from Judgment Hearing.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

125.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that Cowan told him that he would receive a deal in his murder case like Cowan and Twilley did if he helped in the Andrew Grayson murder case.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

126.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that Twilley told him that the DPD gave Twilley information that Twilley could testify to in exchange for a plea deal in Twilley's criminal case.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

127.   Hewitt-El testified at the Motion for Relief from Judgment Hearing that the DPD supplied him with the information that he could testify to in three different cases, but Hewitt-El took the Fifth Amendment as to whether he lied in the three cases.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth**

**of the allegations and leaves Plaintiff to his proofs.**

128.    Hewitt-El testified at the Motion for Relief from Judgment Hearing that the DPD provided him with conjugal visits while in the 9th floor lockup of the DPD headquarters in exchange for his help in the criminal cases.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

129.    Hewitt-El testified at the Motion for Relief from Judgment Hearing that he received marijuana and alcohol while in the 9th floor lockup of DPD headquarters in exchange for his help in the criminal cases.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

130.    Another example of inmate informants to whom Defendant County, the WCPO and/or the DPD gave leniency in exchange for fabricated inmate confessions is Cowan.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

131.    Cowan falsely testified in six murder cases prosecuted by the WCPO and the DPD.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

132.   In exchange for acting as an inmate informant, the WCPO and the DPD agreed that Cowan's possible criminal sentence of 5-15 years be limited to only one year in jail and one year of probation.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

133.   In 1995, Robert Agacinski ("Agacinski") was the Deputy Chief Assistant Prosecutor for the WCPO.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

134.   In 1995, several attorneys for criminal defendants expressed concerns to Agacinski about the practice of placing prisoner informants in the DPD headquarters 9th floor lockup to obtain confessions from their fellow prisoners.

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leave Plaintiff to his proofs.**

135.   In response to the concerns expressed by the attorneys, Agacinski wrote a memorandum to WCPO Chief of Operations Richard Padzieski ("Padzieski").

> **Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

136.   In the memorandum, Agacinski stated that he had been told that prison informants lie about overhearing confessions and/or fabricate confessions to receive deals or favors promised to them.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

137.   In the memorandum, Agacinski identified Twilley and Cowan as prisoner informants who testified to fellow prisoner confessions in several criminal cases.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

138.   In the memorandum, Agacinski stated that Twilley and Cowan obtained a confession in a criminal case against Agacinski had tried the prior month, which likely was a reference to the Ramon Ward criminal case.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

139.   In addition to Twilley and Hewitt-El, Agacinski's memo identified Solomon Tolbert who acted as a prisoner informant.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

140.   In response to Agacinski's memorandum, WCPO Chief of Research, Training, and Appeals Timothy A. Baughman ("Baughman") also wrote a memorandum to Padzieski.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

141.  In his memorandum, Baughman noted that prisoner informants frequently provide false testimony of other prisoners' confessions to obtain compensation for their testimony.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

142.   Numerous individuals have been wrongfully convicted as a result of Defendant County's widespread policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants, and concealing the fact that the statements and testimony were false from courts and criminal defendants, including but not limited to Larry Smith and the additional examples set forth below.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

143.   Bernard Howard was wrongfully convicted of murder based upon a prisoner informant's false statement that Mr. Howard's co-defendants had implicated Mr. Howard in the crime.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

144.   Ramon Ward was wrongfully convicted of murder based upon the false testimony from two prisoner informants that Mr. Ward had confessed to the crime.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

145.   Lacino Hamilton was wrongfully convicted of murder based upon the false testimony from a prisoner informant that Mr. Hamilton had confessed to the crime.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

146.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts in criminal cases and from criminal defendants was and/or is so widespread that 27 wrongfully-convicted individuals who spent a total of 415 years wrongfully imprisoned have been exonerated since 2018.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

147.   In 2020, a total of 120 wrongfully-convicted individuals were exonerated in the entire United States of America.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

148.   Defendant County and its policymakers had/have actual knowledge of the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts in criminal cases and from criminal defendants, yet have taken no action to remedy the problems.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

149.   Defendant County and its policymakers approved the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants defendants and concealing the fact that the statements and testimony were false from courts in criminal cases and from criminal defendants, and were deliberately indifferent to the resulting constitutional violations including, but not limited to, unlawful detentions pursuant to legal process, the use of fabricated evidence at criminal trials, and malicious prosecutions.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proof.**

150. Defendant County and its policymakers disregarded the known and obvious consequence of the constitutional violations that resulted from the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts in criminal cases and from criminal defendants.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

151. Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts in criminal cases and from criminal defendants was a proximate cause of Larry Smith's damages and injuries.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

152. Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts in criminal cases and from criminal defendants may continue to this day.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

## CAUSES OF ACTION

### COUNT I:  42 U.S.C. § 1983 – Unlawful Detention Pursuant to Legal Process Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love and Defendant Dembinski

153.   Larry Smith hereby re-alleges and incorporates by reference each of

the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 152, as if fully set forth herein.**

154.   Larry Smith was detained pursuant to legal process based upon

evidence fabricated by the above-named individual Defendants.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

155.   There was neither probable cause nor reasonable suspicion to detain

Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

156.   The above-named individual Defendants acted under of color of law.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

157.   The unlawful detention of Larry Smith resulted in damages and injuries to Mr. Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

158.   The unlawful detention of Larry Smith was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants, as set forth above.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

### COUNT II:  42 U.S.C. § 1983 – Due Process/Fair Trial:  Fabrication of Evidence Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski

159.   Larry Smith hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 158, as if fully set forth herein.**

160.   The above-named individual Defendants knowingly fabricated evidence that was used against Larry Smith at his criminal trial.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

161.   The evidence fabricated by the above-named individual Defendants affected the decision of the jury which convicted Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

162.   The above-named individual Defendants acted under color of law.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

163.   The fabrication of evidence by the above-named individual Defendants resulted in damages and injuries to Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

164.   The fabrication of evidence against Larry Smith was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants, as set forth above.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

**COUNT III:  42 U.S.C. § 1983 – Malicious Prosecution Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski**

165.   Larry Smith hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 164, as if fully set forth herein.**

166.   A criminal proceeding was initiated against Larry Smith and the above-named individual Defendants made, influenced, and/or participated in the decision to prosecute.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

167.   There was a lack of probable cause for the criminal prosecution against Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

168.   As a consequence of the legal proceeding, Larry Smith suffered a deprivation of liberty apart from the initial seizure.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

169.   The criminal proceedings against Larry Smith have been resolved in Mr. Smith's favor.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

170.   The malicious prosecution by the above-named individual Defendants resulted in damages and injuries to Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

171.   The malicious prosecution of Larry Smith was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants, as set forth above.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

**COUNT IV:  42 U.S.C. § 1983 – Conspiracy Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski**

172.   Larry Smith hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 171, as if fully set forth herein.**

173.   The above-named individual Defendants had a single plan to convict Larry Smith for the shooting of Hayes.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

174.   The above-named individual Defendants shared a conspiratorial objective to deprive Larry Smith of his constitutional rights.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

175.   The above-named individual Defendants committed overt acts in furtherance of the conspiracy.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

176.   The above-named individual Defendants acted under color of law.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

177.   The conspiracy to deprive Larry Smith of his constitutional rights resulted in damages and injuries to Mr. Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs**.

178.   The conspiracy to deprive Larry Smith of his constitutional rights was undertaken pursuant to Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants, as set forth above.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs**.


**COUNT V:  42 U.S.C. § 1983 – Failure to Intervene Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski**

179.   Larry Smith hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 178, as if fully set forth herein.**

180.   As set forth above, the above-named individual Defendants unlawfully detained Larry Smith pursuant to legal process, used fabricated evidence against Mr. Smith, and maliciously prosecuted Mr. Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

181.   Each above-named individual Defendant observed and/or had reason to know that Larry Smith was unlawfully detained pursuant to legal process, had fabricated evidence used against him, and was maliciously prosecuted.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

182.   Each above-named individual Defendant had an opportunity to intervene in the unlawful detention of Larry Smith, the use of fabricated evidence against Mr. Smith, and the malicious prosecution of Mr. Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

183.   Each above-named individual Defendant failed to intervene in the unlawful detention of Larry Smith, the use of fabricated evidence against Mr.

Smith, and the malicious prosecution of Mr. Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

184.   Each above-named individual Defendant acted under color of law.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

185.   The failure to intervene in the constitutional violations suffered by

Larry Smith resulted in damages and injuries to Mr. Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

186.   The failure to intervene in the constitutional violations suffered by

Larry Smith was undertaken pursuant to Defendant County's policy and/or custom

of the WCPO obtaining false statements and false testimony for use against criminal

defendants, as set forth above.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

### COUNT VI:  42 U.S.C. § 1983 – Policy and/or Custom of the WCPO Fabricating Evidence and Suppressing Evidence Against Defendant County

187.   Larry Smith hereby re-alleges and incorporates by reference each of

the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 186, as if fully set forth herein.**

188. As set forth above, the above-named individual Defendants unlawfully detained Larry Smith pursuant to legal process, used fabricated evidence against Mr. Smith, and maliciously prosecuted Mr. Smith.

**Defendants deny the allegations contained therein as to these Defendants for the reason that same are untrue.**

189. As set forth above, Defendant County had/has a policy of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

190. As set forth above, Defendant County had/has a custom of tolerance and/or acquiescence of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

191. Defendant County made a deliberate choice to have a policy and/or custom of the WCPO obtaining false statements and false testimony for use against

criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

192.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants was the moving force behind the unlawful detention of Larry Smith, the use of fabricated evidence against Mr. Smith, and the malicious prosecution of Mr. Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

193.   Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants caused the unlawful detention of Larry Smith, the use of fabricated evidence against Mr.  Smith, and the malicious prosecution of Mr. Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

194.    Defendant County's policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants and concealing the fact that the statements and testimony were false from courts and criminal defendants resulted in damages and injuries to Larry Smith.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

### COUNT VII:  Michigan State Law – Malicious Prosecution  Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski

195.    Larry Smith hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 194, as if fully set forth herein.**

196.    The above-named individual Defendants caused, initiated, instituted, and/or continued a criminal prosecution against Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

197.    The criminal proceedings against Larry Smith terminated in Mr. Smith's favor.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

198.    There was no probable cause for causing, initiating, instituting, and/or continuing the criminal prosecution and/or proceeding against Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

199.    The above-named individual Defendants caused, initiated, instituted, and/or continued the criminal prosecution and/or proceeding against Larry Smith with malice and/or a purpose other than that of bringing Mr. Smith to justice.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

200.    Larry Smith suffered a deprivation of liberty as a result of the criminal prosecution and/or proceeding.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

201.    Larry Smith suffered a special injury in the form of a seizure of his person.

**Defendants neither admit nor deny the allegations therein as Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations and leaves Plaintiff to his proofs.**

202.    The above-named individual Defendants are liable to Larry Smith for treble damages pursuant to Michigan Compiled Laws Annotated 600.2907.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

**COUNT VIII:  Michigan State Law – Abuse of Process Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love, and Defendant Dembinski**

203.   Larry Smith hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 202, as if fully set forth herein.**

204.   The above-named individual Defendants acted with an ulterior purpose in the criminal prosecution and/or proceeding against Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

205.   The above-named individual Defendants acted improperly and/or irregularly in the use of process during the criminal prosecution and/or proceeding against Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

206.   The above-named individual Defendants' abuse of process resulted in damages and injuries to Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

**COUNT IX:  Michigan State Law – Intentional Infliction of Emotional Distress Against Defendant Donaldson, Defendant Childs, Defendant Karvonen, Defendant Mueller, Defendant Love and Defendant Dembinski**

207.   Larry Smith hereby re-alleges and incorporates by reference each of the preceding paragraphs as if fully restated herein.

**Defendants reallege and restate the answers to the allegations contained in paragraphs 1 through 206, as if fully set forth herein.**

208.   The above-named individual Defendants engaged in extreme and outrageous conduct.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

209.   The above-named individual Defendants acted with intent and/or recklessness.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

210.   The above-named individual Defendants' conduct caused severe emotional distress to Larry Smith.

**Defendants deny the allegations contained therein for the reason that same are untrue.**

WHEREFORE, Defendants, MONICA CHILDS, GENE KARVONEN, ROGER MUELLER, WALTER LOVE and JOHN DEMBINSKI, request that Plaintiff's Complaint be dismissed, together with costs and attorney fees so wrongfully incurred.

Respectfully submitted,

s/ James R. Acho   (P62175)
s/ Shane R. Nolan  (P78008)
Cummings, McClorey, Davis & Acho, P.L.C.
**Defendants Monica Childs, Gene Karvonen,**
**Roger Mueller, Walter Love,  and**
**John Dembinski**
17436 College Parkway
Livonia, MI 48152
Phone:  (734) 261-2400
jacho@cmda-law.com; snolan@cmda-law.com

Date:  February 7, 2022

## SPECIAL AND AFFIRMATIVE DEFENSES

Defendants, MONICA CHILDS, GENE KARVONEN, ROGER MUELLER, WALTER LOVE and JOHN DEMBINSKI, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C. state the following as their affirmative defenses:

1.      Plaintiff has or may have failed to state a claim against Defendants upon which relief can be granted.

2.      The detention, arrest, imprisonment, and prosecution of Plaintiff was supported by reasonable suspicion and/or probable cause.

3.      Any injury suffered by Plaintiff was proximately cause by his own wrongdoing. Defendants are not the direct or proximate cause of Plaintiff's damages.

4.      The applicable statute of limitations lapsed or may have lapsed prior to the filing of Plaintiff's Complaint with respect to some or all of Plaintiff's claims.

5.      Plaintiff failed or may have failed to mitigate his damages.

6.      The alleged deprivation was not an established right and/or there was no constitutional violation and defendant police officer(s) acted in a reasonably objective manner. Further, he/she/they acted in good faith, without malice or intent to harm, or deliberate indifference to Plaintiff's Constitutional rights. Therefore, the defendant police officer(s) is/are shielded from liability by the doctrine of qualified immunity.

7.      Plaintiffs have or may have failed to join every legal and equitable claim arising from the incident central to this lawsuit.

8.      Defendant police officer(s) acted in good faith and did not withhold any material evidence, exculpatory or inculpatory, regarding the incident alleged in Plaintiff's Complaint.

9.      Defendants are or may be entitled to a set-off for any financial recovery to Plaintiff in administrative proceedings under the Michigan Wrongful Imprisonment Compensation Act, MCL 691.1751 *et seq*.

10.      Some or all of Plaintiff's claims are or may be barred by collateral estoppel.

11.      There was or may not have been state action involved in the incident alleged in Plaintiff's Complaint.

12.     Some or all of Plaintiff's claims are or may be barred by waiver release because Plaintiff consented to being interviewed or interrogated and knowingly opted not to have legal counsel present during Plaintiff's interview/interrogation.

13.     There exists no genuine issue of material fact as to any of the Plaintiff's claims and/or allegations.

Respectfully submitted,

<u>s/ James R. Acho</u>   (P62175)
<u>s/ Shane R. Nolan</u>  (P78008)
Cummings, McClorey, Davis & Acho, P.L.C.
**Defendants Monica Childs, Gene Karvonen,**
**Roger Mueller, Walter Love,  and**
**John Dembinski**
17436 College Parkway
Livonia, MI 48152
Phone:  (734) 261-2400
jacho@cmda-law.com; snolan@cmda-law.com

Date:  February 7, 2022

## **RESERVATION OF ADDITIONAL DEFENSES**

Defendants, MONICA CHILDS, GENE KARVONEN, ROGER MUELLER, WALTER LOVE and JOHN DEMBINSKI, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., reserve the right to assert and file any affirmative and special defenses which may become known by research, investigation, discovery proceedings in accordance with the rules and practices of this Court or otherwise. Further, Defendants do not waive any deficiency or omission in any pleadings filed by any other party to this suit regardless of when filed.

Respectfully submitted,

s/ James R. Acho   (P62175)
s/ Shane R. Nolan   (P78008)
Cummings, McClorey, Davis & Acho, P.L.C.
**Defendants Monica Childs,Gene Karvonen,**
**Roger Mueller, Walter Love,**
**and John Dembinski**
17436 College Parkway
Livonia, MI 48152
Phone:  (734) 261-2400
jacho@cmda-law.com; snolan@cmda-law.com

Date:  February 7, 2022


## DEMAND FOR COMPULSORY JOINDER OF CLAIMS

Defendants, MONICA CHILDS, GENE KARVONEN, ROGER MUELLER, WALTER LOVE and JOHN DEMBINSKI, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., demand that Plaintiff join in this action all claims Plaintiff may have against any Defendant arising from the subject matter of this action and those claims which do not require for adjudication the presence of third parties over whom the Court cannot exercise jurisdiction.

Respectfully submitted,

s/ James R. Acho   (P62175)
s/ Shane R. Nolan   (P78008)
Cummings, McClorey, Davis & Acho, P.L.C.
**Defendants Monica Childs,Gene Karvonen,**
**Roger Mueller, Walter Love, and Dembinski**
17436 College Parkway
Livonia, MI 48152
Phone:  (734) 261-2400
February 7, 2022            jacho@cmda-law.com; snolan@cmda-law.com

## RELIANCE ON JURY DEMAND

Defendants, MONICA CHILDS, GENE KARVONEN, ROGER MUELLER, WALTER LOVE and JOHN DEMBINSKI, by and through their attorneys, CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., rely on Plaintiff's demand for jury trial in this cause of action. Defendants reserve the right to withdraw their Jury Demand at any time prior to trial.

Respectfully submitted,

s/ James R. Acho   (P62175)
s/ Shane R. Nolan   (P78008)
Cummings, McClorey, Davis & Acho, P.L.C.
**Defendants Monica Childs, Gene Karvonen,
Roger Mueller, Walter Love, and
John Dembinski**
17436 College Parkway
Livonia, MI 48152
Phone:  (734) 261-2400
jacho@cmda-law.com; snolan@cmda-law.com

Date:  February 7, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2022, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record; and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  **N/A**

s/ Shane R. Nolan
Cummings, McClorey, Davis & Acho, P.L.C.
17436 College Parkway
Livonia, MI  48152
Phone:  (734) 261-2400
Primary E-mail: snolan@cmda-law.com
P78008