### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LARRY SMITH

        Plaintiff,

-v-

COUNTY OF WAYNE, ROBERT J.
DONALDSON, MONICA CHILDS,
GENE KARVONEN, ROGER
MUELLER, WALTER LOVE and
JOHN DEMBINSKI,

        Defendants.

Case No.: 2:21-cv-12070-DML-APP

Hon. David M. Lawson
Mag. Judge Anthony P. Patti

---

### DEFENDANTS MONICA CHILDS, GENE KARVONEN, ROGER MUELLER, WALTER LOVE AND JOHN DEMBINSKI'S MOTION FOR SUMMARY JUDGMENT

**NOW COME** Defendants, Monica Childs, Gene Karvonen, Roger Mueller, Walter Love, and John Dembinski (collectively the "DPD Defendants" or "Defendants"), by and through their counsel, CUMMINGS, McCLOREY DAVIS & ACHO, P.L.C., and hereby move for Summary Judgment on all of Plaintiff Larry Smith's claims pursuant to Fed. R. Civ. P. 56(a). Defendants' Motion is supported by the accompanying Brief.

The undersigned counsel certifies that, as required by Local Rule 7.1, he conferred with Plaintiff's counsel regarding the relief sought by this Motion to no avail.

{01857613-1 }

i

The undersigned counsel certifies that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). The brief currently exceeds the maximum length afforded by the local rules and the court rules, as will be the subject of a separate motion.

**WHEREFORE** Defendants pray that this Honorable Court grant their Motion for Summary Judgment, along with any other relief deemed warranted under the circumstances.

Respectfully Submitted,

**CUMMINGS, MCCLOREY, DAVIS & ACHO**

By: /s/ *Shane R. Nolan*
    SHANE R. NOLAN (P78008)
    17436 College Parkway
    Livonia, MI  48152
    (734) 261-2400 / Fax: (734) 261-4510
    snolan@cmda-law.com

Dated: July 31, 2023        *Attorneys for Defendants Childs,*
               *Karvonen, Mueller, Love and Dembinski*

{01857613-1 }

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LARRY SMITH

          Plaintiff,

-v-

COUNTY OF WAYNE, ROBERT J.
DONALDSON, MONICA CHILDS,
GENE KARVONEN, ROGER
MUELLER, WALTER LOVE and
JOHN DEMBINSKI,

          Defendants.

Case No.: 2:21-cv-12070-DML-APP

Hon. David M. Lawson
Mag. Judge Anthony P. Patti

---

## BRIEF IN SUPPORT OF
## DEFENDANTS MONICA CHILDS, GENE KARVONEN,
## ROGER MUELLER, WALTER LOVE AND JOHN DEMBINSKI'S
## MOTION FOR SUMMARY JUDGMENT

iii

{01857613-1 }

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................... iv

ISSUES PRESENTED ......................................................................................x

I.     INTRODUCTION ................................................................................1

II.    STATEMENT OF FACTS ...................................................................1

  A.  The Underlying Homicide And Investigation Thereof ...................................1

     1.  Witness Statements.........................................................................1

     2.  Ballistics And Oher Evidence Found Near The Crime Scene And Seized From Smith's Home. ................................................................2

     3.  Smith's Interviews With DPD Homicide Detectives. ...............................4

  B.  Investigator's Report/Request For Warrant....................................................6

  C.  Pre-Trial Evidentiary Hearings And Rulings .................................................7

     1.  Preliminary Examination ................................................................7

     2.  *Walker* Hearing ............................................................................7

  D.  Statement By Jailhouse Witness Edward Allen ..............................................9

  E.  Jury Trial, Convictions And Sentencing .......................................................9

  F.  Post-Conviction Appeals And Attempts To Overturn Conviction Based On "Newly Discovered" Evidence ....................................................................13

  G.  Investigation By Conviction Integrity Unit / Stipulated Order Dismissing Charges Without Prejudice ...............................................................19

III.   STANDARD OF REVIEW ...............................................................20

  A.  This Court Should Dismiss Smith's Complaint Due To Lack Of Jurisdiction Pursuant To Fed. R. Civ. P. 12(h)(3)..............................................21

     1.  Pursuant To The *Heck* Doctrine, Smith Cannot Pursue A Cause For Damages For An Alleged Unconstitutional Conviction Until His Conviction Has Been Lawfully Invalidated. ...........................................22

     2.  The Michigan Court Rules Provide That A Conviction May Be Overturned Only Upon The Filing Of A Motion For Relief From Judgment Or A Motion For A New Trial..............................................24

C.  Smith Has Failed To State Plausible Federal §1983 Claims Against The DPD Defendants In Avoidance Of Qualified Immunity. ..............................30

1.  The Qualified Immunity Standard..............................................30

2.  Plaintiff Cannot Maintain A §1983 Claim For Unlawful  Detention Against The DPD Defendants (Count I). ...................................32

i. Statute Of Limitations ...........................................................32

ii. Qualified Immunity .............................................................32

3.  Plaintiff Cannot Maintain A §1983 Claim For Fabrication Of Evidence In Violation Of Due Process/Fair Trial Against The DPD Defendants (Count II). ..............................................................................33

i.  Theory #1: Allegedly Fabricated Testimony By Ofc.  Childs Regarding Smith's In-Custody Statement...................................34

ii. Theory #2: Allegedly Fabricated Ballistics Evidence .........................36

iii. Theory #3: Allegedly Fabricated Testimony By Jailhouse Informant, Edward Allen..................................................................37

4.  Plaintiff Cannot Maintain A §1983 Claim For Malicious  Prosecution Against The DPD Defendants (Count III)..................................38

i.  Probable Cause ....................................................................39

ii.  Influence Or Participation ......................................................40

iii. Favorable Termination ..........................................................40

5.  Plaintiff Cannot Maintain A §1983 Claim For Conspiracy Against The DPD Defendants (Count IV). ..................................................41

6.  Plaintiff Cannot Maintain A §1983 Claim For Failure To Intervene Against The DPD Defendants (Count V)...................................43

D.  Plaintiff Has Failed To State Plausible State Law Claims In Avoidance Of Governmental Immunity........................................................44

1.  The Governmental Immunity Standard..........................................45

2.  Plaintiff Cannot Maintain A State Law Claim For Malicious Prosecution (Count VII). ........................................................45

3.  Plaintiff Cannot Maintain A State Law Claim For Abuse Of Process (Count VIII)................................................................46

    4.  Plaintiff Cannot Maintain A State Law Claim For Intentional Infliction Of Emotional Distress (Count IX)...........................................................46

V.      CONCLUSION AND RELIEF REQUESTED..........................................47

vi

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004) citing *Sewell v. Clean Cut Mgt., Inc*., 463 Mich. 569, 575 (2001) ................................................28

*Advocacy Org for Patients & Providers v. Auto Club Ins Ass'n*, 257 Mich. App. 365, 384; 670 N.W.2d 569 (2003), aff'd 472 Mich. 91 (2005)............................43

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).....................................20

*Anderson,* 477 U.S. at 252 (quoted in *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989)....................................................................................21

*Autrey v. Stair*, 512 Fed. App'x. 572, 583 (6th Cir. 2013) ......................................33

*Barrow v. Pritchard*, 235 Mich. App. 478; 597 N.W.2d 853, 855-56 (1999) ........28

*Bd of Co Rd Comm'rs for Co of Eaton v. Schultz*, 205 Mich. App. 371, 377 (1994) .................................................................................................................................27

*Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984) .....................27

*Bonner-Turner v. City of Ecorse*, 627 Fed. Appx. 400, 412 (6th Cir. 2015)............44

*Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991)....................................21

*Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982)..........................................43

*Carlton v. Pytell*, 986 F.2d 1421 (6th Cir. 1993), citing *Knoblauch v. Kenyon*, 163 Mich. App. 712 (1987) ......................................................................................28

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324 (1986) ................................... 20,21

*Craft v. Billingslea*, 2017 W.L. 6039559, at *5 (E.D. Mich., December 6, 2017)..50

*Dart v. Dart*, 460 Mich. 573, 586 (1999) ...............................................................40

*Diehl v. Nelson*, no. 98–21408, 1999 WL 1045076 (6th Cir. November 12, 1999) (citing *Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir.1996)) ......23

*Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich. App. 632, 638–639 (2004)...............................................................................................47

*Dunn v. State of Tenn*., 697 F.2d 121, 127 n. 8 (6th Cir. 1982) .............................40

*Eaton Co. Bd. of Co. Rd. Comm'rs v. Schultz*, 205 Mich. App. 371, 375 (1994) ...29

*Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009)................................................30

*Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 630 (6th Cir.1992) ....................................1

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)....................................................30

*Hatchett v. City of Detroit*, No. 08-CV-11864, 2010 WL 1754426, at *6 (E.D. Mich. Apr. 30, 2010) ............................................................................................35

*Hayerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ....................31

{01857613-1 }

*Heck v. Humphrey*, 512 U.S. 477 (1994)..............................................................22

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) ................42

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) ........................................42

*Howard v. Trott & Trott, P.C.*, No. 304457, 2012 WL 3966274, at *4 (Mich. Ct.
    App. Sept. 11, 2012) ........................................................................................46

*Jacobs v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001).......................43

*King v. Munro*, 329 Mich. App 594, 599 (2019) ......................................................27

*Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)............................................................22

*Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)..............................................31

*Leslie v. City of Detroit*, 2018 W.L. 1510636, at *6 (E.D. Mich., March 26, 2018)
    ....................................................................................................................... 40,41

*M.G. v. Young*, 825 F.3d 1259, 1262 (10th Cir. 2016) ............................................41

*Marcilis v. Township of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012)...............31

*Mays v. Three Rivers Rubber Corp.*, 135 Mich. App. 42 (1984)............................43

*Mills v. Barnard*, 869 F.3d 473, 479-90 (6th Cir. 2017) ........................................39

*Monat v. State Farm. Ins. Co.*, 469 Mich. 679, 682-684 (2004) ............................27

*Monat*, 469 Mich. 679, 684-685 (2004)..................................................................28

*Mott v. Mayer*, 524 Fed. Appx. 179, 188 (6th Cir. 2013)........................................32

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)..........................................................30

*Murphy v. Martin,* 343 F.Supp.2d (2004) at 609; *e.g.*..........................................23

*Neal v. Anspaugh-Kisner*, 2008 W.L. 506336, at *6 (E.D. Mich. Jan. 22, 2008),
    citing 1993 Mich. Pub. Acts 78 (effective April 1, 1994) ...................................32

*Odom v Wayne County*, 482 Mich. 459, 479-80; 760 N.W.2d 217 (2008).............45

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009)......................................................30

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984)..........24

*People v. Smith*, 459 Mich. 884 (October 26, 1998) ...............................................14

*Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019)..................................... 28,44

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)...............................................................23

*Regets v. City of Plymouth*, 568 Fed. Appx. 380, 389 (6th Cir. 2014)....................32

*Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) ..........................................31

*Robertson v. Lucas*, 753 F.3d 606, 619 (6th Cir. 2014) ..........................................34

*Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) .................................... 41,42

*Robertson*, 753 F.3d at 615 ......................................................................................31

*Robertson,* 753 F.3d at 615; *Hayerman*, 680 F.3d at 647.......................................38

*Saltmarshall v. Prime Healthcare Services-Garden City LLC*, 831 F. App'x 764, 771 (6th Cir. 2020)............................................................................................45

*Scott v. Harris*, 550 U.S. 372, 380 (2007) ...............................................................35

*Smith v. City of Troy, Ohio*, 874 F.3d 938, 945–46 (6th Cir. 2017) ........................43

*Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) ......................................33

*Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999)...................................33

*Swain v. Morse*, 332 Mich. App. 510, 530 n. 13; 957 N.W.2d 396 (2020)............43

*Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)......................................39

*TBCI, P.C. v. State Farm Mut. Auto. Ins. Co.*, 289 Mich. App. 39, 43 (2010) ...... 29

*Thompson v. Clark*, 596 U.S. ____ (2022) ...............................................................23

*Thompson*, 142 S. Ct. 133 .......................................................................................41

*Thorp v. D.C.*, 142 F.Supp.3d 132, 145 (D. D.C., 2015)........................................40

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)................................................43

*United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) .......................................21

*United States v. Willis*, 257 F.3d 636, 642-643 (6th Cir. 2001) .............................37

*Wallace v. Kato*, 549 U.S. 384, 389-390 (2007)....................................................32

*Webb. v. United States*, 789 F.3d 647, 667 (6th Cir. 2015)....................................34

*Wells v. City of Dearborn Heights*, 538 Fed. Appx. 631, 640 (6th Cir. 2013)..........44

*White v. Pauly*, 137 S. Ct. 548, 551 (2017) ...........................................................30

*Wiley v. Oberlin Police Dep't*, 330 Fed. Appx. 524, 530 (6th Cir. 2009) ................44

*Winget v. JP Morgan Chase Bank*, N.A., 537 F.3d 565, 577-78 (6th Cir. 2008) ...29

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ..............................................................23

**Other Authorities**

Fed. R. Civ. P. 12(h)(3)................................................................. x,21,22,23,25

28 U.S.C. § 2254.....................................................................................................22

42 U.S.C. § 1983.....................................................................................................22

Fed. R. Civ. P. 56(a)........................................................................................ i,xi,1

Fed. R. Civ. P. 56(c)...............................................................................................20

MCL 600.5805(2) ........................................................................................... 43,46

MCL 600.5805(7) ...................................................................................................46

MCL 691.1407(2) ...................................................................................................45

MCR 6.502..................................................................................................... 19, 25

Restatement (2d) of Torts §658(c)(1977) ...............................................................40

Restatement Judgments (2d) § 85(2)(a)..................................................................28

## <u>ISSUES PRESENTED</u>

**I.**   **Should This Court Dismiss Plaintiff's Complaint Due To Lack Of Jurisdiction Pursuant To Fed. R. Civ. P. 12(h)(3)?**

DPD Defendants Answer:      Yes

Plaintiff Answers:      No

**II.**   **Does Plaintiff Have Any Viable Claims When All Issues He Presents Herein Were Previously Litigated And, Consequently, Are Barred By Collateral Estoppel And Res Judicata?**

DPD Defendants Answer:      No

Plaintiff Answers:      Yes

**III.**   **Does Smith Have Any Viable Claims Under 42 U.S.C. §1983?**

DPD Defendants Answer:      No

Plaintiff Answers:      Yes

**IV.**   **Does Smith Have Any Viable Claims Under State Law?**

DPD Defendants Answer:      No

Plaintiff Answers:      Yes

x

## I.    INTRODUCTION

Plaintiff, Larry Smith ("Plaintiff" or "Smith"), brings this federal civil rights action for compensatory and punitive damages, alleging that he was wrongfully convicted of murder due to actions taken by Defendants Monica Childs ("Childs"), Gene Karvonen ("Karvonen"), Roger Mueller ("Mueller"), Walter Love ("Love") and John Dembinski ("Dembinski") (collectively the "Defendants" or "DPD Defendants"), who, at the pertinent times hereto, were employed in various capacities for the Detroit Police Department ("DPD"). **Exhibit A**: Amended Complaint, Filed 1/27/22, ECF No. 23, PageID.174-206, Pages 1-33. For reasons explained below, Smith's claims against the DPD Defendants are untenable, and Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56(a).

## II.    STATEMENT OF FACTS

### A.    The Underlying Homicide And Investigation Thereof

On March 24, 1994, around 6:00 a.m., Kenneth Hayes, a drug dealer, was fatally shot outside 2250 Annabelle Street in Detroit. **Exhibit A**, ¶3. An extensive investigation by DPD ensued, and two young men were ultimately arrested for and charged with Hayes' murder: Smith and his friend, Jay Clay ("Clay").

#### 1.    Witness Statements Implicating Smith

DPD investigators, on the morning of the shooting, interviewed several witnesses, including three individuals who were residing or staying at the 2250

1

{01857613-1 }

Annabelle residence: Ralph Cartwright (Hayes' friend); Sandra Cartwright (Ralph's mother and acquaintance of Smith's mother, Debra Smith); and Ursula Jackson (Hayes' girlfriend and acquaintance of Smith).

Ralph Cartwright reported (and would later testify at Smith's trial) that he observed Smith, wearing a dark hoodie pulled over his head, chase and shoot Hayes, and then flee in a black Honda Accord driven by Clay. Mr. Cartwright identified Smith as the shooter primary based on body shape and gait. **Exhibit B**: Ralph Cartwright Statements.

Sandra Cartwright reported (and would later testify) that Hayes' girlfriend, Ursula Jackson, told her that she (Jackson) "looked into 'Butter's' face and…he knows I saw him." **Exhibit C**: Sandra Cartwright Statement.

Ms. Jackson, in her statement to police, denied seeing the shooter's face but reported that Smith, Clay and an associate named "Kendall" (who, according to her, had previously threatened to kill Hayes) "all sell dope together and stick people up," and that she had seen Smith with a gun before, while he and Clay were riding with it in a car. **Exhibit D**: Ursula Jackson Statement. Jackson, as discussed below, did not testify at trial, with Smith, after consultation with counsel, waiving her presence.

> **2.** **Ballistics And Oher Evidence Found Near The Crime Scene And Seized From Smith's Home**

2

After being dispatched to the crime scene, patrol officers Mueller and Love arrived at approximately 6:15 a.m., discovered five .40 caliber spent shell casings on the ground and kept same intact until evidence technicians arrived to process the scene. **Exhibit E**: Mueller Preliminary Complaint Report; **Exhibit U**: Trial Transcript, Vol. 3, pp. 35-36.

Karvonen, an evidence technician, processed the crime scene. He recovered the five .40 caliber casings initially discovered by Ofcs. Mueller and Love, and two additional .40 caliber casings in the street and sidewalk leading to where Hayes fell. He also photographed and took measurements of a boot print with the impression "Honcho" (a brand of work boots), which was initially discovered by Ofc. Harold Mitchell in a nearby alley. **Exhibit C**: Evidence Technician Report with Diagram; **Exhibit U**, Vol. 2, pp. 20-43.

The same day, DPD personnel conducted a search of the home of Smith's mother located at 2680 Edsel, where Smith resided. **Exhibit A**, ¶29. That search, conducted pursuant to a judicially approved warrant **(Exhibit G)**, revealed an empty ammunition box of .40-caliber bullets in Smith's basement bedroom, which was discovered by Defendant Dembinski, as well as an expended .40-caliber shell casing found by Ofc. Keith Chisholm in a clothes hamper in the basement. **Exhibit H**: Evidence List; **Exhibit U**, Vol. 2, pp. 44-52; 71-81. Additionally, Ofc. Harold Mitchell retrieved one pair of size 12 "Honcho" boots believed to match the boot

3

print found near the crime scene. **Exhibit H**; **Exhibit U**, Vol. 2, pp. 53-70. Police also recovered a black Oakland Raiders jacket with a hood. **Exhibit I**.

Ofc. David Pauch, a firearms examiner, later determined (and testified at trial) that the seven spent .40 caliber casings found near the crime scene matched the spent .40 caliber casing recovered from Smith's home, and that all casings had been fired from the same weapon. **Exhibit I**: Pauch Laboratory Analysis; **Exhibit U**, Vol. 2, pp. 82-100.[1]

Dr. Zung A. Chun, the Wayne County Medical Examiner, ultimately determined (and would later testify) that Hayes was shot with two bullets: one in the arm and one in the back. The bullet that pierced Hayes' arm had exited and the slug was not recovered. The fatal bullet in Hayes' back lodged in his chest. The only recovered slug was a .32 caliber bullet.[2] **Exhibit U**: Trial Transcript, Vol 1, pp. 19-34.

### 3. Smith's Interviews With DPD Homicide Detectives

On March 24, 1994, the same day as the shooting, Smith voluntarily presented to DPD headquarters after learning through his mother that police were looking for him. **Exhibit A**, ¶16; **Exhibit J**, p. 98-100. Smith was initially interviewed by

---

[1] Smith alleges that Defendants Karvonen, Mueller, Love and Dembinski maliciously "planted" the ballistics evidence and "Honcho" boots to frame him for the shooting. **Exhibit J**: Transcript of Deposition of Larry Smith, pp. 148, 167. However, Smith has made no attempt to depose any of them.

[2] The prosecutors theory at trial was that there were multiple shooters and guns.

{01857613-1 }

Defendant Childs and she immediately made him aware that his name had come up in connection with the murder. **Exhibit J**, pp. 97, 104; **Exhibit V**: Transcript of Deposition of Monica Childs, p. 186. Prior to questioning, at approximately 2:30 p.m., Ofc. Childs advised Smith of his rights and he acknowledged his understanding of same by reading, initialing and signing an advice of rights form. **Exhibit A**, ¶17; **Exhibit J**, pp.107-108; **Exhibit M**: Advice of Rights Form – 3/24/94; **Exhibit V**, pp. 179-181. Smith denied any knowledge of or involvement in the murder, and provided an alibi – to wit: that he, at the time of the shooting, was at home with his mother, and that he went to work later that morning. **Exhibit J**, pp. 109, 122; **Exhibit N**. After the interview, Smith was escorted to a holding cell, where he stayed the night. **Exhibit J**, pp. 117-118. Childs then memorialized her discussion with Smith in hand-written notes. **Exhibit A**, ¶18; **Exhibit N**: Ofc. Childs' Notes re: Interview of Larry Smith – 3/24/94; **Exhibit V**, p. 183.

Ofc. Childs interviewed Smith for a second time the next morning, on March 25, 1994, at approximately 8:45 a.m. **Exhibit J**, pp. 118-119. Smith signed a second advice of rights form. **Exhibit J**, pp. 119-120; **Exhibit O**: Advice of Rights Form – 3/25/94; **Exhibit V**, pp. 182-183. Smith refused to give a formal statement but he was willing to talk, and Ofc. Childs, after the interview, memorialized her conservation with Smith in another set of hand-written notes. **Exhibit P**: Ofc. Childs' Notes re: Interview of Larry Smith – 3/25/94; **Exhibit V**, p. 101, 183. As

{01857613-1 }

reflected in Ofc. Childs' notes, Smith continued to deny any knowledge of or involvement in the shooting. **Exhibit J**, p. 109, 122; **Exhibit P**. When Ofc. Childs informed Smith that he had been identified by eye-witnesses, Smith inquired as to whether anyone saw his face, and Childs responded in the affirmative. **Exhibit P**. Smith then remarked that would not be possible "because I had a hood on when it happened." **Exhibit P**. Smith became agitated and the interview was discontinued. **Exhibit P**.

On March 26, 1994, while still in custody, Smith was interviewed by Sgt. Patrick Henahan, the officer in charge ("OIC") of the investigation. **Exhibit J**, pp. 138, 140. Prior to questioning, Smith signed a third advice of rights form. **Exhibit J**, pp. 139-140; **Exhibit Q**: Advice of Rights Form – 3/26/94 at 10:25 a.m. The interview was ultimately terminated when Smith requested counsel and indicated that he did not wish to talk. **Exhibit R**: Sgt. Henahan Preliminary Complaint Record. While Sgt. Henahan was conveying Smith back to lock-up, Smith, without being solicited, stated: "You can let Jay Clay go, he didn't do anything." **Exhibit R**.

### B. Investigator's Report/Request For Warrant

On March 26, 1994, Sgt. Henahan, as the OIC, submitted an Investigator's Report/Request for Warrant to the Wayne County Prosecutor's ("WCPO"), which was approved the same day by a Wayne County prosecutor. **Exhibit S**. Notably, although the Investigator's Report references Smith's verbal utterance to Sgt.

6

Henahan, *there is no mention of Smith's statement to Ofc. Childs, nor is there any reference to a subsequent statement by jailhouse witness, Edward Allen (detailed below)*. **Exhibit S**. After a judge signed the warrant, Smith and Clay were each charged with first-degree murder and possession of a firearm during the commission of a felony. **Exhibit A**, ¶4; **Exhibit S**. Smith was thereafter transferred to and detained in the Wayne County Jail through his trial. **Exhibit J**, pp. 166-167.

### C. Pre-Trial Evidentiary Hearings And Rulings

#### 1. Preliminary Examination

A preliminary examination was held on April 7, 1994. **Exhibit W**: Transcript of Preliminary Examination – 4/7/94. Ralph Cartwright and Ofc. Roscoe Thomas were the only witnesses to testify. Mr. Cartwright, consistent with his police statement, testified he heard several gun shots, observed Clay's car, and saw Smith chasing after and shooting at Hayes with a handgun. **Exhibit W**, pp. 7-50. Ofc. Roscoe Thomas testified as to the statement he took from Smith's co-defendant, Jay Clay, and that statement was read into the record. **Exhibit W**, pp. 51-62; **Exhibit T**: Jay Clay Statement. At the conclusion of testimony, both Smith and Clay were bound over for trial. **Exhibit W**, p. 65. The charges against Clay were subsequently dismissed prior to trial.

#### 2. *Walker* Hearing

{01857613-1 }

Smith moved to suppress his police statements to Ofc. Childs and Sgt. Henahan, and an evidentiary *Walker* hearing was held on September 9, 1994. **Exhibit U**: *Walker* Hearing Transcript. Testimony was taken from Ofc. Childs, Sgt. Henahan and Smith. **Exhibit U**.

Ofc. Childs testified as to the circumstances surrounding her second interview of Smith on March 25, 1994. **Exhibit U**, pp. 6-26. Childs, on cross examination, admitted that her interview notes were a summary of a conversation taken earlier, not verbatim notes, and that she did not show her notes to Smith or have him verify them. **Exhibit U**, pp. 14, 17. Ofc. Childs testified that Smith, when confronted with eyewitness statements implicating him in the crime, responded that witnesses could not identify him because he was wearing a hood. **Exhibit U**, pp. 24-25.

Sgt. Patrick Henahan testified as to his interactions with Smith on March 26, 1994 and Smith's unsolicited statement that police could "let Jay go, he didn't do anything." **Exhibit U**, pp. 28-38.

Smith testified as to his contacts with Ofc. Childs and Sgt. Henahan. **Exhibit U**, pp. 39-58. Smith, contrary to his deposition testimony in this case, denied having signed the initial advice of rights form presented by Ofc. Childs on March 24, 1994. **Exhibit U**, pp. 54-56. However, he acknowledged signing advice of rights forms in conjunction with his second interview with Ofc. Childs on March 25, 1994 as well as his interview with Sgt. Henahan on March 26, 1994. **Exhibit U**, pp. 41-42, 45-

8

46. Smith acknowledged having said some of the things contained in Ofc. Childs' interview notes but denied saying anything about witnesses not being able to see his face because he was wearing a hood. **Exhibit U**, pp. 53-54, 56-57. Smith also denied ever stating to Sgt. Henahan that police could release Jay Clay because "he didn't do anything." **Exhibit U**, pp. 53-54.

After hearing the testimony and weighing the credibility of the witnesses, Judge Vera Massey-Jones remarked that Smith was "a liar" and ultimately ruled that both of his police statements would be admissible at trial. **Exhibit U**, pp. 61-63.

### D.     Statement By Jailhouse Witness Edward Allen

On November 18, 1994, DPD homicide detective Dale Collins took a statement from Edward Allen, an inmate in the Wayne County Jail, and that statement was typed up by Collins and signed by Allen.  **Exhibit X**: Edward Allen Statement – 11/18/94. Allen claimed in his statement (and would later testify at trial) that while in the Jail, he encountered Smith, who confessed to shooting Hayes. **Exhibit X**.

### E.     Jury Trial, Convictions And Sentencing

Smith's trial commenced on November 22, 1994. Defendant Robert Donaldson of the WCPO tried the case on behalf of the People. Smith was represented by defense attorney Gerald Lorence.

Sandra Cartwright testified that after the shooting, Hayes' girlfriend, Ursula Jackson, said: "Mom, I looked right in his face. It was Butter" – i.e., Smith. **Exhibit Y**, Vol. 1, pp. 35-73. The hearsay statement of Jackson, who did not testify, was admitted through Ms. Cartwright as an excited utterance. **Exhibit Y**, Vol. 1, p. 43.[3]

Ralph Cartwright testified that he observed Smith (aka "Butter") walking around the house shortly before Hayes left the house. Smith was wearing dark clothes and a hood. He also saw Jay Clay driving his car near the house. He fell asleep and was awakened by gunshots. He then observed Smith chasing after Hayes while shooting a gun, and eventually enter Clay's car before it drove away from the scene. Cartwright admitted not seeing Smith's face that night, but testified that he recognized Smith by his frame and gait. **Exhibit Y**, Vol. 2, pp. 90-134; Vol 3, pp. 5-19.

Defendant Childs and Sgt. Henahan, largely consistent with their previous testimony at Smith's *Walker* hearing, testified as to their respective interactions with Smith and the statements he made to each while in custody. **Exhibit Y**, Vol. 2, pp. 131-134; Vol. 3, pp. 5-34.

---

[3] Although Ms. Cartwright's testimony is contradicted by Ms. Jackson's statement to police that she never saw the shooter (**Exhibit D**), there is no dispute that Smith's defense attorney had a copy of Jackson's statement, and nevertheless, Smith, after consultation with his attorney, ultimately agreed to waive her presence. **Exhibit Y**, Vol. 2, p. 94.

{01857613-1 }

Defendant Karvonen testified as to how he, as an evidence technician, processed the crime scene and recovered seven spent .40 caliber casings from the street and sidewalk leading to where Hayes fell. He also photographed and took measurements of a boot print left in the mud in the nearby alley. **Exhibit Y**, Vol. 2, pp. 20-43.

Defendant Dembinski testified that he assisted DPD homicide regarding execution of the arrest warrant at Smith's mother's house, where Smith resided. Officers were admitted entry to the premises by Ms. Smith, who directed officers to Smith's bedroom in the basement. There, on a shelf, Ofc. Dembinski found an empty box of .40 caliber shells. **Exhibit Y**, Vol. 2, pp. 44-50.

Ofc. Mitchell testified that he found the boot print in the nearby alley. He also participated in execution of the search warrant at Smith's home and retrieved a pair of size-12 "Honcho" boots believed to match the boot print found in the nearby alley. **Exhibit Y**, Vol. 2, pp. 53-70.

Ofc. Chisholm testified as to his participation in execution of the search warrant at Smith's home. He recovered a .40 caliber spent casing in a clothes hamper in the basement. **Exhibit Y**, Vol. 2, pp. 71-81.

Ofc. Pauch, a firearms examiner for DPD, testified that the seven .40 caliber casings found near the crime scene were all fired from the same weapon. Pauch also testified that the .40 caliber casing recovered from Smith's home was fired from the

{01857613-1 }

same weapon as the other seven casings. He identified the bullet taken from Hayes' body as a .32 caliber bullet. **Exhibit Y**, Vol. 2, pp. 82-100.

Edward Allen testified that he had been held in Wayne County Jail awaiting his own trial on armed robbery charges when he became acquainted with Smith. According to Allen, Smith bragged about killing somebody and offered other details about the crime. Allen denied receiving any consideration or deal for his testimony. **Exhibit Y**, Vol. 2, pp. 102-130.[4]

Defendant Childs and Sgt. Henahan, largely consistent with their previous testimony at Smith's *Walker* hearing, testified as to their respective interactions with Smith and the statements he made to each while in custody. **Exhibit Y**, Vol. 2, pp. 131-134; Vol. 3, pp. 5-34.

Defendant Mueller testified that, on the morning of the shooting, he along with fellow patrol officer, Defendant Love, responded to the area of 2250 Annabelle where they found five spent casings near the home. They kept the shell casings intact until the evidence technicians arrived to process the scene, and documented their findings in a report. **Exhibit Y**, Vol. 3, pp. 35-40.

---

[4] As discussed below, Allen has recanted his trial testimony, alleging that he was solicited by police to testify falsely against Smith, and wildly claiming, among other things, that he had a sexual relationship with Ofc. Childs. **Exhibit OO**: Allen Affidavit – 6/23/13.

The prosecution rested, and defense counsel moved for directed verdict. The Court denied the motion. **Exhibit Y**, Vol. 3 (11/28/94), p. 44.

Smith did not take the stand in his own defense. Instead, he presented alibi testimony through his mother, Debra Smith, and her friend and work colleague, William Brown. Both Ms. Smith and Mr. Brown testified that Smith was at home with them on the morning of the shooting. **Exhibit Y**, Vol. 3, pp. 63-118, 120-129.

After closing arguments, the jury convicted Smith of first-degree murder and possession of a firearm during the commission of a felony. **Exhibit Y**, Vol. 4, p. 37. Subsequently, on December 22, 1994, Smith was sentenced to life imprisonment without the possibility of parole.  **Exhibit A**, ¶59.

### F.  Post-Conviction Appeals And Attempts To Overturn Conviction Based On "Newly Discovered" Evidence

On January 27, 1995, Smith filed a motion for a new trial, arguing that there was insufficient evidence for the jury to find Smith guilty of murder in the first degree. **Exhibit Z**: Motion for New Trial – 12/14/94. That Motion was denied. **Exhibit AA**: Order Denying Motion for New Trial – 1/27/95; **Exhibit BB**: Transcript of Hearing on Motion for New Trial – 1/27/95.

Smith, through counsel, then timely filed an appeal as of right with the Michigan Court of Appeals ("MCOA"). **Exhibit CC**: Claim of Appeal and Order Appointing Counsel – 2/15/95; **Exhibit DD**: Appellant's Brief on Appeal –

13

5/23/1996. On appeal, Smith first asserted that the trial court erred in denying his motion to suppress his statements to Ofc. Childs and Sgt. Henahan, arguing that his statements were not voluntary and were taken in violation of his right to counsel. **Exhibit DD**. The Court rejected such arguments, finding that Smith's statement to Childs was voluntary, that Smith's statement to Henahan was a product of his own initiation and that Smith's right to counsel had not been violated. **Exhibit EE**: MCOA Opinion – *People v. Smith*, No. 183431 – 4/25/97. Additionally, the Court of Appeals, for several reasons, rejected Smith's arguments that the trial court erred in denying his motion for directed verdict and motion for a new trial. **Exhibit DD**; **Exhibit EE**.

After the Michigan Court of Appeals affirmed Smith's conviction, the Michigan Supreme Court denied leave to appeal. *People v. Smith*, 459 Mich. 884 (Oct. 26, 1998).

In December 2003, Smith, represented by counsel, filed a post-conviction motion for relief from judgement in the trial court, arguing, among other things, that: (1) the State knowingly presented false testimony by Edward Allen, an informant who had "been testifying in homicide cases for over 16 years and receiving substantial favorable treatment by the police and prosecutors for his testimony"; and that (2) the State knowingly presented false hearsay testimony by Sandra Cartwright and refused to put Ursula Jackson on the stand and/or introduce her police statement

14

wherein she denies ever seeing the shooter. **Exhibit FF**: Motion for Relief from Judgment – 12/18/03. The trial court denied Smith's motion in an opinion and order dated May 19, 2004. See **Exhibit GG**. Smith's subsequent applications for leave to appeal that ruling to the Michigan Court of Appeals and Supreme Court were denied.

In July 2007, Smith filed a *pro se* petition for a writ of habeas corpus in this Federal Court, asserting several grounds for relief, including that the State violated Smith's constitutional rights where "new evidence" demonstrates the State's knowing use of perjury by jailhouse informant, Edward Allen. **Exhibit HH**: Petition for Writ of Habeas Corpus – 7/24/07. Then, in October 2007, Smith, through counsel, filed an amended petition for writ of habeas corpus, after new information suggested that there had been a high rate of error in the forensic analysis of ballistics evidence by the DPD Forensic Lab in several criminal cases. **Exhibit II**: Amended Petition for Writ of Habeas Corpus – 10/03/07. The WCPO, at Smith's request, agreed to review and possibly re-test the ballistics evidence in his case, and this Court granted Smith's motion to hold the petition in abeyance during pendency of this investigation and also to permit Smith to present to the state courts any newly discovered claims that might arise as a result of the new ballistics testing. **Exhibit JJ**: USDC – ED Opinion and Order Holding Petition for Writ of Habeas Corpus in Abeyance – 1/22/09.

Smith then returned to the trial court and filed a second motion for relief from judgment, explaining that a review of the ballistics evidence by Michigan State Police ("MSP") revealed that the seven spent shell casings found at the scene had come from the same gun (consistent with Ofc. Pauch's testimony) but that the shell casing found in his home could not be re-tested because it had been destroyed on May 31, 2006. **Exhibit KK**: (Second) Motion for Relief from Judgment – 5/21/10. Smith claimed that the shell casing had been maliciously "planted" in his home by the police and later destroyed to cover up this fact, and he asserted that the State's presentation of this false evidence at trial and its failure to preserve evidence violated his due process rights. **Exhibit KK**. The trial court denied Smith's motion on June 8, 2010 (**Exhibit LL**), and both the Michigan Court of Appeals and Michigan Supreme Court denied Smith's subsequent applications for leave to appeal.

In January 2012, this Court granted Smith's motion to reopen the case (**Exhibit MM**) and also granted him permission to file an amended habeas application, in which he raised two new claims for relief in addition to those raised in his previous petition. **Exhibit NN**.

Smith subsequently filed another motion to hold the petition in abeyance so he could again return to the state courts to raise additional claims based on newly discovered evidence. In April 2013, this Court granted the motion and held the habeas petition in abeyance.

{01857613-1 }

Smith again returned to the trial court and filed a third motion for relief from judgment based primarily on the June 2013 Affidavit of Edward Allen. **Exhibit OO**. The trial court denied the motion, explaining that Allen's Affidavit was not new evidence and, in any event, had already been argued before and decided against Smith in his first motion for relief from judgment. **Exhibit PP**: WCCC Opinion and Order – 10/9/13. Leave to appeal was, once again, denied by both the Michigan Court of Appeals and Supreme Court.

In June 2015, Smith moved to reopen the case and to file a third amended petition for writ of habeas corpus (see **Exhibit QQ**), and this Court granted that motion. **Exhibit RR**: USDC-ED Opinion and Order Granting Motion to Reopen and Granting Motion to Amend – 6/18/15.

In his third amended petition for habeas corpus, Smith expounded on his previous applications and sought relief on several grounds. Among other things, Smith argued that his constitutional rights were violated where: (1) new evidence demonstrates the knowing use of false testimony by Edward Allen; (2) the trial court admitted hearsay testimony where the declarant (Ursula Jackson) denied making the statement and the denial was kept from the jury; (3) the prosecution induced false testimony by Sandra Cartwright and failed to correct it; (4) the trial court admitted Smith's in-custody statements to Ofc. Childs and Sgt. Henahan where these statements were not voluntary; (5) new evidence showing that it is likely that

17

ballistics evidence against him had been fabricated or was recklessly compromised by negligent handling; and (7) new evidence showing that the State was aware of but failed to disclose leniency and preferential treatment given to prisoner informants (including Allen), and that informants (like Allen) were solicited by DPD to give false testimony (including Smith's confession to Allen) as a part of a "jailhouse snitch program" to help secure convictions. **Exhibit SS**: Third Amended Petition for Habeas Corpus – 5/22/15. To support this last claim, Smith attached a February 8, 1995 memorandum from former Wayne County Deputy Chief Assistant Prosecutor Robert Agacinski ("Agacinski") stating that certain defense attorneys had reported that certain prisoners (not including Allen) were intentionally used as police informants and, allegedly unbeknownst to prosecutors, afforded special privileges for their cooperation. **Exhibit XX**: Agacinski Memorandum - 2/8/95.

This Court ultimately denied Smith's third amended habeas petition, finding that the majority of Smith's claims were time-barred. The Court also found that there was no merit to Smith's claim that the police planted and intentionally destroyed ballistics evidence. The Court declined to issue a certificate of appealability ("COA"). That decision was subsequently upheld by the United States Court of Appeals for the Sixth Circuit. **Exhibit TT**: Order by USCOA – Sixth Circuit, *Smith v. Brewer*, No. 17-1741 – 1/16/18.

{01857613-1 }

### G. Investigation By Conviction Integrity Unit / Stipulated Order Dismissing Charges Without Prejudice

Following years of unsuccessful appeals, the Wayne County Conviction Integrity Unit ("CIU"), an investigative arm of the WCPO, decided to take on Smith's case. The CIU, after completion of its investigation, recommended that Smith be granted a new trial. The WCPO's press release detailing its recommendation, and Prosecutor Kim Worthy's adoption thereof, reads:

> After a thorough review of the investigation and evidence in this case we have determined that Mr. Smith certainly is entitled to a new trial…We found that the Detroit Police Department's informant was unreliable as well as the testimony of a key witness. There were other issues as well. While we *cannot state that this is an exoneration*, we are very certain that the trial process was not just." [**Exhibit UU**: WCPO/CIU Press Release (emphasis added)]

The charges against Smith were ultimately dismissed *without* prejudice, pursuant to a stipulated order jointly presented by Smith's appellate counsel and the WCPO, and entered by the trial court on February 4, 2021. See **Exhibit VV** and **Exhibit WW**. Smith was released from prison the same day. **Exhibit A**, ¶65. It is undisputed that prior to entry of the aforementioned stipulated order, there was no contemporaneous motion for relief from judgment, no motion hearing, and no findings of fact or conclusions of law by the trial court, in violation of MCR 6.502.

### H. Smith's Amended Complaint

Smith, in his Amended Complaint, asserts several federal claims against the DPD Defendants and Defendant Donaldson pursuant to 42 U.S.C. §1983, including

19

unlawful detention (Count I), denial of due process and a fair trial based on fabrication of evidence (Count II), malicious prosecution (Count III), conspiracy (Count IV) and failure to intervene (Count V). Smith also asserts state law claims for malicious prosecution (Count VII), abuse of process (Count VIII) and intentional infliction of emotional distress (Count IX) against the DPD Defendants and Defendant Donaldson. **Exhibit A**. Distilled to their essence, Smith's claims are premised on the theory that the DPD Defendants conspired to frame and convict Smith for murder by inducing and/or knowingly using "fabricated" evidence, including: (i) Ofc. Childs' notes and testimony relating to Smith's statement to her; (ii) ballistics evidence "planted" by police near the crime scene and in Smith's home; and (iii) perjured testimony of jailhouse informant, Edward Allen. **Exhibit A**.

## III.   STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses ..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324 (1986). Fed. R. Civ. P. 56(c) provides that a motion for a summary judgment should be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). The movant bears the burden of proving the lack of a genuine issue of a material fact. *Id.*

The Court must examine all facts in the light that is most favorable to the non-moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984). It is the ultimate responsibility of the Court to determine if any genuine disputes of fact exist. *Anderson,* 477 U.S. at 250. If the non-moving party's claim would fail under the law, even after assuming the facts are as the non-moving party posits them to be, a summary judgment must be entered. *Celotex Corp.,* 477 U.S. at 322. More than a mere scintilla of supporting evidence is required to defeat a meritorious motion for summary judgment. *See Anderson,* 477 U.S. at 252 (quoted in *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989).

## IV.   LAW AND ARGUMENT

### A.   This Court Should Dismiss Smith's Complaint Due To Lack Of Jurisdiction Pursuant To Fed. R. Civ. P. 12(h)(3).

A court must have subject matter jurisdiction over a claim to resolve a dispute. Questions of subject matter jurisdiction can be raised at any time, by any party or *sua sponte* by the court itself.  *Franzel v. Kerr Mfg. Co.,* 959 F.2d 628, 630 (6th Cir.1992).  "If the court determines at any time that it lacks subject-matter

{01857613-1 }

jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The objection that a federal court lacks subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), may be raised at any stage in the litigation, even after trial and the entry of judgment, Fed. R. Civ. P. 12(h)(3). See *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

     **1.**  **Pursuant To The *Heck* Doctrine, Smith Cannot Pursue A Cause For Damages For An Alleged Unconstitutional Conviction Until His Conviction Has Been Lawfully Invalidated.**

Federal precedents provide that in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been: (1) reversed on direct appeal; (2) expunged by executive order; (3) declared invalid by a state tribunal authorized to make such determination; or (4) called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. This principle, based on the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), is known as "The *Heck* Doctrine." In *Heck,* the plaintiff filed a civil action seeking damages for alleged constitutional violations pursuant to 42 U.S.C. § 1983. Plaintiff's appeal of his conviction and two petitions for federal habeas relief had been rejected when the civil suit was filed. The Supreme Court held that as the plaintiff's criminal conviction had not been invalidated, the plaintiff was precluded from pursuing a §1983 cause of action for damages attributable to an unconstitutional conviction or sentence. *Id*. at 490.

*Heck* bars "§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction" unless the conviction has already been declared invalid by a state or federal tribunal. 512 U.S. at 486–87.

When a prisoner's civil rights claim is barred by the *Heck* doctrine, the best course for a district court is to dismiss the claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3), rather than to dismiss the complaint with prejudice as being frivolous, because a jurisdiction-related dismissal is not an adjudication on the merits and would allow the prisoner to reassert his claims if his conviction or sentence is latter invalidated. *Murphy v. Martin,* 343 F.Supp.2d (2004) at 609; *e.g., Diehl v. Nelson*, no. 98–21408, 1999 WL 1045076 (6th Cir. November 12, 1999) (citing *Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir.1996)).

A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Smith may rely on a recent Supreme Court opinion which held that if a plaintiff can show that his criminal prosecution ended without a conviction, he satisfies the requirement to demonstrate a favorable termination of a criminal prosecution in a Fourth Amendment claim under § 1983 for malicious prosecution and an affirmative indication of innocence is not needed. *Thompson v. Clark*, 596 U.S. ___ (2022).  But in *Thompson*, as in all other cases analyzing The *Heck*

23

Doctrine, the prosecutor *moved to dismiss* the charges against the plaintiff.  The dismissal was sought *before* trial and *before* the plaintiff was convicted and the court *granted the motion*.  Neither the prosecutor nor the court explained why the motion for dismissal was sought or granted.  The Supreme Court held that the plaintiff satisfactorily demonstrated the "favorable termination" requirement necessary to allow him to pursue a § 1983 civil suit for damages.

In the case at hand, the WCPO did not file a motion seeking to have Smith's criminal conviction vacated, but rather, submitted to the trial court a stipulated order seeking dismissal *without* prejudice.  An extensive search of Michigan statutes and case law has not revealed a single published opinion wherein a defendant's criminal conviction was vacated without a motion to dismiss or motion to vacate having been filed with the Court.   "[A] state officer may be said to act *ultra vires* only when he acts   'without any authority whatever.'" *Pennhurst   State   Sch.   &   Hosp.   v. Halderman*, 465 U.S. 89, 101 n.11 (1984).  The test to determine whether a state official has acted *ultra vires* is whether the state official had a "colorable basis for the exercise of authority." *Id.*   Without any authority to so stipulate, the WCPO's vacation of Smith's conviction via entry of a stipulated order was an *ultra vires* act.

**2.  The Michigan Court Rules Provide That A Conviction May Be Overturned Only Upon The Filing Of A Motion For Relief From Judgment Or A Motion For A New Trial.**

The Michigan Court Rules set forth the manner and means by which a criminal conviction can be dismissed or vacated.  MCR 6.502 defines the procedure for seeking relief from judgment relative to a state criminal conviction and provides that such relief "must be in the form of a *motion* to set aside or modify the judgment" and "*specify* all of the grounds for relief which are available to the defendant and of which the defendant has, or by the exercise of due diligence, should have knowledge." MCR 6.502(A)(emphasis added).

In this case, Smith's conviction was not vacated in connection with a pending motion for a new trial or motion for relief from judgment.  Instead, a stipulated order was filed with the trial court which does not cite to any law, recite any facts or identify any alleged newly-discovered evidence supporting grounds for relief sought nor in any manner comply with the requirements of MCR 6.502. If the Supreme Court intended to authorize vacation of a conviction by stipulation, it would have included vacation by stipulation in the Michigan Court Rules.  It did not.

Where Smith's conviction has not been properly vacated by the trial court, this Court lacks subject-matter jurisdiction and Smith's action must be dismissed pursuant to Fed. R. Civ. P. 12(h)(3).

### B. Collateral Estoppel And Res Judicata Bar All Of Smith's Claims.

Smith was released from prison for a new trial, and the charges against him were thereafter dismissed *without* *prejudice* pursuant solely to a bare-bones

stipulated order. Smith has not been exonerated – i.e., he has not been found to be innocent of the crimes he was accused of; the WCPO, due to the passage of time, has simply elected not to re-try him.

Prior to dismissal of his convictions without prejudice, Smith had the full benefit of a consideration on the merits of his case, having filed appeals at every level of the Michigan court system and through several habeas petitions in the Federal courts, wherein Smith made the same arguments that form the bases of his claims here, including that the police and prosecutors induced and/or knowingly utilized fabricated evidence in the form of: (1) Ofc. Childs' notes and testimony relating to Smith's in-custody statement; (2) ballistics evidence allegedly "planted" by police at the scene and in Smith's home; and (3) perjured testimony by jailhouse informant, Edward Allen.

Because the issues raised by Smith in this case have been previously raised and dispensed with in both the State and Federal court judicial systems, and he was not exonerated but only released for a new trial, he is barred from raising them in a new case as he has done here by the doctrines of collateral estoppel and res judicata.

> The primary difference between res judicata and collateral estoppel is that res judicata bars a second action on the same claim or cause of action including all matters that were raised or could have been raised in the first action, while collateral estoppel precludes relitigation of only such issues as were actually raised, litigated and determined in the first action and the decision of which were necessary to the judgment rendered.

* * *

Although they are distinct, the two doctrines serve largely the same purposes under Michigan law. Michigan courts have held that "[t]he doctrine of collateral estoppel must be applied so as to strike a balance between the need to eliminate repetition and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims. *In re Kramer*, 543 B.R. 551, 554 (Bankr. E.D. Mich. 2015) citing *Vogel v. Kalita*, 202 B.R. 889, 893 (Bankr. W.D. Mich.1996). *See also, Storey v. Meijer, Inc*., 431 Mich. 368, 372–73 (1988) (internal citations omitted).

"The doctrine of collateral estoppel precludes re-litigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *King v. Munro*, 329 Mich. App 594, 599 (2019) (quotation marks omitted) (citation omitted). There are three elements required for collateral estoppel to apply: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm. Ins. Co.*, 469 Mich. 679, 682-684 (2004) (quotation marks omitted) (citation omitted). "To be necessarily determined in the first action, the issue must have been essential to the resulting judgment[.]" *Bd of Co Rd Comm'rs for Co of Eaton v. Schultz*, 205 Mich. App. 371, 377 (1994).

All three criteria necessary for collateral estoppel are present in this case. Although the DPD Defendants – all of whom played different roles in the underlying

27

homicide investigation – were not strictly parties in the criminal trial, they were effectively in an adversarial position to Smith, and indirect privies to the prosecutors. ""[M]utuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy to a party, in the previous action. In other words, '[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.'" *Monat*, 469 Mich. 679, 684-685 (2004) The all-important consideration was met here - i.e., Smith had a full and fair opportunity to litigate his claims.

"Michigan law allows 'crossover estoppel,' which precludes the relitigation of an issue from a criminal proceeding in a subsequent civil proceeding, and vice versa." *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019), quoting *Barrow v. Pritchard*, 235 Mich. App. 478; 597 N.W.2d 853, 855-56 (1999). See also, *Carlton v. Pytell*, 986 F.2d 1421 (6th Cir. 1993), citing *Knoblauch v. Kenyon*, 163 Mich. App. 712 (1987) (emphasis added); see also Restatement Judgments (2d) § 85(2)(a).

The related doctrine of res judicata is employed to forestall multiple suits litigating the same cause of action. In Michigan courts, the doctrine precludes a second, subsequent action when "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 470 Mich. 105, 121, 680 N.W.2d 386, 396 (2004) citing *Sewell v. Clean Cut Mgt., Inc*., 463 Mich.

569, 575 (2001). "The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *TBCI, P.C. v. State Farm Mut. Auto. Ins. Co*., 289 Mich. App. 39, 43 (2010) citing *Eaton Co. Bd. of Co. Rd. Comm'rs v. Schultz*, 205 Mich. App. 371, 375 (1994). Whether federal law or state law is applied here, the elements of res judicata remain the same. *See Winget v. JP Morgan Chase Bank*, N.A., 537 F.3d 565, 577-78 (6th Cir. 2008).

The elements of res judicata are met in this case because: (1) the issue of whether Smith was innocent of his charges was resolved by the courts on the merits; (2) the trial featured representatives of the police, including these DPD Defendants, who may be considered privies of the prosecutors at trial; and (3) the matter was, in fact, resolved, albeit against Smith. As the Michigan Supreme Court has held: "This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, *but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not*." *Dart v. Dart*, 460 Mich. 573, 586 (1999)(emphasis added).

Summary judgment and dismissal of Smith's claims against the DPD Defendants would serve the purpose for both the doctrines of collateral estoppel and res judicata.

{01857613-1 }

**C.    Smith Has Failed To State Plausible Federal §1983 Claims Against The DPD Defendants In Avoidance Of Qualified Immunity.**

**1.    The Qualified Immunity Standard.**

"[G]overnment officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When "a defendant raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

The question of a defendant's qualified immunity invokes a two-pronged inquiry. First, "a court must decide whether the facts that the plaintiff has alleged or shown make up a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Second, "the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.*

For a right to be clearly established, the existing case law precedents must demonstrate that the existence of the right is "beyond dispute," such that "every reasonable officer would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015); *White v. Pauly*, 137 S. Ct. 548, 551 (2017).

The "critical aspect of a federal civil rights claim against an individual officer is that the "plaintiff must demonstrate that *each* individual government official defendant, through the official's *own* individual actions, has violated the Constitution." *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)(emphasis added). A Defendant's "*[p]ersonal* involvement is necessary" to establish liability. *Hayerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012)(emphasis added). "Simply put, to establish liability and overcome a qualified immunity defense, an individual must show that his or her own rights were violated, and that the violation was committed *personally* by the defendant. *Robertson*, 753 F.3d at 615 (Emphasis in Original).

A plaintiff asserting "claims against a government official arising from alleged violations of constitutional rights *must allege, with <u>particularity</u>, facts that demonstrate what <u>each</u> defendant did to violate the asserted constitutional right*." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)(emphasis). A defendant against whom a plaintiff fails to make particular allegations is entitled to have the plaintiff's claims against him dismissed. *Marcilis v. Township of Redford*, 693 F.3d 589, 596-97 (6th Cir. 2012).

Plaintiff asserts federal constitutional §1983 claims for unlawful detention (Count I), fabrication of evidence (Count II), malicious prosecution (Count III), conspiracy (Count IV), and failure to intervene (Count V). **Exhibit A**, ECF No. 23,

{01857613-1 }

197-201, Page 24-28. But, as demonstrated below, the individual DPD Defendants have qualified immunity against these claims.

### 2.      Smith Cannot Maintain A §1983 Claim For Unlawful Detention (Count I).

#### i.      Statute Of Limitations

As an initial matter, Smith's unlawful detention claim is barred by Michigan's two-year statute of limitations. See MCL 600.5805(3). This claim was not tolled by his incarceration. See *Neal v. Anspaugh-Kisner*, 2008 W.L. 506336, at *6 (E.D. Mich. Jan. 22, 2008), citing 1993 Mich. Pub. Acts 78 (effective April 1, 1994) and MCL 600.5851. The claim accrued in 1994, when Smith was arraigned, so the claim became barred in 1996. See *Wallace v. Kato*, 549 U.S. 384, 389-390 (2007).

#### ii.      Qualified Immunity

To prevail on an unlawful detention claim, a plaintiff must show that he was arrested and imprisoned without probable cause and that the officer was aware of that fact. *Regets v. City of Plymouth*, 568 Fed. Appx. 380, 389 (6th Cir. 2014). To establish probable cause, the officer only needs to see facts and circumstances to warrant a prudent person to believe that an offense has been committed. *Mott v. Mayer*, 524 Fed. Appx. 179, 188 (6th Cir. 2013).

Here, the both WCPO (in approving DPD's Warrant Request) and the district court judge (in signing the warrant) found probable cause for the arrest of Smith, and did so without consideration of Smith's in-custody statement to Ofc. Childs or the

allegedly false statement/testimony of Edward Allen – neither of which are even referenced in the Investigator's Report. **Exhibit S**. The WCPO and judge found probable cause based on all of the other evidence presented in the Investigator's Report, including the statement by eye witness Ralph Cartwright as well as the ballistics and other evidence collected at the scene and in Smith's home. Moreover, neither Ofc. Childs nor Allen testified at Smith's preliminary examination, and yet, Smith was still bound over for trial. **Exhibit W**. In light of the foregoing, there was probable cause to charge and arrest Smith for murder, and "[b]ecause plaintiff had a full and fair opportunity to litigate whether probable cause existed to maintain [the] charge against him, he is barred from relitigating that issue in this §1983 action." *Autrey v. Stair*, 512 Fed. App'x. 572, 583 (6th Cir. 2013), quoting *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998). Additionally, it has not been demonstrated that any of *these* DPD Defendants arrested Plaintiff. For these reasons, Smith's unlawful detention claim against the DPD Defendants fails.

### 3.     Smith Cannot Maintain A §1983 Claim For Fabrication Of Evidence In Violation Of Due Process/Fair Trial (Count II).

Under a fabricated evidence theory, "a reasonable police officer would know that fabricated probable cause, thereby effectuating a seizure, would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures." *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999). That right is

violated when evidence is knowingly fabricated, and a reasonable likelihood exists that the false evidence would have affected the jury's decision. *Webb. v. United States*, 789 F.3d 647, 667 (6th Cir. 2015). Additionally, the Sixth Circuit has held that when there is probable cause to arrest and detain an individual, they cannot prevail on a fabrication of evidence claim as they were not wrongfully seized. *Robertson v. Lucas*, 753 F.3d 606, 619 (6th Cir. 2014).

There is no question that probable cause exists here, as Smith was bound over for trial at the conclusion of his preliminary examination (i.e., probable cause hearing), and the only testimony used to bind Smith over was that of Ralph Cartwright, an eyewitness to the crime. But even if Smith could somehow demonstrate that his arrest lacked probable cause, his fabrication of evidence claim against the DPD Defendants still fails, regardless of the different theories on which the claim is purportedly based.

### i.    Theory #1: Allegedly Fabricated Testimony By Ofc. Childs Regarding Smith's In-Custody Statement

First, Smith maintains that he never told Ofc. Childs that eyewitnesses could not have identified him because he was wearing a hoodie, and consequently, her testimony to that effect was false. However, Smith has failed to sufficiently demonstrate that Ofc. Childs' testimony was manufactured, and in fact, his argument in this regard is blatantly contracted by the record. As the U.S. Supreme Court has held:

{01857613-1 }

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.*" [*Scott v. Harris*, 550 U.S. 372, 380  (2007)(emphasis added)]

Smith's own deposition testimony in this case and evidence adduced at the *Walker* hearing make clear that Smith was advised of his *Miranda* rights on multiple occasions; that he understood his rights and verified as much by signing multiple rights form; that Smith did not request counsel when he signed the forms; that Childs never exerted psychological or physical coercion on Smith; that Smith never refused to speak, and instead, willingly engaged in conversation with Ofc. Childs; and that the predominantly exculpatory information contained in Childs' notes of her interviews with Smith could have only come from him. **Exhibit U**.

While Smith and Ofc. Childs present a different rendition of facts with respect to what Smith did or did not say during his interview with Childs, the trial court had the opportunity to hear the evidence and judge the credibility of the witnesses at the *Walker* hearing, and ultimately denied Smith's motion to suppress his statement – a decision which was upheld on appeal and, as explained above, cannot be relitigated here under the doctrines of collateral estoppel and res judicata. See also *Hatchett v. City of Detroit*, No. 08-CV-11864, 2010 WL 1754426, at *6 (E.D. Mich. Apr. 30,

35

2010)(holding that a trial court's findings at a *Walker* hearing retain their preclusive effect under Michigan law even after a conviction has been vacated).

### ii.    Theory #2: Allegedly Fabricated Ballistics Evidence

Second, Smith cannot prove that any of these DPD Defendants – namely, Karvonen, Mueller, Love and Dembinski – maliciously "planted" and falsely testified as to the ballistics evidence discovered at the scene and seized from Smith's bedroom. As noted, Smith, in both the State and Federal courts, has previously argued that the ballistics evidence – and in particular, the .40 caliber shell casing found in his room – was planted by police (and later destroyed to cover up this fact) and that fabricated evidence was presented at trial. However, each time this argument was presented, either in a motion for relief from judgment or habeas petition, it was properly denied for lack of merit. **Exhibit TT**. The claim still is still without merit, where Smith has not even taken the time to depose any of the individuals he so boldly claims planted evidence, and Smith has not otherwise proffered any additional proofs that have not already been considered and rejected by the Michigan and Federal court systems. Indeed, aside from Smith's own self-serving, conclusory and entirely speculative testimony, which is again blatantly contradicted by the record, there is absolutely no support for the claim that any of these DPD Defendants personally fabricated ballistics evidence or, for that matter, any other evidenced collected during the investigation.

{01857613-1 }

### iii.   Theory #3: Allegedly Fabricated Testimony By Jailhouse Informant, Edward Allen.

Smith also cannot demonstrate that any of these DPD Defendants fabricated or knowingly used perjured testimony of jailhouse informant, Edward Allen. First, although Allen would eventually recant his testimony at Smith's trial, it cannot be overstated that he waited to do so until June 2013 – almost 20 years after Smith's trial. **Exhibit OO**. It is well-settled that affidavits by witnesses recanting their trial testimony are looked upon with extreme suspicion. *United States v. Willis*, 257 F.3d 636, 642-643 (6th Cir. 2001).

Allen's deposition testimony in this case should similarly be taken with a grain of salt[5] and, even if Allen is to be believed, any reliance by Smith on Allen's testimony to establish a fabrication of evidence claim is misdirected. Allen denies having ever encountered Smith while in Wayne County Jail, **Exhibit L**, p. 83. However, he explained that he was locked up with Smith's co-defendant, Jay Clay, and that he learned information relating to the case from Clay. **Exhibit L**, pp. 13,18-19, 48-50, 71-72, 74-75. According to Allen, Clay's defense attorney, Otis Culpepper, propositioned Allen to help Clay "beat the case" by pinning the murder on Smith, in exchange for money. **Exhibit** L, pp. 13, 18-19, 48-50, 71-72, 79. Allen

---

[5] Allen admittedly suffers from various mental health conditions, including paranoid delusions, he refuses to take medications as recommended by doctors and he has received psychiatric hospitalization twice in the last couple of years. **Exhibit L**, pp. 43-45, 89-90, 111.

{01857613-1 }

then concocted a story to get attention from homicide detectives, stating: "I had to make it look like me and him got into it in the county jail and he threatened me and bragged about he was a killer, and I felt for my life, and I had to write homicide and they came and writted me out over to the 9th floor." **Exhibit L**, p. 14. It was at this point that Allen allegedly wrote Ofc. Childs stating the foregoing, **Exhibit L**, p. 49, and then gave a statement to Ofc. Collins and "prosecutors." **Exhibit L**, p. 30. Allen, consistent with his trial testimony, also confirmed that he was not promised anything in exchange for his cooperation. **Exhibit L**, pp. 66, 68-69.

Under these circumstances, it cannot be said that Allen's testimony was solicited by any of the DPD Defendants. Rather, it was at the request of Clay's defense attorney, Mr. Culpepper, that Allen came forward with his story – which, if fabricated, was fabricated by *him*. Moreover, Smith has not alleged and cannot demonstrate that any these DPD Defendants were *personally* involved in taking Allen's statement (because it was taken by Ofc. Collins), or that they were *personally* aware of the substance and falsity of Allen's statement and eventual trial testimony. Smith's failure to plead and prove his claim with particularity as *each* DPD Defendant is enough to warrant dismissal of his claim. *Robertson,* 753 F.3d at 615; *Hayerman*, 680 F.3d at 647.

### 4. Smith Cannot Maintain A §1983 Claim For Malicious Prosecution (Count III).

38

The Fourth Amendment guarantees the right to be free of unjust prosecution. *Mills v. Barnard*, 869 F.3d 473, 479-90 (6th Cir. 2017). A malicious prosecution claim has four elements: "(1) that a criminal prosecution was initiated against the plaintiff and that the defendant ma[d]e, influence[d], or participate[d] in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that, as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 480 (quoting *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)).

### i.     Probable Cause

As demonstrated above, there was probable cause to charge Smith with murder irrespective of any evidence he now alleges was fabricated, including his statement to Ofc. Childs and the statement/testimony of Edward Allen – neither of which was considered or relied upon by the prosecutor and district court in finding probable cause for Smith's arrest and bind over. The issue of probable cause, having already been fully litigated and decided in the trial court, cannot be relitigated here. *Autrey*, 512 Fed. App'x. at 583 (6th Cir. 2013); *Smith*, 136 F.3d at 1077.[6] Where there was probable cause to prosecute Smith, his malicious prosecution claim fails.

---

[6] For the same reason, Plaintiff's state law malicious prosecution claim (Count VII) must be dismissed.

{01857613-1 }

### ii. Influence Or Participation

Smith additionally cannot demonstrate that the DPD Defendants instituted or maintained the criminal proceedings against Smith. His criminal prosecution was handled by the WCPO, which is not beholden to any of the DPD Defendants, statutorily or otherwise, and whose authority flows from the State of Michigan. As agents of an investigatory entity, the DPD Defendants cannot and did not direct the WCPO to pursue Smith's criminal prosecution. Moreover, none of these DPD Defendants oversaw the investigation or drafted the Investigator's Report/Warrant Request. Rather, that responsibility fell with Sgt. Henahan, the OIC, who is not a named defendant in this lawsuit.

### iii. Favorable Termination

Moreover, although Smith has been released from prison, his malicious prosecution claim fails because he did not achieve favorable termination when his criminal proceedings were dismissed *without prejudice*. To be a favorable termination, the criminal prosecution needs to be terminated in a manner where the criminal defendant was found "not guilty" or "innocent." See *Dunn v. State of Tenn*., 697 F.2d 121, 127 n. 8 (6th Cir. 1982); see also Restatement (2d) of Torts §658(c)(1977). Dismissal without prejudice does not satisfy the favorable termination element. *Thorp v. D.C.*, 142 F.Supp.3d 132, 145 (D. D.C., 2015); *Craft v. Billingslea*, 2017 W.L. 6039559, at *5 (E.D. Mich., December 6, 2017); *Leslie v.*

*City of Detroit*, 2018 W.L. 1510636, at *6 (E.D. Mich., March 26, 2018). "Where the case is disposed of in a manner that leaves the question of the accused innocence unresolved, there generally can be no malicious prosecution claim by the accused," even if the case is dismissed with prejudice or if the dismissal was because of a key witness's credibility. *M.G. v. Young*, 825 F.3d 1259, 1262 (10th Cir. 2016).

Here, the WCPO merely adopted the CIU's recommendation that Smith be granted a new trial and, in turn, stipulated to dismissal of the original charges against Smith without prejudice. The charges were not dismissed on the merits and the dismissal without prejudice, with the possibility of being re-tried, does not reflect favorably on Smith's innocence. Moreover, for reasons previously articulated, any anticipated reliance by Smith on the Supreme Court's opinion in *Thompson*, 142 S. Ct. 133 to show that he achieved a favorable termination of the prosecution against him is misplaced. Consequently, because Smith cannot show a favorable termination of the underlying criminal proceedings, his federal malicious prosecution claim fails.

## 5.    Smith Cannot Maintain A §1983 Claim For Conspiracy (Count IV).

To make out a claim for conspiracy under § 1983, a plaintiff must show "that (1) a single plan existed, (2) the conspirators shared in a constitutional objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Robertson v.*

{01857613-1 }

*Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). "Although circumstantial evidence may prove a conspiracy, '[i]t is well-settled that *conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983*.'" *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011), quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

Here, Smith offers a boilerplate recitation of the elements of conspiracy but no details as to how Defendants implemented their allegedly nefarious scheme: Defendants "had a single plan to convict…Smith for the shooting of Hayes," "shared a conspiratorial objective to deprive…Smith of his constitutional rights," and "committed overt acts in furtherance of the conspiracy." **Exhibit A**, ¶s 173-175. Simply put, Smith identifies the parties to the purported conspiracy but does not specify *what* was supposedly effectuated, *how* it was accomplished, *when* it occurred, or offer a theory as to *why* it happened.

In any event, Smith cannot prove that the DPD Defendants conspired between themselves or with any other defendant herein. Although the DPD Defendants each played a role in Smith's investigation, they all performed separate tasks, unbeknownst to one another. There was no singular plan to frame and convict Smith for murder.

42

Moreover, where all of Smith's other claims are properly dismissed and he cannot establish a separate, actionable tort, his civil conspiracy claim must be dismissed. See *Swain v. Morse*, 332 Mich. App. 510, 530 n. 13; 957 N.W.2d 396 (2020); *Advocacy Org for Patients & Providers v. Auto Club Ins Ass'n*, 257 Mich. App. 365, 384; 670 N.W.2d 569 (2003), aff'd 472 Mich. 91 (2005).

Finally, even if sufficiently pled, Smith's conspiracy claim is time-barred under the three-statute of limitations set forth in MCL 600.5805(2); *Mays v. Three Rivers Rubber Corp.*, 135 Mich. App. 42 (1984).

### 6.    Smith Cannot Maintain A §1983 Claim For Failure To Intervene (Count V).

In order to establish a claim against a police officer for failing to intervene, a plaintiff must prove that the officer had both the opportunity and the means to prevent the harm from occurring. *Smith v. City of Troy, Ohio*, 874 F.3d 938, 945–46 (6th Cir. 2017), citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Officers must affirmatively intervene to prevent other officers from violating an individual's constitutional rights, where that officer observes or has reason to know that (1) excessive force is being used; (2) a citizen has been unjustifiably arrested; or (3) any constitutional violation has been committed by a law enforcement official. *Jacobs v. Vill. of Ottawa Hills*, 5 F. App'x 390, 395 (6th Cir. 2001), citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982). Officers cannot be held liable for a failure to

43

intervene if they lacked "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 Fed. Appx. 631, 640 (6th Cir. 2013). Moreover, officers cannot be liable for a failure to intervene where there is no underlying constitutional violation. *Bonner-Turner v. City of Ecorse*, 627 Fed. Appx. 400, 412 (6th Cir. 2015); *Wiley v. Oberlin Police Dep't*, 330 Fed. Appx. 524, 530 (6th Cir. 2009).

Here, Smith has neither established that any DPD Defendant violated a constitutional right nor demonstrated that any DPD Defendant had an opportunity to intervene and prevent harm.  In *Peterson v. Heymes*, 931 F.3d 546 (6th Cir. 2019), the Sixth Circuit held that an exoneree's allegations were too weak and vague to show that a violation of constitutional rights was committed personally by a deputy, such that the deputy violated a clearly established constitutional right, and thus, the deputy was entitled to qualified immunity with respect to exoneree's due process, failure to intervene, malicious prosecution, and conspiracy claims. Smith has similarly failed to allege wrongdoing with any particularity and has declined to specify how each DPD Defendant failed to intervene, and for good reason: he cannot do so. His failure to intervene claim should be dismissed.

    **D.**    **Smith Has Failed To State Plausible State Law Claims In Avoidance Of Governmental Immunity.**

### 1.   The Governmental Immunity Standard.

Governmental employees acting within the scope of their authority and in the course of their employment are also immune from tort liability unless (1) their conduct rises to the level of "gross negligence" that is the one, most immediate and direct cause of injury to the plaintiff, MCL 691.1407(2) or (2) their conduct constitutes an "intentional tort" done without good faith or with malice. *Odom v Wayne County*, 482 Mich. 459, 479-80; 760 N.W.2d 217 (2008). Although Smith's state law claims for malicious prosecution, abuse of process, and intentional infliction of emotional distress are intentional torts, he has failed to allege specific facts or prove that the DPD Defendants acted with malice, and regardless, all state law claims are properly dismissed where they are time-barred.

### 2.   Smith Cannot Maintain A State Law Claim For Malicious Prosecution (Count VII).

Michigan's version of malicious prosecution mirrors the federal version, but additionally requires that a plaintiff establish that the defendant acted with malice. *Saltmarshall v. Prime Healthcare Services-Garden City LLC*, 831 F. App'x 764, 771 (6th Cir. 2020). As set forth above, Smith's arrest and prosecution was supported by probable cause, irrespective of any alleged misconduct by these DPD Defendants, and the criminal proceedings did not terminate in his favor where his convictions

{01857613-1 }

were dismissed without prejudice. Moreover, Smith has not sufficiently pled or shown how the DPD Defendants acted with malice.

Smith's state law malicious prosecution claim is also time-bared where the applicable two-year statute of limitations set forth in MCL 600.5805(7) began running on the date of his arrest in 1994 and expired in 1996.

### 3. Smith Cannot Maintain A State Law Claim For Abuse Of Process (Count VIII).

As with his other state law claims, Smith's abuse of process claim, even if sufficiently pled (which Defendants dispute), is precluded by the three-year statute of limitations under MCL 600.5805(2). See also, *Howard v. Trott & Trott, P.C.*, No. 304457, 2012 WL 3966274, at *4 (Mich. Ct. App. Sept. 11, 2012). In *Howard*, a fraud and abuse of process case, the court noted that the statute of limitations expired, as the plaintiff brought her claim nearly six years after an eviction hearing, which was the culmination of the allegedly abusive events. By analogy, Smith's trial would have served as the terminal event at issue. So, as Smith filed his claim decades after his conviction, his claim is time-barred.

### 4. Smith Cannot Maintain A State Law Claim For Intentional Infliction Of Emotional Distress (Count IX).

Even if Smith has sufficiently pled the elements of an intentional infliction of emotional distress claim (which Defendants deny), such claim is still time-barred under MCL 600.5805(2). The statute of limitations for this claim, which accrues

{01857613-1 }

when the wrong is done, is three years, irrespective of when damage results. *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, 264 Mich. App. 632, 638–639 (2004); *Nelson v. Ho*, 222 Mich. App. 74, 85 (1997). The events giving rise to this claim occurred in 1994 and this claim should have been brought no later than 1997. Accordingly, this claim must be dismissed.

## V.    CONCLUSION AND RELIEF REQUESTED

**WHEREFORE**, for the foregoing reasons, Defendants pray that this Honorable Court grant their Motion for Summary Judgment, along with any other relief deemed warranted under the circumstances.

Respectfully Submitted,

**CUMMINGS, MCCLOREY, DAVIS & ACHO**

By: /s/ *Shane R. Nolan*
    SHANE R. NOLAN (P78008)
    17436 College Parkway
    Livonia, MI  48152
    (734) 261-2400 / Fax: (734) 261-4510
Dated: July 31, 2023    snolan@cmda-law.com

47

{01857613-1 }

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing paper was served upon all counsel

of record to the above cause of action via the Court's ECF System.

<u>/s/ <i>Jessica E. Bluhm</i>      </u>

Dated: July 31, 2023                   Jessica E. Bluhm, Legal Assistant