UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY SMITH,

      Plaintiff,

v.                                                                          No. 2:21-cv-12070-DML-APP
                                                                            Hon. David M. Lawson
COUNTY OF WAYNE,                                                            Mag. Judge Anthony P. Patti
ROBERT J. DONALDSON,
MONICA CHILDS, GENE KARVONEN,
ROGER MUELLER, WALTER LOVE,
KEITH CHISHOLM and JOHN DEMBINSKI,

      Defendants.

_____/

## **DEFENDANTS WAYNE COUNTY AND ROBERT DONALDSON'S MOTION FOR SUMMARY JUDGMENT**

**NOW COME** Defendants, **WAYNE COUNTY** and **ROBERT DONALDSON**, by

and through their attorneys, **PLUNKETT COONEY**, and pursuant to Fed. R. Civ. P.

56(c), move this Honorable Court for summary judgment of Plaintiff's Complaint.

In support of their motion, Defendants rely on the attached Brief in Support.

Pursuant to Local Rule 7.1(a), concurrence in the relief requested by this

Motion was sought via email on July 24, 2023, and the basis for the Motion was

provided in detail.  Undersigned counsel has also had an opportunity to discuss the

merits of this Motion with Plaintiff's counsel via telephone on multiple occasions.

Concurrence was declined.

**WHEREFORE,** Defendants, **WAYNE COUNTY**, and **ROBERT DONALDSON**, respectfully request, for the foregoing reasons, that this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's claims against them, with costs and attorney fees to be taxed.

Respectfully submitted,

**PLUNKETT COONEY**

By:   */s/Michael D. Hanchett*
AUDREY J. FORBUSH (P41744)
MICHAEL D. HANCHETT (P80974)
Attorneys for Defs. Wayne County,
Robert Agacinski, and Janet Napp
Plaza One Financial Center
111 E. Court Street – Suite 1B
Flint, MI  48502
(810) 342-7014
aforbush@plunkettcooney.com
Dated:  July 31, 2023                          mhanchett@plunkettcooney.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LARRY SMITH,

       Plaintiff,

v.                                                                      No. 2:21-cv-12070-DML-APP
                                                                        Hon. David M. Lawson
COUNTY OF WAYNE,                                                        Mag. Judge Anthony P. Patti
ROBERT J. DONALDSON,
MONICA CHILDS, GENE KARVONEN,
ROGER MUELLER, WALTER LOVE,
KEITH CHISHOLM and JOHN DEMBINSKI,

       Defendants.

_____/


## BRIEF IN SUPPORT OF
## DEFENDANTS WAYNE COUNTY AND ROBERT DONALDSON'S
## MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.........................................................................................i

TABLE OF AUTHORITIES ...............................................................................ii

QUESTIONS PRESENTED...............................................................................vi

INTRODUCTION ...................................................................................... 1

STATEMENT OF RELEVANT FACTS...................................................... 1

STANDARD OF REVIEW ......................................................................... 3

ARGUMENT .............................................................................................. 4

I.  DONALDSON IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY FROM PLAINTIFF'S FEDERAL CLAIMS................................................................... 4

II.  IN THE ALTERNATIVE, DONALDSON IS ENTITLED TO QUALIFIED IMMUNITY. ................................................... 11

III.  PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW ................................................................. 14

IV.  ALL OF PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL. ................................................ 15

V.  PLAINTIFF CANNOT ESTABLISH MUNICIPAL LIABILITY AGAINST WAYNE COUNTY....................................... 19

A.  Plaintiff's Claims Against Wayne County are barred based on his executed waiver in his Wrongful Imprisonment Compensation Act Case. ............................................................................... 19

B.  Prosecutor's Acting as Agent of State of Michigan, Not Wayne County............................................. 22

C.  Even if Donaldson were acting as an agent of the County, Plaintiff has failed to present a sufficient *Monell* claim to survive this Motion................................ 25

CONCLUSION............................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Creighton,*
  483 U.S. 635 (1987).................................................................................. 13

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)..................................................................................... 4

*Ashford v. Raby,*
  951 F.3d 798 (6th Cir. 2020) ..................................................................... 13

*Barrow v. Pritchard,*
  235 Mich. App. 478; 597 N.W.2d 853 (1999) ......................................... 16

*Beck v. Hamblen County, Tennessee,*
  969 F.3d 592 (6th Cir. 2020) ..................................................................... 13

*Cady v. Arenac Cnty.,*
  574 F.3d 334 (6th Cir. 2009) ......................................................... 7, 23, 24

*Celotex Corp. v. Catrett,*
  477 U.S.  317 (1986)..................................................................................... 4

*City of St. Louis v. Praprotnik,*
  485 U.S. 112 (1988)..................................................................................... 25

*Clark v. Abdallah*, et al.,
  No. 21-10001, -- WL – (E.D. Mich. July 28, 2023) ................................ 21

*Connick v. Thompson,*
  563 U.S. 51, 131 S. Ct. 1350 (2011) .........................................26, 27, 28

*Cretacci v. Hare,*
  No. 21-5786, 2022 WL 17176781 (6th Cir. Nov. 23, 2022)................................ 27

*D'Ambrosio v. Marino,*
  747 F.3d 378 (6th Cir. 2014) ............................................................. 24, 26

*Davis v. Eddie,,*
  130 Mich. App. 284 (1984) ........................................................................ 15

*DeJesus v. Harvey,*
  No. 22-CV-12879, 2023 WL 4372682 (E.D. Mich. July 6, 2023)..................... 21

*Doe v. Claiborne Cnty.,*
  103 F.3d 495 (6th Cir. 1996)............................................................... 25, 27

*Fisher v. Nissan N. Am., Inc.*,
    951 F.3d 409 (6th Cir. 2020) ................................................................. 3

*Garner v. Memphis Police Dept.*,
    8 F.3d 358 (6th Cir. 1993) ................................................................... 26

*Gary v. City of Detroit*,
    399 F.3d 612, 617 (6th Cir. 2005) ....................................................... 23

*Grand Rapids v. Brookstone Capital, LLC*,
    334 Mich. App. 452 (2020) ................................................................. 20

*Grant v. Hollenbach*,
    870 F.2d 1135 (6th Cir. 1989) ............................................................ 12

*Groulx v. Bay Cnty. Prosecutor Office*,
    No. 335811, 2018 WL 1072595 (Mich. Ct. App. Feb. 27, 2018) ...................... 15

*Hamilton's Bogarts, Inc. v. Michigan*,
    501 F.3d 644 (6th Cir., 2007) ............................................................. 17

*Hanson v. Madison County Detention Center*,
    736 Fed. Appx. 521 (2018) .................................................................. 26

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .......................................................................... 12

*Hearring v. Sliwowski*,
    712 F.3d 275 (6th Cir. 2013) .............................................................. 13

*Higgason v. Stephens*,
    288 F.3d 868 (6th Cir. 2002) .............................................................. 10

*Holloway v. Bush*,
    220 F.3d 767 (6th Cir. 2000) ............................................................... 9

*Hunter v. Bryant*,
    502 U.S. 224 (1991) .......................................................................... 12

*Imbler v. Pachtman*,
    424 U.S. 409 (1976) ........................................................ 4, 7, 8, 9, 10, 14

*Jones v. Shankland*,
    800 F.2d 77 (6th Cir. 1986) ............................................................ 10, 11

*Koubriti v. Convertino*,
    593 F.3d 459 (6th Cir. 2010) .............................................................. 11

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*,
507 U.S. 163 (1993)........................................................................................ 23

*Lopez v. LeMaster*,
172 F.3d 756 (10th Cir. 1999)........................................................................ 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).......................................................................................... 4

*Migra v. Warren City Sch. Dist. Bd. of Ed.*,
465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)................................... 16

*Miller v. Rybicki*,
259 F. Supp. 3d 688 (E.D. Mich. 2017) ....................................................... 4

*Moldowan v. City of Warren*,
578 F.3d 351 (6th Cir. 2009) .................................................................. 12, 13

*Monat v. State Farm Ins Co*,
469 Mich. 679; 677 N.W.2d 843 (2004) .................................................... 16

*Monell v. Dep't of Social Services*,
436 U.S. 658 (1978)............................................... 21, 22, 25, 26, 27, 28

*Moore v. Illinois*,
408 U.S. 786, 92 S.Ct. 2562 (1972) ............................................................ 14

*Moore v. Walton*,
No. 11-11146, 2011 WL 1750882 (E.D. Mich. May 6, 2011) ........... 10

*Payton v. Wayne County*,
137 Mich. App. 361 (1984) ............................................................................ 14

*Pearson v. Callahan*,
555 U.S. 223 (2009)......................................................................................... 13

*Peterson v. City of Fort Worth, Tex.*,
588 F.3d 838, n. 4 (5th Cir. 2009) .............................................................. 28

*Peterson v. Heymes*,
931 F.3d 546 (6th Cir. 2019) ........................................................................ 16

*Price v. Montgomery County, Kentucky*,
___ F.4th ___, No. 21-6076, 2023 WL 4346954 (6th Cir. July 5, 2023)............ 11

*Pusey v. City of Youngstown*,
11 F.3d 652 (6th Cir. 1993)..................................................................... 23, 24

*Shay v. Aldrich,*
    487 Mich. 648 (2010) ................................................................................................ 20

*Spurlock v. Thompson,*
    330 F.3d 791 (6th Cir. 2003) .................................................................................9, 10

*Stanton v. Sims,*
    571 U.S. 2 (2013)...................................................................................................... 12

*Town of Newton v. Rumery,*
    480 U.S. 386 (1987)................................................................................................. 20

*Trendall v. Hackel,*
    No. 345520, 2019 WL 4389172 (Mich. Ct. App. Sept. 12, 2019)..................... 15

*United States v. Bernard,*
    625 F.2d 854 (9th Cir. 1980) ................................................................................. 14

*Van de Kamp v. Goldstein,*
    555 U.S. 335, 129 S.Ct. 855, 172 L.Ed.2d 706 (2009).....................................7, 15

*Vereecke v. Huron Valley School Dist.,*
    609 F.3d 392 (6th Cir. 2010) ................................................................................. 23

*Wilson v. Layne,*
    526 U.S. 603 (1999)................................................................................................. 13

**Statutes**

28 U.S.C. § 1738 ............................................................................................................ 15

42 U.S.C. § 1983 ........................................................................................5, 6, 7, 9, 20, 21, 22

MCL 49.153................................................................................................................... 23

MCL 691.1407............................................................................................................... 15

MCL 691.1752(e)..................................................................................................... 20, 21

MCL 691.1755(8) ...................................................................................................19, 20, 21

**Other Authorities**

Restatement (Second) of Judgments § 13 (1982) ............................................. 16

Restatement 2d Judgments, § 29............................................................................ 17

Restatement 2d Judgments, § 85............................................................................ 17

**Constitutional Provisions**

First Amendment.......................................................................................................... 7

## <u>QUESTIONS PRESENTED</u>

I.   **ARE PLAINTIFF'S FEDERAL CLAIMS AGAINST DEFENDANT PROSECUTOR DONALDSON BARRED BY ABSOLUTE PROSECUTORIAL IMMUNITY ?**

Plaintiff would answer, "No."
Defendant would answer, "Yes."

II.   **IN THE ALTERNATIVE, ARE DEFENDANT PROSECUTOR DONALDSON BARRED BY QUALIFIED IMMUNITY?**

Plaintiff would answer, "No."
Defendant would answer, "Yes."

III.   **ARE PLAINTIFF'S STATE LAW CLAIMS AGAINST DEFENDANT PROSECUTOR DONALDSON BARRED BY COMMON-LAW PROSECUTORIAL IMMUNITY?**

Plaintiff would answer, "No."
Defendant would answer, "Yes."

IV.   **HAS PLAINTIFF FAILED TO ESTABLISH MUNICIPAL LIABILITY AGAINST WAYNE COUNTY?**

Plaintiff would answer, "No."
Defendant would answer, "Yes."

## INTRODUCTION

Plaintiff filed this present action on September 3, 2021, naming as defendants Wayne County and Robert Donaldson ("Donaldson") among others. Donaldson was the prosecutor who handled Plaintiff's trial. Plaintiff alleges the various named defendants fabricated evidence, used false testimony from inmate informants, intentionally failed to follow legitimate leads to the killer, and failed to investigate exculpatory evidence. (ECF No. 23). Even taking the facts in the light most favorable to Plaintiff, he has failed to adduce evidence to create a genuine issue of material fact to overcome Donaldson's immunity and support a municipal liability claim against Wayne County.

## STATEMENT OF RELEVANT FACTS

On March 24, 1994, Kenneth Hayes was fatally shot in the City of Detroit. (ECF No. 23, ¶ 13). On the same day as the shooting, Plaintiff turned himself in to the DPD after learning that the DPD was looking for him in connection with the Hayes murder. (ECF No. 23, ¶ 16). After an investigation by the DPD, Plaintiff was charged with first-degree murder and possession of a firearm in the commission of a felony for the murder of Hayes. (ECF No. 23, ¶ 21). More investigation and interrogations were conducted by the DPD. (ECF No. 23, ¶¶ 28-34). Plaintiff was detained under legal process on March 27, 1994. (ECF No. 23, ¶ 22).

Plaintiff's trial for the murder of Hayes began on November 22, 1994. (ECF

No. 23, ¶ 39). Plaintiff alleges that Defendant Karvonen and Defendant Mueller of the DPD falsely testified about the .40 caliber shell casings found in the area where Hayes was shot. (ECF No. 23, ¶ 40). Plaintiff also alleges that Defendant Donaldson "and/or" Defendant Childs promised informant Edward Chico Allen leniency in his criminal case if he falsely testified that Plaintiff bragged about shooting Hayes. (ECF No. 23, ¶ 50). Plaintiff claims that Defendant Donaldson "and/or" Defendant Childs promised Allen housing at the DPD headquarters 9th floor lock-up instead of the jail if he falsely testified that Plaintiff bragged about shooting Hayes. (ECF No. 23, ¶ 51). Plaintiff alleges that at the trial, Allen falsely testified that Plaintiff confessed to shooting Hayes. (ECF No. 23, ¶ 54).

On November 25, 1994, Plaintiff was convicted of first-degree murder and possession of a firearm in the commission of a felony. (ECF No. 23, ¶ 56). Plaintiff was sentenced to life in prison without the possibility of parole. (ECF No. 23, ¶ 59).

In 2008, the Michigan State Police ("MSP") performed an audit on the DPD Crime Laboratory after significant error rates were shown. (ECF No. 23, ¶ 61). Plaintiff requested that the ballistics evidence from the Hayes shooting case be re-tested by the MSP. *Id.* The MSP's review of the ballistics evidence determined that one spent .40 caliber shell casing allegedly found in Plaintiff's bedroom had been destroyed, while the seven .40 caliber shell casings allegedly found in the area where Hayes had been fatally shot had not been destroyed. (ECF No. 23, ¶ 62).

After application by Plaintiff, the Wayne County Prosecutor's Office's Conviction Integrity Unit (CIU) conducted an investigation of Plaintiff's criminal case. Upon completion of the investigation, the CIU determined that new evidence was present that warranted Plaintiff being granted a new trial. Due to the length of time that had passed since Plaintiff's 1994 trial, the CIU requested that the Court dismiss the charges against Plaintiff.

Upon agreement by the Wayne County Prosecutor's Office and defense counsel for Plaintiff, the Third Judicial Circuit Court dismissed the criminal charges against Plaintiff[1]. (ECF No. 23, ¶¶ 63-64). Plaintiff was released from prison on this same day. (ECF No. 23, ¶ 65).

## STANDARD OF REVIEW

When the moving party "shows that there is no genuine issue as to any material fact," the movant may be properly entitled to Summary Judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court should "[view] all evidence in the light most favorable to the non-moving party and [draw] 'all justifiable inferences' in his favor." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting

---

[1] Should the Court accept the Co-Defendants' lack of jurisdiction argument (ECF No. 93, PageID.1465-1469) due to alleged improper vacation of conviction which therefore establishes that Plaintiff's claim is not properly accrued, Defendants concur in and adopt by reference said argument and request dismissal.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To create a genuine issue of material fact, the non-moving party must go beyond the presentation of some admissible evidence on a disputed issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Miller v. Rybicki*, 259 F. Supp. 3d 688, 695 (E.D. Mich. 2017) (quoting *Anderson*, 477 U.S. at 252) (emphasis added). Instead, the non-moving party must produce sufficient evidence to require a submission of the factual disagreement to the jury. *Id.* If the record considered in its entirety <u>cannot</u> lead a rational trier of fact to find for the nonmovant, there is no genuine issue of fact for trial. *Matsushita*, 475 U.S. at 587 (emphasis added). When no evidence supports the nonmoving party's claims, summary judgment may be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## ARGUMENT

## I. DONALDSON IS ENTITLED TO ABSOLUTE PROSECUTORIAL IMMUNITY FROM PLAINTIFF'S FEDERAL CLAIMS

The seminal case addressing prosecutorial immunity is *Imbler v. Pachtman*, 424 U.S. 409 (1976). Pachtman was a deputy prosecutor who initiated and pursued criminal prosecution of Imbler for an attempted robbery that led to the death of a market owner. *Id.* Imbler asserted an alibi defense. *Id.* Pachtman presented the

case for the People of California relying on an eyewitness and other evidence. *Id*.

Imbler was convicted by a jury of first-degree murder. *Id.* After serving several

years in prison, Imbler was released on a federal habeas writ. *Id*.

Imbler then brought a § 1983 suit against the police officers and prosecutor

Pachtman. In the suit, Imbler alleged that at trial Pachtman had knowingly used

false testimony, suppressed exculpatory fingerprint evidence, and introduced an

artist's sketch of the perpetrator which Pachtman knew had been altered after the

fact to more closely resemble Imbler. *Id.* Although these allegations were egregious,

the Supreme Court unanimously held that Pachtman was entitled to absolute

prosecutorial immunity:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits
> would undermine performance of his duties no less than would the
> threat of common-law suits for malicious prosecution… The public
> trust of the prosecutor's office would suffer if he were constrained in
> making every decision by the consequences in terms of his own
> potential liability in a suit for damages.  Such suits could be expected
> with some frequency, for a defendant often will transform his
> resentment at being prosecuted into the ascription of improper and
> malicious actions to the State's advocate.  Further, if the prosecutor
> could be made to answer in court each time such a person charged him
> with wrongdoing, his energy and attention would be diverted from the
> pressing duty of enforcing the criminal law.

*Id*. at 424-25. The Court explained that other remedies, but not money damages,

were available as a check and balance on unethical prosecutors:

> The ultimate fairness of the operation of the system itself could be
> weakened by subjecting prosecutors to § 1983 liability.  Various post-

trial procedures are available to determine whether an accused has received a fair trial. These procedures include the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. In all of these the attention of the reviewing judge or tribunal is focused primarily on whether there was a fair trial under law. This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment.

*Id*. at 427. The Supreme Court held that the key to determining whether a prosecutor is entitled to absolute immunity is whether he or she was engaged in a function "intimately associated with" the judicial process. The Supreme Court distinguished between "investigative" activities and those associated with a prosecutor's role in the judicial process:

The purpose of the Court of Appeals' focus upon the functional nature of the activities rather than respondent's status was to distinguish and leave standing those cases, in its Circuit and in some others, which hold that a prosecutor engaged in certain investigative activities enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's. We agree with the Court of Appeals that respondent's activities were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force. We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate. We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from civil suit for damages under § 1983.

*Id*. at 430-31. Since Pachtman's alleged actions took place at trial, or in the preparation for trial, the Court found they were prosecutorial and covered by

absolute immunity. *Id.*

In a more recent case, *Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S.Ct. 855, 861, 172 L.Ed.2d 706 (2009), the Supreme Court summarized the law on prosecutorial immunity:

> In the years since *Imbler*, we have held that absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding, or appears in court to present evidence in support of a search warrant application. We have held that absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application.

The Sixth Circuit has followed this same "functional approach" in deciding whether a prosecutor is entitled to absolute immunity. In *Cady v. Arenac Cnty.*, 574 F.3d 334 (6th Cir. 2009), Cady alleged the prosecutor violated his constitutional rights by conditioning a plea on the plaintiff waiving his ability to bring a civil action against the individuals whom the plaintiff allegedly assaulted. The Sixth Circuit held that while the condition was questionable, and perhaps a First Amendment violation, the complaint was properly dismissed based on absolute prosecutorial immunity. *Id.* at 340. The Sixth Circuit explained that "prosecutors are absolutely immune from liability under § 1983 for their conduct… insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Id.* Furthermore, "courts will bar § 1983 suits arising out of even unquestionably illegal

or improper conduct by the prosecutor so long as the general nature of the action in question is part of the normal duties of a prosecutor." *Id.* (quoting *Imbler*, 424 U.S. at 413).

In this case, Plaintiff's claims against Donaldson are premised solely on Donaldson's prosecutorial functions that are intimately associated with the judicial process. Plaintiff challenges the roles Donaldson played during his criminal proceedings, and his alleged lack of disclosure of information during those proceedings. But Plaintiff has produced no facts showing Donaldson acted outside the scope of his prosecutorial duties. In fact, the allegations against Donaldson are limited in this case. In his Complaint, Plaintiff alleges that "Defendant Donaldson and/or Defendant Childs promised Allen leniency in his criminal case if he falsely testified that Larry Smith bragged about shooting Hayes." (ECF No. 23, ¶ 50). Plaintiff also alleges that "Defendant Donaldson and/or Defendant Childs promised Allen housing at the DPD headquarters 9th floor lock-up instead of the jail if he falsely testified that Larry Smith bragged about shooting Hayes." (ECF No. 23, ¶ 51). Plaintiff then claims that Allen falsely testified at the Smith trial. (ECF No. 23, ¶ 54). Finally, the only other general allegation against Donaldson, and the rest of the other defendants for that matter, is that he failed to intervene in the alleged wrongdoing of the other defendants. (ECF No. 23, Count V). Even taking these statements as true, Donaldson's actions during Plaintiff's trial was "intimately

associated with the judicial phase of the criminal process" such that Donaldson is <u>immunized</u> from § 1983 liability here. See *Imbler*, 429 U.S. at 430 (emphasis added).

The Sixth Circuit has explained "'[t]he analytical key to prosecutorial immunity, therefore, is *advocacy*—whether the actions in question are those of an advocate.'" *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003), quoting *Holloway v. Bush*, 220 F.3d 767, 775 (6th Cir. 2000). (Emphasis in original). "Thus, the 'critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process.'" *Id*. At every stage of these proceedings, Donaldson was functioning only in his capacity as a prosecutor and advocate in the judicial phase of the criminal process. Plaintiff has produced no evidence demonstrating anything to the contrary. In fact, during his deposition, Plaintiff admits that he only knows Donaldson as the prosecutor at his criminal trial, and that he did not have any contact with anyone from the Wayne County Prosecutor's Office until his trial:

> Q.   Is it fair to state that, the only time you had contact with anyone that you believe to be from the Wayne County prosecuting attorney's office, was either when you were at a hearing or at your trial, you were in court?
> **A.   Yes, ma'am.**
> Q.   Do you know who Robert Donaldson is?
> **A.   Yes, ma'am.**
> Q.   How do you know who Robert Donaldson is?
> **A.   He was the prosecutor in my case.**

(**Ex. A**, Plf's Dep., p. 206). Plaintiff admitted that he did not have any firsthand

knowledge or information that Donaldson concealed any evidence in his criminal trial. (**Ex. A**, p. 206). Finally, one of the lead investigators in the criminal investigation, Monica Childs, admitted during her deposition that she did not have any contact with anyone from the Wayne County Prosecutor's Office before the trial. (**Ex. B**, Monica Childs Dep., p. 174).

It is evident from the record that absolute prosecutorial immunity applies to Donaldson's actions related to the plaintiff's prosecution. See also *Moore v. Walton*, No. 11-11146, 2011 WL 1750882, *2 (E.D. Mich. May 6, 2011) (**Ex. C**) (holding a prosecutor's decision to prosecute the plaintiff, advocacy in court, communications with witnesses, and decisions related to the disposition of the case "are all part of his role as advocate" and protected by absolute prosecutorial immunity). Decisions related to the use of witness testimony are protected where they arise out of a defendants' "professional evaluation of the evidence assembled" and for "presentation of that evidence" to the factfinder. See *Higgason v. Stephens*, 288 F.3d 868, 879 (6th Cir. 2002). Expounding upon *Imbler*'s approval of the same, the Sixth Circuit explained in *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986), that "the use of perjured testimony and the non-disclosure of exculpatory information are certainly entitled to absolute immunity" (citing *Imbler*, 424 U.S. at 431 n.34). In *Spurlock v. Thompson*, *supra*, the Sixth Circuit reiterated that "prosecutorial decisions regarding witness testimony, including what witnesses to use at trial, and

10

what questions to ask them, are activities intimately associated with the judicial phase of a criminal trial and, therefore, are protected by absolute prosecutorial immunity." 330 F.3d at 798. The Sixth Circuit therefore held that a prosecutor's decision to have witnesses "testify falsely at [plaintiff]'s second criminal trial, even if done knowingly, is protected by absolute immunity." *Id.* This absolute immunity applies not only to presenting the witness at trial, but extends to preparing the witness to give perjured testimony. *Spurlock, supra*, 330 F.3d at 798 (absolute immunity for directing witnesses to falsify testimony at trial).

If plaintiff is asserting a claim against Donaldson for failing to disclose exculpatory information, that claim is also foreclosed by the prosecutorial immunity doctrine. Besides the Sixth Circuit's decision in *Jones v. Shankland, supra,* the Sixth Circuit has consistently held "that prosecutors maintain their immunity when intentionally failing to disclose exculpatory evidence." *Price v. Montgomery County, Kentucky*, ___ F.4th ___, No. 21-6076, 2023 WL 4346954, at *5 (6th Cir. July 5, 2023)(**Ex. D**); *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010).

Thus, Plaintiff's federal law claims against Donaldson fail, as he is entitled to absolute prosecutorial immunity and the claims against him should be dismissed.

## II.   IN THE ALTERNATIVE, DONALDSON IS ENTITLED TO QUALIFIED IMMUNITY.

If the Court should determine that Donaldson is not entitled to absolute

immunity, he should be given qualified immunity. "Even if not entitled to absolute immunity, a prosecuting attorney may claim qualified immunity." *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). Government officials generally enjoy a presumption of qualified immunity from civil suits, such that they are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 2, 3-5 (2013). As the Supreme Court explained, "[t]his accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

Thus, even assuming Donaldson's conduct could be considered administrative or investigative and subject only to qualified immunity, that immunity still shields Donaldson from liability in this case. Qualified immunity applies unless: 1) Donaldson committed a constitutional violation, and 2) the right that was violated was a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"In determining whether a right is clearly established, we may rely on decisions of the Supreme Court, decisions of this court and courts within this circuit, and in limited circumstances, on decisions of other circuits." *Moldowan v. City of Warren*, 578 F.3d 351, 381-81 (6th Cir. 2009). When evaluating whether the specific

right has been recognized, "[t]he contours of the right must be sufficiently clear that

a reasonable official would understand that what he is doing violates that right."

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In other words, 'the unlawfulness

must be apparent.'" *Moldowan*, 578 F.3d at 382 (quoting *Anderson*, 483 U.S. at 640).

Qualified immunity applies irrespective of whether the official's error was a

mistake of law, a mistake of fact, or a mistake of fact and law. *Pearson v. Callahan*,

555 U.S. 223, 231 (2009).

The Sixth Circuit has recently rejected a broad definition of what can

constitute clearly established law:

> The district court thus turned to two out-of-circuit decisions—*Lopez v. LeMaster*, 172 F.3d 756, 761–62 (10th Cir. 1999), and *Hale*, 50 F.3d at 1583–84. **Yet 'our sister circuits' precedents are usually irrelevant to the '"clearly established"' inquiry**.' *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020). They can create a clearly established rule only in extraordinary situations. *See Hearring v. Sliwowski*, 712 F.3d 275, 282 (6th Cir. 2013). The precedent 'must point [unmistakably] to the unconstitutionality of the conduct and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.' *Perez*, 466 F.3d at 427 (alteration in original) (citation omitted).

*Beck v. Hamblen County, Tennessee*, 969 F.3d 592, 603 (6th Cir. 2020) (Emphasis

added). At a minimum, then, to defeat qualified immunity there must have been in

1994 a Supreme Court decision, a Sixth Circuit decision, or "a robust 'consensus of

cases of persuasive authority'" (*Ashcroft, supra*, 563 U.S. at 742, quoting *Wilson v.

Layne*, 526 U.S. 603, 617 (1999)).

Here, there is no case law from the applicable timeframe to show that a reasonable prosecutor would have understood that the complained of actions violated Plaintiff's rights. Even assuming Donaldson's actions were administrative or investigative, it cannot be said that his action's unlawfulness is apparent, particularly when reviewing the existing case law in the mid-1990s. Cases analyzing sets of facts analogous to this case have found that a constitutional violation did not exist. *See Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."); *United States v. Bernard*, 625 F.2d 854, 860 (9th Cir. 1980) ("Nor can we find a constitutional basis for compelling the creation of [written witness statements] under *Brady*.").

Thus, Plaintiff cannot overcome qualified immunity because he cannot establish that Donaldson violated his clearly established constitutional rights.

## III.    PLAINTIFF'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW

Counts VII, VIII, IX allege violations of state law against Donaldson for malicious prosecution, abuse of process, and intentional infliction of emotional distress. (ECF No. 1).

Michigan courts have recognized a common-law prosecutorial immunity similar to the federal absolute immunity set forth by the United States Supreme Court in *Imbler*, *supra*. *Payton v. Wayne County*, 137 Mich. App. 361, 371 (1984);

*Davis v. Eddie,*, 130 Mich. App. 284, 287 (1984) (both cases citing to *Imbler* when establishing a prosecutor's right to common-law prosecutorial immunity). Furthermore, courts continue to recognize this common-law immunity despite the passing of Michigan's Governmental Tort Liability Act, § 691.1407, in 1986. See *Trendall v. Hackel*, No. 345520, 2019 WL 4389172 (Mich. Ct. App. Sept. 12, 2019) (**Ex. E**) (quoting the United States Supreme Court decisions in *Imbler* and *Van de Kamp*); *Groulx v. Bay Cnty. Prosecutor Office*, No. 335811, 2018 WL 1072595 (Mich. Ct. App. Feb. 27, 2018). (**Ex. F**).

Therefore, for the reasons set forth in detail above, Defendant Donaldson is also entitled to both statutory and common-law prosecutorial immunity from Plaintiff's state law claims.

## IV. ALL OF PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL.

All of Plaintiff's claims are barred by collateral estoppel because these claims have been actually litigated and determined by valid and final judgments in both Michigan and federal courts in post-judgment proceedings. Plaintiff's claims cannot survive because they require the court to redetermine issues that were actually litigated and decided against Plaintiff in courts of competent jurisdiction.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give preclusive effect to state-court judgments whenever the courts of the State from

which the judgments emerged would do so." *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). State law determines the preclusive effect of a state court judgment. *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019). "Michigan law allows 'crossover estoppel,' which precludes the relitigation of an issue from a criminal proceeding in a subsequent civil proceeding, and vice versa. *Barrow v. Pritchard*, 235 Mich. App. 478; 597 N.W.2d 853, 855–56 (1999)." *Id.*

In Michigan, defensive collateral estoppel generally applies when: (1) an issue has been actually litigated and determined by a valid judgment; and (2) the party to be estopped had a full and fair opportunity to litigate the issue. *Monat v. State Farm Ins. Co.*, 469 Mich. 679; 677 N.W.2d 843, 845–46 (2004). Mutuality is not required when collateral estoppel is being invoked defensively. *Id.* at 844–45, 850.

The Michigan Supreme Court has endorsed the view of collateral estoppel advanced in the Restatement (Second) of Judgments. *Id.* at 847, 850. Section 13 of the Restatement (Second) of Judgments provides "for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). Comment *g.* to § 13 shows that "the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end

16

judgment... that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." *Id*. Unlike claim preclusion or res judicata, collateral estoppel or issue preclusion may apply when a decision is sufficiently firm to be given conclusive effect.

Collateral estoppel based on federal court rulings requires: "(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir., 2007).

These principles discussed in the Restatement of Judgments show that a party in a criminal proceeding who has had a full and fair opportunity to litigate an issue has received all the elements of due process and "there is not good reason for refusing to treat the issue as settled so far as he is concerned...." Restatement 2d Judgments, § 29, Comment (b) and § 85. The post-judgment proceedings held in state and federal court in Plaintiff's criminal case satisfy this standard.

Plaintiff's claims have been actually litigated and determined by a valid and

final judgment in the Michigan trial court. The Michigan Court of Appeals denied Plaintiff's appeal in 1997 and affirmed his murder conviction. (**Ex. G**, Court of Appeals Opinion). In 2003, Plaintiff filed a motion for relief from judgment. (**Ex. H**, Plaintiff's Motion for Relief from Judgment). In the Motion, Plaintiff brought the allegations in this case directly before the court, including providing an affidavit from Edward Allen where he claims he lied to police about Smith's involvement in the crime. (**Ex. H).** Smith's motion was denied, and the Judge specifically found that Allen's recantation was not credible. (**Ex. I**, Order Denying Motion for Relief from Judgment).  A second motion for relief from judgment was filed in 2010 and was also denied by the Court. (**Ex. J**, Second Motion for Relief from Judgment) (**Ex. K**, Second Order Denying Motion for Relief from Judgment).

Plaintiff's claims have been actually litigated and determined by a valid and final judgment in the federal court. In July 2007, Plaintiff filed a federal habeas petition. (**Ex. L**, Plaintiff's Habeas Corpus Petition). In the petition, Plaintiff details these same claims, including Edward Allen's claims that the Detroit Police Department solicited him to falsely testify against Plaintiff. After lengthy litigation, the U.S. District Court denied Plaintiff petition, holding that these claims lacked merit. (**Ex. M**, February 2017 Habeas Corpus Order). In January 2018, the Sixth Circuit upheld the dismissal of Plaintiff's federal habeas petition. (**Ex. N**, January 2018 Habeas Corpus Order).

Therefore, the issues raised in Plaintiff's complaint have been raised and litigated, they were finally decided on the merits against Plaintiff, and he had a full and fair opportunity to litigate them. He is estopped from making these argument again and his claims must be dismissed.

## V.   PLAINTIFF CANNOT ESTABLISH MUNICIPAL LIABILITY AGAINST WAYNE COUNTY

### A.   Plaintiff's Claims Against Wayne County are barred based on his executed waiver in his Wrongful Imprisonment Compensation Act Case.

It is undisputed that Plaintiff signed a waiver and settlement in acceptance of his Wrongful Imprisonment Compensation Act ("WICA") judgment (**Ex. O**, Stipulated Order of Judgment). The statute establishes that acceptance of a Wrongful Imprisonment Compensation Act judgment or settlement is "[1] final and conclusive on the plaintiff, [2] **constitutes a complete release of all claims against this state (and its political subdivisions)**, and [3] is a complete bar to any action in state court by the plaintiff against this state based on the same subject matter." MCL 691.1755(8)(emphasis added).

First, the clauses are separated by a comma signifying they are distinct from each other and consequently have different effects. Importantly, courts "may not pick and choose what parts of a statute to enforce but must give effect to every word of a statute if at all possible, so as not to render any part of the statute surplusage or

nugatory." *Grand Rapids v. Brookstone Capital, LLC*, 334 Mich. App. 452, 458 (2020).

The second element applies to this federal court action. The second element provides that the acceptance of the WICA judgment causes a "release of all claims" against the State of Michigan and its political subdivisions (*i.e.* Defendant Wayne County). MCL 691.1755(8). The statute specifically defines "this state" to mean "the state of Michigan and its political subdivisions, and the agencies, departments, commissions, and courts of this state and its political subdivisions." MCL 691.1752(e). The release provision is enforceable in this Court as it is a knowing and voluntary release of Plaintiff's claims under 42 U.S.C. § 1983. See *Town of Newton v. Rumery*, 480 U.S. 386 (1987) (upholding a release of Plaintiff's right to file suit under Section 1983); *Shay v. Aldrich*, 487 Mich. 648, 667 (2010) ("Releases are generally treated as contracts under Michigan law.") Plaintiff knowingly and voluntarily accepted the judgment in his WICA action as he was represented by his same counsel as in this federal court action. Indeed, in exchange for his "release of all claims" against the State of Michigan (and its political subdivisions), Plaintiff received $850,000.00.

Finally, it is also important to note that the Michigan Legislature specifically considered federal court claims, leaving open claims against individual defendants. The WICA statute states that "[h]owever, the acceptance by the plaintiff of an award under this act, or of a compromise or settlement of the plaintiff's claim, does not

20

operate as a waiver of, or bar to, any action in federal court against an individual alleged to have been involved in the investigation, prosecution, or conviction that gave rise to the wrongful conviction or imprisonment." MCL 691.1755(8).

This month, this Court held that a plaintiff's WICA-award precludes a plaintiff from later bringing a claim against the county on two separate occasions. *DeJesus v. Harvey*, No. 22-CV-12879, 2023 WL 4372682 (E.D. Mich. July 6, 2023) (**Ex. P**); *Clark v. Abdallah*, et al., No. 21-10001, -- WL – (E.D. Mich. July 28, 2023) (**Ex. Q**). In *DeJesus*, two brothers spent 25 years in prison for rape and murder before their convictions were vacated and their charges were dismissed. *DeJesus,* No. 22-CV-12879 (E.D. Mich. July 6, 2023). In June 2022, the brothers each recovered a judgment from the State of Michigan in the amount of $1,212,224.51 under WICA. Plaintiff later brought a *Monell* claim against Oakland County, MI, along with claims against various other defendants. *Id.* Judge Shalina Kumar agreed with Defendant Oakland County that plaintiffs' acceptance of an award under the WICA "constitutes a complete release of all claims against [the] state." *Id.* citing MCL 691.1755(8); MCL 691.1752(e). Thus, applying state and federal case law, Judge Kumar concluded that a plaintiff who accepts an award under WICA may only bring "an action in federal court against an individual... involved in the investigation, prosecution, or conviction that gave rise to the wrongful conviction." *Id*. citing MCL 691.1755(8). In *Clark*, Plaintiffs sued the City of Inkster under 42 U.S.C. § 1983 for failure to train.

*Clark*, No. 21-10001, (E.D. Mich. July 28, 2023).  Judge Victoria Roberts held that because Plaintiffs voluntarily released the City from all potential liability when they accepted monetary awards under WICA, Plaintiffs federal *Monell* claims are barred against the City. *Id*.

Therefore,  Plaintiff's acceptance of compensation under WICA constitutes a complete release of claims against the State of Michigan and its political subdivisions, including Wayne County. Thus, Plaintiff's claims are barred against Wayne County.

## B. Prosecutor's Acting as Agent of State of Michigan, Not Wayne County.

Even assuming Plaintiff's claims were not waived by his WICA settlement, Defendant Donaldson was prosecuting state law, and not the law of the County, so he was an agent of the state and apart from any County "policy" when prosecuting Smith.

In recognizing the potential liability of local government units on federal claims under 42 U.S.C. § 1983, the Supreme Court conditioned such liability upon injury arising from the policies of that government unit. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690 (1978). In short, the Supreme Court has held that a municipality cannot be held liable unless the municipal policy or custom caused the constitutional injury. *Leatherman v. Tarrant County Narcotics*

*Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993).

"Municipal liability must rest upon a direct causal connection between the policies or customs of the [municipality] and the constitutional injury to the plaintiff." *Gary v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005).  It is the plaintiff's burden to present evidence (1) to identify the municipal policy or custom, (2) to connect the policy to the municipality and (3) to show that the plaintiff's particular injury was incurred because of the execution of that policy. *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 403 (6th Cir. 2010).

In this case, Donaldson prosecuted Smith for violating a state statute (murder). State criminal laws "represent the policy of the state." *Cady v. Arenac Cnty.*, 574 F.3d 334, 343 (6th Cir. 2009); *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir. 1993) (holding that prosecutors are considered "state officials" when they "are responsible for prosecuting state criminal charges."). In *Cady*, the Sixth Circuit observed that, under Michigan law, "county prosecuting attorneys are charged with the duty of 'appear[ing] for the state or county, and prosecute or defense ... all prosecutions, suits, applications and motions, whether civil or criminal, in which the state or county may be a party or interested." *Cady*, 574 F.3d at 343 (quoting Mich. Comp. Law § 49.153 (2008)). The Sixth Circuit construed Michigan's statute to mean that "county attorneys in Michigan, like their counterparts in Ohio, are responsible for enforcing criminal laws on behalf of the

state." *Id*.

In *D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014), the plaintiff asserted a municipal liability claim against an Ohio county for actions taken by county prosecutors in a prosecution brought under a state criminal statute. The plaintiff in *D'Ambrosio* asserted that the county prosecutors effectively acted as "policy makers for the county," so that the county could be liable for their actions. *Id*. at 383. The Court rejected such characterization. The Court stated:

> D'Ambrosio first asserts that Prosecutor Marino was a "policy making official" of Cuyahoga County, such that the county may be liable for the decisions that Marino made with respect to D'Ambrosio's prosecution. . . . But this court has previously held that Ohio prosecutors act as arms of the state – not of a municipality – when prosecuting state criminal charges, meaning that their actions in prosecuting the charge may not be attributed to the municipality... because he was acting as an agent of the state when prosecuting D'Ambrosio, Marino's conduct cannot have established a county policy, unconstitutional or otherwise.

*Id*. at 386. The *D'Ambrosio* court went further to explain that:

> Municipal liability attaches only where the policy or practice in question is attributable to the municipality ... but D'Ambrosio's complaint contains no allegations that the practice at issue here was acquiesced to or informed by municipal actors rather than by prosecutors who had adopted the strategy in order to win criminal convictions.

*Id*. at 387.

The case at bar is analogous to *Cady, Pusey* and *D'Ambrosio.* Plaintiff Smith was charged with, prosecuted, and convicted for violating parts of Michigan's penal

code. And as the *Cady* court observed, the Sixth Circuit has determined that "state criminal law presents the policy of the state." *Cady*, 574 F.3d at 343. In making the prosecutorial decisions and pursuing Smith's case, Donaldson acted solely as an agent of the State of Michigan. Wayne County neither played any role in the prosecution nor had any authority to do so. No "policy" of the County was involved. The prosecuting attorney was not making "policy" for the County. Thus, no basis exists for a municipal liability claim against Wayne County.

### C. Even if Donaldson were acting as an agent of the County, Plaintiff has failed to present a sufficient *Monell* claim to survive this Motion.

A municipality cannot be held vicariously liable for the alleged constitutional torts of its employees; that is, *respondeat superior* is not a viable theory of recovery. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). Rather, liability will attach only when the plaintiff establishes that the municipality engaged in a "policy or custom" that was the "moving force" behind an alleged deprivation of a plaintiff's rights. *Id.*; *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). In other words, "governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988). Such occurrences are highly unusual. Indeed, "[a] *Monell* claim that survives summary judgment is exceedingly rare, and rightly so." *Hanson v. Madison County Detention Center*, 736 Fed. Appx.

521, 542 (2018) (emphasis added). "[T]o satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6ᵗʰ Cir. 1993).

Further instructive on the municipal liability claims, the Sixth Circuit's decision in *D'Ambrosio, supra*, relied on *Connick v. Thompson,* 563 U.S. 51, 131 S. Ct. 1350 (2011), in affirming dismissal of *Monell* claims against Cuyahoga County, Ohio, based on an alleged custom of allowing *Brady* violations. The Sixth Circuit first noted that the plaintiff's claim was deficient because "Instead of alleging a 'clear and persistent' office-wide pattern of unconstitutional conduct, *Id*.' D'Ambrosio's complaint is limited to allegations regarding the repeated failures of only one prosecutor: Marino." *D'Ambrosio, supra*, 747 F.3d at 388. The court then described the history of alleged constitutional violations the plaintiff relied on:

> For the *Connick* Court, four prior *Brady* violations over the course of a decade were not enough to place the prosecutor's office on notice that any sort of action was necessary in order to avoid the *Brady* violations at issue in *Connick. Id*. Here, D'Ambrosio claims that the county had sufficient notice of an office-wide practice of persistent unconstitutional conduct by virtue of only one other *Brady* violation and nine other non-Brady instances of prosecutorial misconduct—all of which were committed by Marino over two decades. **Of these ten cited examples of misconduct, only three had been ruled as improper by the courts prior to D'Ambrosio's conviction in 1989**.

*Id*. at 388. (Emphasis added). The Sixth Circuit then held the plaintiff failed to even

26

plausibly allege a *Monell* claim:

> In *Connick*, four previous *Brady* violations were insufficient to alert the prosecutor's office that another *Brady* violation might occur in the future in the absence of corrective action. Here, the county's knowledge of only **three prior instances in which only one of its prosecutors had made improper comments at trial was less**. *Connick*, 131 S.Ct. at 1360 (noting that only "similar" incidents of prior misconduct can put a municipal actor on notice that comparable misconduct may occur in the future). This is true even if the county had been aware of Marino's lone other *Brady* violation before a court had identified it as such. Until the county had notice of persistent misconduct, it did not have 'the opportunity to conform to constitutional dictates,' nor could its inaction have caused the deprivation of D'Ambrosio's constitutional rights. *Id.* at 1360 n. 7 (citation omitted). The county cannot have tacitly approved an unconstitutional policy of which it was unaware. *See Doe*, 103 F.3d at 508.

*Id.* at 388. (Emphasis added).

In *Cretacci v. Hare*, No. 21-5786, 2022 WL 17176781 (6th Cir. Nov. 23, 2022)(**Ex. R**), the Sixth Circuit again addressed what a plaintiff must do to satisfy the requirements of a *Monell* claim, and again held that mere allegations of prior alleged misconduct is insufficient. Addressing two prior incidents of alleged excessive force against inmates, the Sixth Circuit held that complaints or obviously unconstitutional conduct was required to put the County on notice:

> And nothing about these incidents—which apparently involved inmates who were taken down to the ground and restrained following indications of aggression and their refusal to comply with a guard's orders—smacks so strongly of unconstitutionality that their mere occurrence would put the County on notice that excessive force may have occurred. Without complaints or obviously unconstitutional

conduct, there is no reason that the County would have been aware that these incidents potentially involved unconstitutional excessive force, and thus no reason for the County to investigate or punish the guards for them.

*Id.* at \*8.  In *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851, n. 4 (5th Cir. 2009), the Fifth Circuit held that evidence of 27 complaints of excessive force over four years could not show the city had a custom or policy of allowing the excessive use of force:

> Twenty-seven incidents in four years, with no context as to the overall number of arrests or any comparisons to other cities, is not sufficient evidence of a pattern rising to the level of a policy. **The burden of providing a context that would show such a pattern falls on the plaintiff, not on the City**, and Peterson has failed to meet that burden. No reasonable jury could conclude based on Peterson's evidence that the City had established a municipal policy of using or condoning excessive force.

(Emphasis added). The Court stated in its Opinion: "It is not clear how else Hearst would prove a *Monell* claim that requires a showing of a pattern or practice without presenting evidence of other constitutional violations, even if Defendants contest that these prior violations occurred." (ECF No. 122, PageID.3631 – 3632). Respectfully, the answer to this is that the plaintiff must prove a *Monell* claim with evidence of **actual constitutional violations**, not with allegations of false testimony and fabrication of evidence that are now asserted to be violations. Both the Supreme Court in *Connick* and the Sixth Circuit in *D'Ambrosio* addressed cases in which courts had explicitly made prior findings on unconstitutional conduct –

28

and still found the claims deficient.

Plaintiff does not identify any policy or custom of Wayne County. Instead, Plaintiff baselessly alleges an unconstitutional policy or custom of obtaining false statements and false testimony and concealing false testimony. (ECF No. 23, ¶ 71). Plaintiff claims that Wayne County was aware "of the policy and/or custom of the WCPO obtaining false statements and false testimony for use against criminal defendants prior to and after the constitutional violations suffered by Larry Smith, but have failed ot take action to remedy the problem." (ECF No. 23, ¶ 73). It is clear Plaintiff is trying to hold Wayne County vicariously liable for the alleged constitutional torts of its employees; and, as discussed, *respondeat superior* is not a viable theory of recovery.

Plaintiff has also failed to show a "clear and persistent office-wide pattern of unconstitutional conduct," as the Sixth Circuit requires. In fact, the only "pattern or practice" alleged by Plaintiff is one of the Detroit Police Department, not Wayne County or the Wayne County Prosecutor's Office. In his Complaint, Plaintiff alleges various tactics used by the Detroit Police Department to obtain allegedly false confessions through jailhouse informants.

Not only was Wayne County not a part of this alleged "scheme," it went above and beyond to take action when these allegations were brought to its attention. After being approached by members of the defense bar with allegations of

misconduct by members of the Detroit Police Department, and the officers' use of inmate-informants, Assistant Prosecuting Attorney Robert Agacinski wrote a memorandum to Chief of Operations Richard Padzieski detailing the claims. (**Ex. S**, February 8, 1995 Agacinski Memorandum). In response, Padzieski had Assistant Prosecuting Attorney Timothy Baughman, who was Chief of Research, Training and Appeals, research the issue and provide the office with his legal opinion. (**Ex. T**, March 1, 1995 Baughman Memorandum). In the memorandum, Baughman concluded that, if the allegations were true, they should best be addressed through the police department. Management level members of the Detroit Police Department have confirmed that a copy of these memorandums were provided to them in the mid-late 90s. (**Ex. U**, William Rice Dep., pp. 42-43). Additionally, as Chief of Research, Training and Appeals, Baughman testified that he had regular training on the issues raised in the memorandums. (**Ex. V**, Timothy Baughman Dep., pp. 22-23).

Plaintiff has thus failed to present a sufficient municipal liability claim against Wayne County in this case, and all of Plaintiff's claims against it must be dismissed.

**<u>CONCLUSION</u>**

**WHEREFORE,** Defendants, **WAYNE COUNTY** and **ROBERT DONALDSON**, respectfully request this Honorable Court grant their Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice, with costs and attorney fees to be taxed.

Respectfully submitted,

**PLUNKETT COONEY**

By:    */s/Michael D. Hanchett*
AUDREY J. FORBUSH (P41744)
MICHAEL D. HANCHETT (P80974)
Attorneys for Defs. Wayne County, Robert Agacinski, and Janet Napp
Plaza One Financial Center
111 E. Court Street – Suite 1B
Flint, MI  48502
(810) 342-7014
aforbush@plunkettcooney.com

Dated:  July 31, 2023    mhanchett@plunkettcooney.com

<u>**CERTIFICATE OF SERVICE**</u>

I do hereby certify that on the 31st day of July, 2023, I filed the foregoing document and this Certificate of Service with the Clerk of the Court using the electronic court filing system.

*/s/Debra L. Vogt*
DEBRA L. VOGT
PLUNKETT COONEY

Open.28310.20190.31518814-1

31