## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LARRY SMITH

       *Plaintiff*,

v.

COUNTY OF WAYNE,
ROBERT J. DONALDSON,
MONICA CHILDS, GENE
KARVONEN,
ROGER MUELLER, WALTER
LOVE,
and JOHN DEMBINKI,

       *Defendants*.

Case No.:  21-cv-12070-DML-APP
District Judge David M. Lawson
Magistrate Judge Anthony P. Patti

## PLAINTIFF LARRY SMITH'S BRIEF IN RESPONSE TO DEFENDANTS COUNTY OF WAYNE AND ROBERT DONALDSON'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Contents…………………………………………………………………………i

Table of Authorities………………………………………………………………..iii

Statement of Issues Presented………………………………………………………v

Authority for the Relief Sought………………………………………………………vii

Introduction…………………………………………………………………...1

Statement of Facts…………………………………………………………..1

Summary Judgment Standards………………………………………………...6

Argument………………………………………………………………...8

    I.      Donaldson Is Not Entitled to Absolute Immunity for Plaintiff's Federal Claims……………………………………………………………8

          A. The County Defendants have not met their high burden to establish the absence of a genuine issue of material fact on absolute immunity………………………………………………………...8

          B. There is significant evidence Donaldson is not entitled to absolute immunity…………………………………………………...9

    II.     Donaldson Is Not Entitled to Qualified Immunity………………………13

    III.   Donaldson Is Not Entitled to Prosecutorial Immunity for Plaintiff's State Law Claims………………………………………………………...15

    IV.   Collateral Estoppel Does Not Bar Plaintiff's Claims……………………15

    V.    The Stipulated Order of Judgment in Larry Smith's WICA Case Does Not Bar Plaintiff's Claims Against the County………………………………16

    VI.   The County Is Liable for Donaldson's Conduct Because They Were Not Acting as State Agents…………………………………………………...18

VII.    Plaintiff Has Stated a *Monell* Claim Against the County………………..19

VIII.   The County Is Not Entitled to Summary Judgment on Plaintiff's *Monell* Claim…………………………………………………………………21

IX.    The County Defendants' Lack of Jurisdiction Argument Should Be Considered Waived…………………………………………………………..27

Conclusion…………………………………………………………………...28

Certificate of Service…………………………………………………………29

# TABLE OF AUTHORITIES

## Cases

*Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009)…………………………18, 19

*Canfield v. Meyer*, 2014 WL 4662328, *5 (W.D. Mich. Sept. 18, 2014)……………………………………………………………………7, 8, 12, 15, 27)

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)…………………………18, 19

*Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212 (6th Cir. 1989)……….16

*Hearring v. Sliwowski*, 712 F.3d 275 (6th Cir. 2013)……………………………..14

*Hope v. Pelzer*, 536 U.S. 730 (2002)……………………………………….........14

*Jackson v. City of Cleveland,* 64 F.4th 736 (6th Cir. 2023)………………8, 9, 10, 11

*Jackson v. Pollick*, 1991 WL 157247 (6th Cir. Aug. 16, 1991)…………6, 7, 21, 22

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir. 2000)………………..7, 27

*Moore v. Illinois*, 408 U.S. 786 (1972)……………………………………….........13

*Penner v. Commissioner of Social Security*, 2022 WL 3571896 (E.D. Mich. Aug. 2, 2022)…………………………………………………………………………………27

*Peterson v. Heymes*, 931 F.3d 546 (6th Cir. 2019)………………………………...16

*Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993)……………………..18, 19

*Rouse v. Stacy*, 478 Fed.Appx. 945 (6th Cir. Apr. 17, 2012)………………………..8

*Savage v. Federal Express Corporation*, 856 F.3d 440 (6th Cir. 2017)…….7, 12, 27

*Siggers v. Alex*, 2021 WL 4391170 (E.D. Mich. Sept. 24, 2021)……………........16

*Spurlock v. Whitley*, 971 F.Supp. 1166 (M.D. Tenn. 1997)……………………11, 12

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997)…………………………14

*Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012)………………………………..7, 9, 10

*United States v. Bernard*, 625 F.2d 854 (9th Cir. 1980)……………………….....13

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009)………………………………10, 13

## Statutes

Federal Rule of Civil Procedure 12…………………………………………………….20

Federal Rule of Civil Procedure 56…………………………………………………6, 21

Michigan Statue Section 691.1752………………………………………………..18

Michigan Statute Section 691.1755……………………………………….....2, 17

## STATEMENT OF THE ISSUES PRESENTED

1.    Should the Court decide that Defendant Robert Donaldson ("Donaldson") not entitled to summary judgment for Plaintiff's federal claims on the grounds of absolute immunity?

2.    Should the Court decide that Donaldson is not entitled to summary judgment for Plaintiff's federal claims on the grounds of qualified immunity?

3.    Should the Court decide that Donaldson is not entitled to summary judgment for Plaintiff's state law claims on the grounds of prosecutorial immunity?

4.    Should the Court decide that collateral estoppel does not bar Plaintiff's claims?

5.    Should the Court decide that the Stipulated Order of Judgment in Larry Smith's State of Michigan Wrongful Imprisonment Compensation Act case does not bar Plaintiff's claims against Defendant County of Wayne ("the County")?

6.    Should the Court decide that the County is liable for Donaldson's conduct because he were not acting as a state agent?

7.    Should the Court decide that Plaintiff has stated a *Monell* claim against the County?

8.    Should the Court decide that the County is not entitled to summary judgment on Plaintiff's *Monell* claim?

## AUTHORITY FOR THE RELIEF SOUGHT

Pursuant to Local Rule 7.1(d)(2), the controlling and most appropriate

authority for the relief sought in this motion is as follows:

1.   *Jackson v. Pollick*, 1991 WL 157247 (6th Cir. Aug. 16, 1991);

2.   *Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012);

3.   *Savage v. Federal Express Corporation*, 856 F.3d 440 (6th Cir. 2017);

4.   *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir. 2000);

5.   *Canfield v. Meyer*, 2014 WL 4662328 (W.D. Mich. Sept. 18, 2014);

6.   *Jackson v. City of Cleveland*, 64 F.4th 736 (6th Cir. 2023);

7.   *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009);

8.   *Spurlock v. Whitley*, 971 F.Supp. 1166 (M.D. Tenn. 1997);

9.   *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997);

10.   *Siggers v. Alex*, 2021 WL 4391170 (E.D. Mich. Sept. 24, 2021);

11.   Federal Rule of Civil Procedure 12; and

12.   Federal Rule of Civil Procedure 56.

## INTRODUCTION

The motion for summary judgment filed by the County Defendants is a motion to dismiss wrapped in summary judgment cloth. Indeed, the County Defendants' statement of facts consists entirely of allegations from Plaintiff's Amended Complaint. And the County Defendants' argument is almost devoid of references to the record. As a motion to dismiss, the County Defendants' motion should fail as procedurally improper because the County Defendants have already filed responsive pleadings. As a motion for summary judgment, the County Defendants' motion should fail because the County Defendants have not met their burden to establish the absence of a genuine issue of material fact. Either way, the Court should deny the County Defendants' motion.

## STATEMENT OF FACTS

The facts which support Plaintiff's opposition to the County Defendants' motion for summary judgment are as follows:

This case involves the fabrication of Larry Smith's confession by inmate informant Edward Allen ("Allen") which caused the wrongful conviction of Mr. Smith for murder and his incarceration for almost 27 years. Donaldson, a Wayne County Prosecutor's Office ("WCPO") prosecutor employed by the County, participated in creating Mr. Smith's fabricated confession from Allen. The Detroit Police Department ("DPD") homicide file from the investigation into the murder

for which Mr. Smith was wrongfully convicted contains a November 14, 1994 memo where Donaldson advised the DPD to get the statement from Allen about Mr. Smith bragging about the murder. (Ex. A). Specifically, the memo states "APA Donaldson said to go ahead with it and get the statement to him [Allen] asap." (*Id.*). Allen met with Donaldson at the DPD homicide unit. (Ex. B at 17:21-18:9). Even though Allen told Donaldson and DPD Detective Monica Childs that he had never even met Mr. Smith, Donaldson told him: "Don't worry about it. All you got to do, we just need you to say that he [Mr. Smith] bragged about it [the murder]." (*Id.* at 19:22-20:3). Allen was even shown a photo of Mr. Smith to be able to identify Mr. Smith at trial because Allen did not know what Mr. Smith looked like. (*Id.* at 18:10-19)

The whereabouts of the WCPO file for the criminal case against Larry Smith are unknown. During discovery in this case, the County initially claimed that it could not locate the file. (Ex. C at 6, Response to Topic 8). Later on in this case, the County changed its story and claimed the file was destroyed. (ECF No. 84, PageID.1330).

The wrongful conviction of Larry Smith has been vacated. (Ex. D). The Stipulated Order of Judgment in Mr. Smith's State of Michigan Wrongful Imprisonment Compensation Act ("WICA") case states: "Plaintiff's award is subject to the protections and limitations described in MCL 691.1755(9)-(13)."

(ECF No. 103-16, PageID.4416 at Section 3). In addition, the Release and Settlement Agreement signed by Mr. Smith in his WICA case states: "It is further understood and agreed that this is a release in full, and that Plaintiff will not be able to otherwise recover damages or monies from the State of Michigan as a result of Plaintiff's convictions and sentences for first-degree murder and felony firearm in this matter." (Ex. E at p.2, ¶3).

There are a huge number of cases involving inmate informants who claimed that their fellow inmates confessed to crimes, like Allen did to Larry Smith. For example, inmate informant Joe Twilley ("Twilley") was involved in at least 20 homicide cases. (Ex. F at 5:22-24). There were six people who were incarcerated due to inmate informant Oliver Cowan's ("Cowan") involvement. (Ex. G at 8:24-9:2). In addition to the case against Mr. Smith, Allen falsely testified to fabricated confessions in the Anthony Gates case for the WCPO. (Ex. B at 113:21-114:2). Inmate informant Jonathan Hewitt-El ("Hewitt-El") fabricated confessions in three or four cases. (Ex. H at p.1).

Allen has provided significant information pertaining to the WCPO's involvement in obtaining the false confessions. Allen lived at DPD headquarters because he was providing the false confessions for the DPD and the WCPO. (Ex. B at 10:23-11:23). Allen met with WCPO prosecutors at the DPD when he gave the statement with the fabricated confession of Larry Smith. (*Id.* at 15:24-16:10;

29:18-30:16; 67:1-7; 98:5-16). The WCPO prosecutors went to the DPD "all the time" to meet with the informants. (Ex. B at 16:10-14). One WCPO prosecutor worked with Twilley on 12 cases. (*Id.* at 16:22-17:10). Allen a got a deal [which had to be made by the WCPO] in exchange for his false testimony against Mr. Smith. (*Id.* at 21:5-16). Twilley also provided his false testimony in exchange for deals [which had to come from the WCPO]. (*Id.* at 23:1-24:21). WCPO prosecutors would even take the informants to the crime scenes. (*Id.* at 40:5-9). Lastly, Allen confirmed that he falsely testified to fabricated confessions as part the scheme by the DPD and the WCPO. (*Id.* at 112:18-23 and 113:21-114:2).

The inmate informants received leniency from the WCPO in exchange for their fabricated confessions. Multiple DPD officers testified at their depositions in this case that the sentence reductions for Twilley and Cowan had to be approved by the WCPO. (ECF 103-22, PageID.4478 at 16:4-11; Ex. I at 28:18-21). In addition, WCPO prosecutors appeared at the July 1994 hearings where Twilley and Cowan obtained their sentence reductions, and did not object to the reductions. (Ex. F at 1; Ex. J at 1; and Ex. G at 1). And Twilley and Cowan received the sentence reductions right after falsely testifying to Ramon Ward's fabricated confession at the Preliminary Hearing in his criminal case on May 5, 1994. (Ex. K). Indeed, Cowan entered into a plea agreement on April 11, 1994 before he testified against Mr. Ward at the Preliminary Hearing, and Cowan did not receive

his sentence reduction until after he testified against Mr. Ward. (Ex. L). In addition, the County provided immunity to Hewitt-El from perjury charges for two prior fabricated confessions so that he would falsely testify to a fabricated confession by Anton Mann. (Ex. M at pp.1-2, ¶¶4-7).

There is a memo by WCPO Deputy Chief Robert Agacinski ("Agacinski") to WCPO Chief of Operations on February 8, 1995, where Agacinski presented information about the practice of inmate informants falsely testifying to jailhouse confessions. (ECF 103-20, PageID.4457). Agacinski identified Twilley and Cowan as part of this practice, and stated that he had just used them in a case he tried in the prior month – which likely was a reference to the case against Ramon Ward. (*Id.*). Agacinski recommended that any case using such inmate informants "be very carefully scrutinized." (ECF 103-20, PageID.4458). The County "is not aware of any response to the subject memo." (Ex. N at p.16, Response to Request 32).

There is a letter written to former WCPO Prosecutor John O'Hair ("O'Hair") from criminal defense attorney William B. Daniel, where Mr. Daniel expressed his concern about inmate informant Hewitt-El fabricating confessions in three or four cases. (Ex. H). The County took no action in response to Attorney Daniel's letter. (Ex. N) at p.17, Response to Request 36).

The County destroyed all pre-1995 WCPO homicide files allegedly due to a lack of storage space. (Ex. O at p.1). The County's Federal Rule of Civil Procedure

30(b)(6) designee could provide no information pertaining to the destruction of the files and could not confirm that the files were destroyed solely due to lack of storage. (Ex. P at 7:15-8:17). The files should have been kept indefinitely because homicide convictions are subject to ongoing criminal case litigation such as lengthy direct appeals and can be collaterally attacked at any time. Both O'Hair and current WCPO special assistant prosecutor Timothy Baughman testified in this case that such files should be kept forever. (Ex. Q at 14:18-15:3; ECF No. 103-23, PageID.4596 at 28:3-7). The County claims that the destruction of the files occurred at some time prior to 2001. (ECF No. 84, PageID.1489).  In March 2000, the United States Department of Justice ("DOJ") had received reports of unconstitutional arrests and detentions in the DPD homicide section. (Ex. R at p.1). The DOJ then initiated an investigation of the DPD, and its review found that the DPD was improperly holding police witnesses in custody for several months at a time. Thus, the County destroyed the files at the same time that the DOJ was investigating DPD police witnesses, meaning that the DOJ soon could be investing the WCPO's use of the witnesses.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing

the absence of genuine disputes of fact. *Jackson v. Pollick*, 1991 WL 157247, *1 (6th Cir. 1991). When the moving party also bears the burden of persuasion, "the party's initial summary judgment burden is higher in that it must show that the record contains evidence that is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-456 (6th Cir. 2012) (quotations and punctuation omitted). If the moving party satisfies the burden of showing that there is no genuine issue of material fact, then the opposing party must present evidence showing a dispute of material fact which precludes summary judgment. *Jackson*, 1991 WL 157247 at *1.

To decide a motion for summary judgment, the court shall construe the facts and draw all inferences from the facts in favor of the non-moving party. *Savage v. Federal Express Corporation*, 856 F.3d 440, 446 (6th Cir. 2017). The court may not make credibility determinations or weigh the evidence. *Savage*, 856 F.3d at 446. If there is sufficient evidence for a jury to reasonably find in favor of the non-movant, summary judgment is inappropriate. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Lastly, the moving party cannot make new arguments or introduce new facts in a reply brief. *Canfield v. Meyer*, 2014 WL 4662328, *5 (W.D. Mich. Sept. 18, 2014). Because the non-moving party has no opportunity to respond to a reply

brief, any facts or arguments raised for the first time in a reply brief are considered waived. *Canfield*, 2014 WL 4662328 at *5.

## ARGUMENT

I.   **Donaldson Is Not Entitled to Summary Judgment for Plaintiff's Federal Claims on the Grounds of Absolute Immunity.**

### A. The County Defendants have not met their high burden to establish the absence of a genuine issue of material fact on absolute immunity.

Absolute immunity is an exception to the general rule that "qualified immunity 'is sufficient to protect government officials in the exercise of their duties.'" *Jackson v. City of Cleveland*, 64 F.4th 736, 743 (6th Cir. 2023) (quotation omitted). A prosecutor may receive absolute immunity "for conduct in initiating and pursuing criminal prosecutions." *Jackson*, 64 F.4th at 743. Prosecutors performing administrative or investigatory functions that are unrelated to advocacy are not entitled to absolute immunity. *Id.* Due to the risk of injustice from the application of absolute immunity, "the Supreme Court has been 'quite sparing' in its recognition of the doctrine of absolute immunity, and has declined to extend it any 'further than its justification would warrant.'" *Rouse v. Stacy*, 478 Fed.Appx. 945, 947-948 (6th Cir. Apr. 17, 2012) (quotation omitted). Importantly, prosecutors claiming absolute immunity "bear the burden of showing that absolute immunity is justified and that 'qualified immunity does not suffice.'" *Jackson*, 64 F.4th at 743 (quotation omitted).

Here, the County Defendants have completely failed to meet their burden of obtaining summary judgment for Donaldson on the grounds of absolute immunity. Because the County Defendants bear the burden of establishing entitlement to absolute immunity, they also bear a high burden to show that there is so much evidence in the record that no reasonable jury could find in favor of Plaintiff. *See Surles*, 678 F.3d at 455-456; *Jackson*, 64 F.4th at 743. In support of the absolute immunity argument, the County Defendants almost entirely rely upon allegations from the Plaintiff's Complaint. (ECF No. 103, PageID.3525-3532).[1] In other words, the County Defendants have presented essentially no evidence from the record to support the claim that Donaldson is entitled to absolute immunity. The Court therefore should easily dispense with the County Defendants' motion for summary judgment because they have not met their high burden of establishing the absence of a genuine issue of material fact for absolute immunity. *See Surles*, 678 F.3d at 455-456; *Jackson*, 64 F.4th at 743.

## B. There is significant evidence that Donaldson is not entitled to absolute immunity.

As explained above, Plaintiff should not be required to present any evidence in this response because the County Defendants utterly failed to establish the lack

---

[1] The only record evidence cited by the County Defendants in support of their absolute immunity argument is deposition testimony about Larry Smith and Monica Childs's alleged lack of contact with Donaldson. (ECF No. 103, PageID.3530-3531).

of a genuine issue of material fact pertaining to absolute immunity. *See Surles*, 678 F.3d at 455-456; *Jackson*, 64 F.4th at 743. In spite of the County Defendants' failure, Plaintiff will set forth the evidence showing that Donaldson is not entitled to summary judgment on the grounds of absolute immunity.

The Supreme Court has stated that "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). In this case, Donaldson advised the DPD to get the fabricated confession from Allen. The DPD homicide file from the investigation into the murder for which Larry Smith was wrongfully convicted contains a November 14, 1994 memo about Donaldson advising the DPD to get the statement from Allen about Mr. Smith bragging about the murder. (Ex. A). Specifically, the memo states "APA Donaldson said to go ahead with it and get the statement to him [Allen] asap." (*Id.*). Because Donaldson gave advice to the DPD during a criminal investigation about obtaining Allen's false statement, Donaldson is not entitled to absolute immunity. *See Van de Kamp*, 555 U.S. at 343.

Further, Allen confirms Donaldson's involvement in creating the fabricated confession of Larry Smith. Allen met with Donaldson at the DPD homicide unit. (Ex. B at 17:21-18:9). Even though Allen told Donaldson and DPD Detective Monica Childs that he had never even met Mr. Smith, Donaldson told him: "Don't worry about it. All you got to do, we just need you to say that he [Mr. Smith]

bragged about it [the murder]." (Ex. B at 19:22-20:3). Donaldson even showed

Allen a photo of Mr. Smith to assist with Alen identifying Mr. Smith in court. (*Id.*

at 18:10-19). This shocking conduct goes way beyond just advising the police.

Donaldson actively participated in creating Mr. Smith's false confession. Creating

the false confession was an investigative function that had nothing to do with

advocacy, and therefore is not protected by absolute immunity. *See Jackson*, 64

F.4th at 743.

There is a case directly on point showing that Donaldson's conduct in

creating the fabricated confession of Larry Smith is not protected by absolute

immunity. In *Spurlock v. Whitley*, the prosecutors pressured and instructed witness

Priscilla Blakemore to falsely testify at a trial that a person confessed to a murder.

971 F.Supp. 1166, 1172 (M.D. Tenn. 1997). The district court correctly concluded

that the prosecutors were not entitled to absolute immunity for their efforts to have

Ms. Blakemore falsely testify at trial. *Spurlock*, 971 F.Supp. at 1180. Specifically,

the district court determined that the prosecutors' actions took place before the

prosecutors could claim to be acting as advocates and were similar to fabricating

evidence during a preliminary investigation, and therefore the actions were not

covered by absolute immunity. *Id.* Here, as set forth above, the evidence is that

Donaldson was involved in creating Larry Smith's fabricated confession and

instructed Allen to falsely testify that Mr. Smith confessed to the trial. As a result,

Donaldson is not entitled to absolute immunity for this disturbing misconduct. *See Spurlock*, 971 F.Supp. at 1180.

Besides Donaldson's advice and involvement in creating Larry Smith's false confession from Allen, there also is the evidence pertaining to the unknown whereabouts of the WCPO file for the criminal case against Mr. Smith, and the alleged destruction of thousands of documents with no proof that the documents were in fact destroyed. During discovery in this case, the County initially claimed that it could not locate the file. (Ex. C at 6, Response to Topic 8). Later on in this case, the County changed its story and claimed the file was destroyed. (ECF No. 84, PageID.1330). The County's inconsistent claims pertaining to the WCPO file for the criminal case against Mr. Smith creates an inference in Plaintiff's favor that the County is covering up Donaldson's conduct in creating the fabricated confession by not producing the file.

For the purpose of deciding the County Defendants' motion for summary judgment, the facts set forth above and all the inferences from those facts should be construed in Plaintiff's favor. *See Savage*, 856 F.3d at 446. In addition, the Court should deem waived any alleged facts or arguments raised for the first time in the County Defendants' reply brief because Plaintiff has no opportunity to respond. *See Canfield*, 2014 WL 4662328 at *5. Accordingly, the Court should conclude that the indisputable facts set forth above is sufficient evidence for a reasonable

jury to find that Donaldson participated in the creation of Larry Smith's false

confession, and therefore is not entitled to summary judgment on the grounds of

absolute immunity. *See Van de Kamp*, 555 U.S. at 343.

## II.   Donaldson Is Not Entitled to Qualified Immunity.

The County Defendants argue that, if Donaldson is not entitled to absolute

immunity, then he should receive qualified immunity. (ECF No.  103,

PageID.3532-3535). In support of this argument, the County Defendants rely upon

a Supreme Court case and an extra-jurisdictional Ninth Circuit case they claim are

analogous but in fact do not apply to this case. (ECF No. 103, PageID.3535). First,

the County Defendants rely upon *Moore v. Illinois*, 408 U.S. 786, 795 (1972) for

the proposition that there is no constitutional requirement for a prosecution to

disclose all police and investigatory work in a criminal case. (*Id.*). Second, the

County Defendants cite *United States v. Bernard*, 625 F.2d 854, 860 (9th Cir.

1980) for the statement that there is no constitutional requirement to create written

witness statements. (*Id.*). This case is not about Donaldson failing to disclose

police and investigatory work on the criminal case against Larry Smith or failing to

create written witness statements. Instead, as explained above, this case is about

the fabricated evidence of Mr. Smith's alleged confession to Allen. The decisions

in *Moore* and *Bernard* therefore do not apply here and do not provide qualified

immunity to Donaldson.

When the facts of this case are considered, it is easy to see why Donaldson's claim to qualified immunity should be rejected. It was clearly established in 1994 that the knowing fabrication of evidence violates the constitutional right to due process when there is a reasonable likelihood that the fabricated evidence could have affected the jury's judgment. *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). As set forth above, the fabrication of Larry Smith's confession occurred in 1994. And there should be no question that the fabricated confession could have affected the jury's judgment in convicting Mr. Smith. Accordingly, Donaldson violated Mr. Smith's clearly established rights when he participated in fabricating his confession. *See Stemler*, 126 F.3d at 872.

Moreover, there are some constitutional violations that are so obvious that a materially similar case is unnecessary to find a clearly established right. *Hope v. Pelzer*, 536 U.S. 730, 740-741 (2002); *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013). In this case, there should be no question that fabricating a confession is an obvious constitutional violation of clearly established due process right. Donaldson therefore is not entitled to qualified immunity. *See Hope*, 536 U.S. at 740-741; *Hearring*, 712 F.3d at 280.

In their qualified immunity argument, the County Defendants argued only that there was no clearly established law applicable to Donaldson's conduct. (ECF No. 103, PageID.3532-3535). There was no argument that Donaldson did not

violate Larry Smith's constitutional rights. (*Id.*). Indeed, Donaldson does not deny being involved in the fabrication of Mr. Smith's confession. (*Id.*). Accordingly, the Court should refuse to consider any facts or arguments raised for the first time in the County Defendants' reply brief that Donaldson did not violate Mr. Smith's constitutional rights. *See Canfield*, 2014 WL 4662328 at *5.

## III. Donaldson Is Not Entitled to Prosecutorial Immunity for Plaintiff's State Law Claims.

The County Defendants claim that Donaldson entitled to prosecutorial immunity for Plaintiff's state law claims for the same reasons that he is allegedly entitled to absolute immunity for Plaintiff's federal claims. (ECF No. 103, PageID.3535-3536). For the same reasons discussed above in detail as to why Donaldson not entitled to absolute immunity for Plaintiff's federal claims, he also is not entitled to prosecutorial immunity for Plaintiff's state law claims.

## IV. Collateral Estoppel Does Not Bar Plaintiff's Claims.

The County Defendants contend that Plaintiff's claims are barred by collateral estoppel because they were already litigated in the state court post-judgment proceedings and the federal habeas corpus proceedings in the criminal case against Larry Smith. (ECF No. 103, PageID.3536-3540). In making this contention, the County Defendants ignore the fact that the criminal conviction against Mr. Smith has been vacated which deprives it of any preclusive effect. (*Id.*).

It is long-established that there is no collateral estopped when a criminal judgment has been vacated. *Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989). "And vacated rulings have no preclusive effect under Michigan law." *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019). In *Siggers v. Alex*, the district court addressed whether collateral estoppel bars a fabrication of evidence claim based upon prior criminal case proceedings. 2021 WL 4391170, **4-6 (E.D. Mich. Sept. 24, 2021). The district court correctly concluded that there was no preclusive effect from either federal habeas corpus proceedings or state court post-judgment proceedings when the criminal conviction has been vacated. *Siggers*, 2021 WL 4391170 at **4-6. The district court therefore denied the defendant's motion for summary judgment on the grounds of collateral estoppel. *Id.*.

Here, the criminal conviction against Larry Smith has been vacated. (Ex. D). As a result, there is no preclusive effect from either the state court post-judgment proceedings or the federal habeas corpus proceedings in the criminal case against Mr. Smith. Accordingly, collateral estoppel does not bar Plaintiff's claims against the County Defendants. *See Erebia*, 891 F.2d at 1215; *Peterson*, 931 F.3d at 554; *Siggers*, 2021 WL 4391170 at **4-6.

## V. The Stipulated Order of Judgment in Larry Smith's WICA Case Does Not Bar Plaintiff's Claims Against the County.

The County Defendants assert that the Stipulated Order of Judgment (which

the County Defendants erroneously refer to as "a waiver and settlement") in Larry

Smith's State of Michigan Wrongful Imprisonment Compensation Act ("WICA")

case bars Plaintiff's federal claims against the County. (ECF No. 103,

PageID.3540-3543). The clear terms of the Stipulated Order of Judgment show the

County Defendants' assertion to be false.

According to the County Defendants, Michigan Statute Section 691.1755(8)

provides that a judgment in a WICA case bars federal claims against the County.

(ECF No. 103, PageID.3540-3543). The problem for the County Defendants is that

the Stipulated Order of Judgment in Larry Smith's WICA case specifically

excluded Section 691.1755(8). In particular, the Stipulated Order of Judgment

states: "Plaintiff's award is subject to the protections and limitations described in

MCL 691.1755(9)-(13)." (ECF No. 103, PageID.4416 at Section 3) (emphasis

added). There is no mention of Section 691.1755(8) anywhere in the Stipulated

Order of Judgment. (ECF No. 103-16, PageID.4415-4417). As a result, Section

691.1755(8) does not apply to Mr. Smith's WICA case and does not bar Plaintiff's

claims against the County in this case.

In addition, the Release and Settlement Agreement signed by Larry Smith in

his WICA case shows that Plaintiff's claims against the County in this case are not

barred. The Agreement states: "It is further understood and agreed that this is a

release in full, and that Plaintiff will not be able to otherwise recover damages or

monies from the State of Michigan as a result of Plaintiff's convictions and

sentences for first-degree murder and felony firearm in this matter." (Ex. E at p.2,

¶3) (emphasis added). The Agreement references only "the State of Michigan," not

"this state" as defined by Michigan Statute Section 691.1752(e). Thus, there is

nothing in the Agreement stating that Mr. Smith cannot recover against the

County.

## VI.    The County Is Liable for Donaldson's Conduct Because He Was Not Acting as a State Agent.

The County Defendants argue that the County is not liable for the actions of

Donaldson because he was acting as an agent of the State of Michigan. (ECF No.

103, PageID.3543-3546). In support of this argument, the County Defendants rely

upon three cases:  *Cady v. Arenac County*, 574 F.3d 334 (6th Cir. 2009); *Pusey v.

City of Youngstown*, 11 F.3d 652 (6th Cir. 1993); and *D'Ambrosio v. Marino*, 747

F.3d 378 (6th Cir. 2014). (*Id.*). The County Defendants' reliance is misplaced

because all three cases are easily distinguishable from this case. In *Cady*, the court

of appeals found that a prosecutor was acting as agent of the state when entering

into a deferred prosecution agreement, and therefore Arenac County could not be

liable for the prosecutor's actions. 574 F.3d at 337-342, 345. In *Pusey*, the court

appeals determined that a prosecutor was an agent of the state when failing to

notify a crime victim about a hearing in the criminal case, and a result the City of

Youngstown was not liable for the prosecutor's conduct. 11 F.3d at 654-660. In

*D'Ambrosio*, the court of appeals decided that a prosecutor was acting as an agent of the state by failing to disclose exculpatory information and therefore could not subject Cuyahoga County to liability. 747 F.3d at 382-386.

Here, Plaintiff does not allege that Donaldson was acting as an agent of the State of Michigan by entering into a deferred prosecution agreement, failing to notify about a hearing, or not disclosing exculpatory evidence. Accordingly, the decisions in *Cady*, *Pusey*, and *D'Ambrosio* have no bearing on this case. As discussed in detail above, Plaintiff's claim that Donaldson participated in the County's custom of fabricating the confessions of persons like Larry Smith, and therefore was not acting as an agent of the State of Michigan.

### VII.   Plaintiff Has Stated a *Monell* Claim Against the County.

The County Defendants contend that "Plaintiff has failed to present a sufficient *Monell* claim to survive this motion." (ECF No. 103, PageID.3546). In addition, the County Defendants cite Plaintiff's Amended Complaint for their claim that Plaintiff has not identified any policy or custom of the County. (ECF No. 103, PageID.3550) (citing ECF No. 23, PageID.184 at ¶71). The County Defendants also cite the Amended Complaint where Plaintiff states that the County was aware of the policy of obtaining false confessions. (ECF No. 103, PageID.3550) (citing ECF No. 23, PageID.184 at ¶73). The County Defendants conclude their argument by stating that "Plaintiff has thus failed to present a

sufficient municipal liability claim against Wayne County in this case, and all of Plaintiff's claims against it must be dismissed." (ECF No. 103, PageID.3551).

Based upon the County Defendants' *Monell* claim argument and reliance upon Plaintiff's Amended Complaint, it seems that the County Defendants have brought a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) instead of a motion for summary judgment pursuant to Rule 56. For the reasons set forth below, the Court should deny the County Defendants' motion to dismiss.

To begin with, the County Defendants' motion to dismiss is improper. The County and Donaldson have already filed answers in this case. (ECF No. 26, PageID.270-349; ECF No. 27, PageID.350-430). As a result, the County Defendants' motion is untimely. *See* Fed. R. Civ. P. 12(b) (requiring that a motion to dismiss for failure to state a claim must be filed before a responsive pleading is filed).

Moreover, the County Defendants' motion fails on the merits. In support of their motion, the County Defendants only cited two paragraphs from the Plaintiff's Amended Complaint. (ECF No. 103, PageID.3550) (citing ECF No. 23, PageID.184 at ¶¶71, 73). The County Defendants ignored the multitude of factual allegations in the Amended Complaint supporting Plaintiff's *Monell* claim, such as: (a) the WCPO and the DPD practice of planting inmate informants to obtain

false confessions; (b) the County's policymakers' awareness of the practice (c) the

WCPO's provision of leniency and other favors to the informants in exchange for

the fabricated confessions; (d) the specific informants and the large number of

criminal cases where the false confessions were used; and (e) the numerous

individuals – including Larry Smith – who were wrongfully convicted because of

the County's policy. (ECF No. 23, PageID.184-194, at ¶¶70-152). There should be

no question that Plaintiff's Amended Complaint contains sufficient factual

allegations to state a *Monell* claim against the County for its policy of fabricating

evidence.

### VIII.  The County Is Not Entitled to Summary Judgment on Plaintiff's *Monell* Claim.

In the event that the Court considers the County Defendants' motion

pertaining to Plaintiff's *Monell* claim as a motion for summary judgment, the Court

should deny the motion for the reasons set forth below.

For starters, the County Defendants have not satisfied their burden to

demonstrate the absence of a genuine issue of material fact with respect Plaintiff's

*Monell* claim. Indeed, the only fact addressed by the County Defendants is

Defendant Agacinski's memorandum about inmate informants fabricating

confessions. (ECF No. 103, PageID.3550-3551). The County Defendants therefore

have failed to establish that the County is entitled to summary judgment for the

*Monell* claim. *See* Fed. R. Civ. P. 56(a); *see also Jackson*, 1991 WL 157247 at \*1.

Because the County Defendants failed to meet their burden of establishing that there is no genuine issue of material fact for the *Monell* claim, Plaintiff should not have to present evidence showing a dispute of material fact precluding summary judgment. *See Jackson*, 1991 WL 157247 at *1. Notwithstanding the County Defendants' failure, Plaintiff presents the following substantial evidence supporting the *Monell* claim against the County:

First, there is the huge number of cases involving inmate informants which supports the conclusion that confessions were fabricated. For example, Twilley was involved in at least 20 homicide cases. (Ex. F at 5:22-24). There were six people who were incarcerated due to Cowan's involvement. (Ex. G at 8:24-9:2). Allen falsely testified to fabricated confessions in the Larry Smith and Anthony Gates cases for the WCPO. (Ex. B at 113:21-114:2). Hewitt-El fabricated confessions in three or four cases. (Ex. H at p.1). To believe that the confessions obtained in so many cases were not fabricated would require also believing that that these informants were either extremely lucky or naturally gifted investigators. The contrary and reasonable inference in Plaintiff's favor from the inmate informants obtaining confessions in so many cases is that the County had a widespread practice and policy of obtaining false confessions.

Second, Allen has provided significant information pertaining to the WCPO's involvement in obtaining false confessions. Allen lived at DPD

headquarters because he was providing the false confessions for the DPD and the

WCPO. (Ex. B at 10:23-11:23). Allen met with WCPO prosecutors at the DPD

when he gave the statement with the fabricated confession of Larry Smith. (*Id.* at

15:24-16:10; 29:18-30:16; 67:1-7; 98:5-16). The WCPO prosecutors went to the

DPD "all the time" to meet with the informants. (*Id.* at 16:10-14). One WCPO

prosecutor worked with Twilley on 12 cases. (*Id.* at 16:22-17:10).  Allen a got a

deal [which had to be made by the WCPO] in exchange for his false testimony

against Mr. Smith. (*Id.* at 21:5-16). Twilley also provided his false testimony in

exchange for deals [which had to come from the WCPO]. (*Id.* at 23:1-24:21).

WCPO prosecutors would even take the informants to the crime scenes. (*Id.* at

40:5-9).  Lastly, Allen confirmed that he falsely testified to fabricated confessions

as part the scheme by the DPD and the WCPO. (*Id.* at 112:18-23 and 113:21-

114:2).

Third, there is the fact that the inmate informants received leniency from the

WCPO in exchange for their fabricated confessions. Multiple DPD officers

testified at their depositions in this case that the sentence reductions for Twilley

and Cowan had to be approved by the WCPO. (ECF No. 103-22,PageID4478 16:4-

11; Ex. I at 28:18-21). In addition, WCPO prosecutors appeared at the July 1994

hearings where Twilley and Cowan obtained their sentence reductions, and did not

object to the reductions. (Ex. F at 1; Ex. J at 1; and Ex. G at 1). And Twilley and

Cowan received the sentence reductions right after falsely testifying to Ramon

Ward's fabricated confession at the Preliminary Hearing in his criminal case on

May 5, 1994. (Ex. K). Indeed, Cowan entered into a plea agreement on April 11,

1994 before he testified against Mr. Ward at the Preliminary Hearing, and Cowan

did not receive his sentence reduction until after he testified against Mr. Ward. (Ex.

L). In addition, the County provided immunity to Hewitt-El from perjury charges

for two prior fabricated confessions so that he would falsely testify to a fabricated

confession by Anton Mann. (Ex. M at pp.1-2, ¶¶4-7). The inference in Plaintiff's

favor from these facts is that the WCPO provided leniency to the informants as

part of the County's policy of fabricating confessions.

Fourth, the inmates informants would not even be in the position to fabricate

the confessions without the involvement of the WCPO. Inmate informants who

were the custody and control of the Michigan Department of Corrections, such as

Twilley and Cowan, could only be on the 9th floor of the DPD for months at a time

through WCPO filing a writ. (ECF 103-22, PageID.4480-4481 at 18:20-19:5).

Fifth, there is the memo by Agacinski. (ECF No. 103-20, PageId.4457). In

the memo, Agacinski set forth information about the practice of inmate informants

falsely testifying to jailhouse confessions. (*Id.*). Agacinski identified Twilley and

Cowan as part of this practice, and stated that he had just used them in a case he

tried in the prior month – which likely was a reference to the case against Ramon

Ward. (ECF No. 103-20, PageId.4457*)*. Agacinski recommended that any case using such inmate informants "be very carefully scrutinized." (ECF No. 103-20, PageId.4458). The County Defendants claim that the County "went above and beyond" in response to the memo. (ECF No. 103, PageID.3550-3551). In fact, the opposite is true. The County has admitted that it "is not aware of any response to the subject memo." (Ex. N at p.16, Response to Request 32). So instead of taking action to carefully scrutinize the cases involving the inmate informants as recommended in the memo, the County did nothing. A reasonable inference in Plaintiff's favor from the County's failure to investigate inmate informants fabricating confessions is that the County was not about to investigate its own policy.

Sixth, there is the letter written ("O'Hair from criminal defense attorney William B. Daniel. In the letter, Attorney Daniel expressed his concern about inmate informant Hewitt-El fabricating confessions in three or four cases. (Ex. H). Just like with Agacinski's memo, the County took no action in response to Attorney Daniel's letter. (Ex. N at p.17, Response to Request 36). It should be reasonably inferred from the County's lack of response to Attorney Daniel's letter that the County was protecting Hewitt-El and its policy of inmate informants fabricating confessions.

Seventh, there is the fact that the County destroyed all pre-1995 WCPO

homicide files allegedly due to a lack of storage space. (Ex. O at p.1). The County's Federal Rule of Civil Procedure 30(b)(6) designee could provide no information pertaining to the destruction of the files. Importantly, the County's designee could not confirm that the files were destroyed solely due to lack of storage. (Ex. P at 7:15-8:17). The County's destruction of the files is shocking because the files should have been kept indefinitely. Homicide convictions are subject to ongoing criminal case litigation such as lengthy direct appeals and can be collaterally attacked at any time. Indeed, both O'Hair and current WCPO special assistant prosecutor Timothy Baughman testified in this case that such files should be kept forever. (Ex. Q at 14:18-15:3; ECF No. 103-23, PageID.4596 at 28:3-7).

The timing of the County's destruction of the files also is suspicious. The County claims that the destruction of the files occurred at some time prior to 2001. (ECF No. 84, PageID.1489).  In March 2000, the United States Department of Justice ("DOJ") had received reports of unconstitutional arrests and detentions in the DPD homicide section. (Ex. R at p.1). The DOJ then initiated an investigation of the DPD, and its review found that the DPD was improperly holding police witnesses in custody for several months at a time. Thus, the County destroyed the files at the same time that the DOJ was investigating DPD police witnesses, meaning that the DOJ soon could be investing the WCPO's use of the witnesses.

The reasonable inference from the facts surrounding the County's destruction of the WCPO homicide files from before 1995 (which was the time period when the inmate informants were fabricating confessions) is that the County was covering up its policy of having the inmate informants fabricate confessions.

The Court should construe the facts set forth above and all the inferences therefrom in favor of Plaintiff. *See Savage*, 856 F.3d at 446. In addition, the Court should reject any new facts or arguments from the County Defendants in their reply brief about the *Monell* claim because Plaintiff has no opportunity to respond . *See Canfield*, 2014 WL 4662328 at \*5. Thus, the Court should conclude that the indisputable facts set forth above is sufficient evidence for a reasonable jury to find that the County had a policy of inmate informants fabricating confessions and therefore is not entitled to summary judgment on Plaintiff's *Monell* claim. *See McLean*, 224 F.3d at 800.

## IX.   The County Defendants' Lack of Jurisdiction Argument Should Be Considered Waived.

In a footnote, the County Defendants state their concurrence with and incorporation of the DPD Defendants' argument about an alleged lack of jurisdiction to vacate Larry Smith's criminal conviction. (ECF No. 103, PageID.3524 at n.1). Such an undeveloped argument should be considered waived. *See Penner v. Commissioner of Social Security*, 2022 WL 3571896, \*\*4-5 (E.D. Mich. Aug. 2, 2022). If the Court considers the County Defendants' argument,

27

Plaintiff incorporates his pending response to the DPD Defendants' motion for

summary judgment.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny

the County Defendants' motion for summary judgment.

Date:  August 21, 2023                s/Jarrett Adams
                                      Jarrett Adams, Esq.
                                      New York State Bar Number 5455712
                                      Law Offices of Jarrett Adams, PLLC
                                      40 Fulton Street, Floor 28
                                      New York, NY 10038
                                      jadams@jarrettadamslaw.com
                                      (646) 880-9707
                                      *Attorney for Plaintiff, Larry Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2023, I caused a true and correct copy of

the foregoing to be served upon all counsel of record via the CM/ECF system for

the United States District Court for the Eastern District of Michigan.

Respectfully submitted this 21st day of August, 2023.

<div style="margin-left: 40%;">

s/Jarrett Adams
Jarrett Adams, Esq.
New York State Bar Number 5455712
Law Offices of Jarrett Adams, PLLC
40 Fulton Street, Floor 28
New York, NY 10038
jadams@jarrettadamslaw.com
(646) 880-9707
*Attorney for Plaintiff, Larry Smith*

</div>