# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LARRY SMITH

      *Plaintiff*,

v.

COUNTY OF WAYNE,
ROBERT J. DONALDSON,
MONICA CHILDS, GENE
KARVONEN,
ROGER MUELLER, WALTER
LOVE,
and JOHN DEMBINKI,

      *Defendants*.

Case No.:  21-cv-12070-DML-APP
District Judge David M. Lawson
Magistrate Judge Anthony P. Patti

**PLAINTIFF LARRY SMITH'S BRIEF IN RESPONSE TO DEFENDANTS
MONICA CHILDS, GENE KARVONEN, ROGER MUELLER,
WALTER LOVE, AND JOHN DEMBINSKI'S
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Table of Contents…………………………………………………………………i

Table of Authorities……………………………………………………………..iv

Statement of Issues Presented……………………………………………...vi

Authority for the Relief Sought……………………………………...viii

Introduction……………………………………………………………...1

Statement of Facts………………………………………………………..1

I.    The Facts Pertaining to Defendant Childs's Fabrication of Larry Smith's Statement About Wearing a Hood on March 24, 1994……………………2

II.    The Facts Pertaining to Defendants Karvonen, Mueller, Love, and Dembinski's Fabrication of the Ballistic Evidence………………………4

III.    The Facts Pertaining to Defendant Childs's Fabrication of Edward Allen's False Statement and False Trial Testimony………………………………6

Summary Judgment Standards…………………………………………...9

Argument………………………………………………………………10

I.    The Court Should Not Dismiss This Case For a Lack of Jurisdiction…..10

II.    Collateral Estoppel and Res Judicata Do Not Bar Plaintiff's Claims…..12

III.    The DPD Defendants Have Waived Any Qualified Immunity Argument About Clearly Established Rights ……………………………………13

IV.    There is No Reason to Dismiss Plaintiff's Claim for Unlawful Detention Pursuant to Legal Process …………………………………………14

        A.    Plaintiff's claim for unlawful pretrial detention pursuant to legal process is not barred by the statute of limitations…………………14

B.      The DPD Defendants are not entitled to qualified immunity for Plaintiff's unlawful detention pursuant to legal process claim……15

V.    There is No Reason to Dismiss Plaintiff's Fabrication of Evidence of Claim Pertaining to Larry Smith's Alleged Statement About Wearing a Hood …………………………………………………………………16

A.      The DPD Defendants have failed to show a lack of disputed fact pertaining to Larry Smith's alleged statement about wearing a hood.................................................................................................17

B.      There is significant evidence that Defendant Childs fabricated Larry Smith's statement about wearing a hood…………………………18

VI.   There is No Reason to Dismiss Plaintiff's Fabrication of Evidence Claim Pertaining to the Ballistics Evidence ……………………………………22

A.      The DPD Defendants have not established the absence of a genuine issue of fact pertaining to the ballistics evidence…………………22

B.      There is significant circumstantial evidence that the ballistic evidence was fabricated…………………………………………..23

VII.  There is No Reason to Dismiss Plaintiff's Fabrication of Evidence Claim Pertaining to Allen's False Statement and Testimony …………………..28

VIII. There is No Reason to Dismiss Plaintiff's Malicious Prosecution Claim..32

A.      The Court does not need to make the probable cause determination…………………………………………………..32

B.      The DPD Defendants influenced and participated in the prosecution of Larry Smith…………………………………………………33

C.      The criminal proceedings against Larry Smith ended with a favorable termination…………………………………………..34

IX.    There Is No Reason to Dismiss Plaintiff's Conspiracy Claim…………..35

X.    There is No Reason to Dismiss Plaintiff's Failure to Intervene Claim….38

XI.    There Is No Reason to Dismiss Plaintiff's Michigan State Law Malicious Prosecution Claim………………………………………………………38

XII.    There Is No Reason to Dismiss Plaintiff's Michigan State Law Abuse of Process Claim…………………………………………………………...41

XIII.    There Is No Reason to Dismiss Plaintiff's Michigan State Law Intentional Infliction of Emotional Distress Claim…………………………………41

Conclusion………………………………………………………………...42

Certificate of Service…………………………………………………………43

# TABLE OF AUTHORITIES

Cases

*Ansari v. Jiminez, et al.*, 2:20-cv-10719……………………………………………..10, 11

*Canfield v. Meyer*, 2014 WL 4662328, *5 (W.D. Mich. Sept. 18, 2014)……………………………………………10, 13, 15, 16, 22, 26, 27, 28, 38, 40

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)……………………………….11

*Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212 (6th Cir. 1989)…...12, 13

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)……………11

*Ferris v. City of Cadillac, Mich.*, 726 Fed.Appx. 473 (6th Cir. Mar. 30, 2018)…..24

*Hall v. Callahan*, 727 F.3d 450 (6th Cir. 2013)……………………………………….11

*Heck v. Humphrey*, 512 U.S. 477 (1994)……………………………………………..10

*Herrin v. Dunham*, 481 F.Supp.2d 854 (E.D. Mich. 2007)………………………….14

*Hoskins v. Knox County, Kentucky*, 2018 WL 1352163 (E.D. Kent. Mar. 15, 2018)…………………………………………………………………………..15, 37

*Howard v. Trott & Trott, P.C.*, 2012 WL 3966274 (Mich. Ct. App. Sept. 11, 2012)……………………………………………………………………………41

*Jackson v. Pollick*, 1991 WL 157247 (6th Cir. Aug. 16, 1991)……………………………………….9, 17, 18, 22, 23, 28, 33, 36, 38, 39

*Koski v. Vohs*, 137 Mich.App. 491, 358 N.W.2d 620 (1984)……………………….39

*Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017)……………………………..14, 15

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir. 2000)………………………………………………………………10, 21, 28 31, 34, 37

*Moll v. Abbot Laboratories*, 444 Mich. 1, 506 N.W.2d 816 (1993)…………...40, 41

*Nelson v. Ho*, 222 Mich.App. 74, 564 N.W.2d 482 (1997)…………………………..42

*Peterson v. Heymes*, 931 F.3d 546 (6th Cir. 2019)……………………………12, 13

*Sanford v. Russell, et al.*, 2:17-cv-13062…………………………………………..32

*Savage v. Federal Express Corporation*, 856 F.3d 440 (6th Cir. 2017)……………………………………………………9, 18, 21, 27, 29, 31

*Scott v. Harris*, 550 U.S. 372 (2007)…………………………………………………18

*Siggers v. Alex*, 2021 WL 4391170 (E.D. Mich. Sept. 24, 2021)……………...12, 13

*Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012)………………………………………9

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010)…………………………………..32

*Thompson v. Clark*, 142 S. Ct. 1332 (2022)…………………………………34, 35

*Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 479 Mich. 378, 738 N.W.2d 664 (2007)…………………………………………………………………………40

Statutes

Federal Rule of Civil Procedure 56……………………9, 18, 21, 28, 31, 34, 37, 40

**STATEMENT OF THE ISSUES PRESENTED**

1.     Should the Court decide that it has jurisdiction over this case?

2.     Should the Court decide that collateral estoppel and res judicata do not bar Plaintiff's claims?

3.     Should the Court decide that Defendants Monica Childs, Gene Karvonen, Roger Mueller, Walter Love, and John Dembinski (collectively "the DPD Defendants") have waived any qualified immunity argument about clearly established rights?

4.     Should the Court decide that the DPD Defendants are not entitled to summary judgment on Plaintiff's claim for unlawful detention pursuant to legal process?

5.     Should the Court decide that Defendant Childs is not entitled to summary judgment on Plaintiff's fabrication of evidence claim pertaining to Larry Smith's alleged statement about wearing a hood?

6.     Should the Court decide that Defendants Karvonen, Mueller, Love, and Dembinski are not entitled to summary judgment on Plaintiff's fabrication of evidence claim pertaining to the ballistics evidence?

7.     Should the Court decide that Defendant Childs is not entitled to summary judgment on Plaintiff's fabrication of evidence claim pertaining to Edward Allen's false statement and false testimony?

8.     Should the Court decide that the DPD Defendants are not entitled to summary judgment on Plaintiff's malicious prosecution claim?

9.     Should the Court decide that the DPD Defendants are not entitled to summary judgment on Plaintiff's conspiracy claim?

10.    Should the Court decide that the DPD Defendants are not entitled to summary judgment on Plaintiff's failure to intervene claim?

11.    Should the Court decide that the DPD Defendants are not entitled to summary judgment on Plaintiff's Michigan state law malicious prosecution claim?

12.    Should the Court decide that the DPD Defendants are not entitled to summary judgment on Plaintiff's Michigan state law abuse of process claim?

13.    Should the Court decide that the DPD Defendants are not entitled to summary judgment on Plaintiff's Michigan state law intentional infliction of emotional distress claim?

**AUTHORITY FOR THE RELIEF SOUGHT**

Pursuant to Local Rule 7.1(d)(2), the controlling and most appropriate authority for the relief sought in this motion is as follows:

1.  Federal Rule of Civil Procedure 56;

2.  *Jackson v. Pollick*, 1991 WL 157247 (6th Cir. Aug. 16, 1991);

3.  *Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012);

4.  *Savage v. Federal Express Corporation*, 856 F.3d 440 (6th Cir. 2017);

5.  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir. 2000);

6.  *Canfield v. Meyer*, 2014 WL 4662328 (W.D. Mich. Sept. 18, 2014);

7.  *Alexandre Ansari v. Moises Jiminez, et al.*, 2:20-cv-10719;

8.  *Siggers v. Alex*, 2021 WL 4391170 (E.D. Mich. Sept. 24, 2021);

9.  *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017);

10. *Ferris v. City of Cadillac, Mich.*, 726 Fed.Appx. 473 (6th Cir. Mar. 30, 2018);

11. *Sanford v. Russell, et al.*, 2:17-cv-13062;

12. *Thompson v. Clark*, 142 S. Ct. 1332 (2022);

13. *Koski v. Vohs*, 137 Mich.App. 491, 358 N.W.2d 620 (1984);

14. *Moll v. Abbot Laboratories*, 444 Mich. 1, 506 N.W.2d 816 (1993); and

15. *Nelson v. Ho*, 222 Mich.App. 74, 564 N.W.2d 482 (1997).

## INTRODUCTION

The DPD Defendants' motion for summary judgment suffers from several defects. For starters, the DPD Defendants utterly fail to meet their burden to establish the absence of a genuine dispute of material fact. Where the DPD Defendants do address the facts in the record, they improperly construe the facts in their favor. And the DPD Defendants get the law wrong in numerous ways. Accordingly, the Court should deny the DPD Defendants' motion for summary judgment.

## STATEMENT OF FACTS

This case arises from the wrongful conviction of Larry Smith for the March 24, 1994 murder of Kenneth Hayes. In March of 1994, Mr. Smith was a high school senior who was looking at colleges, planning for his prom, and participating in the DPD police explorer mentoring program. (ECF 95-2, PageID.1686-1688, 19:19-27:4). Tragically, Mr. Smith's bright future was disrupted when the DPD and the Wayne County Prosecutor's Office ("WCPO") fabricated evidence which resulted in Mr. Smith's conviction for the murder of Mr. Hayes.

The wrongful conviction of Larry Smith was finally vacated on November 4, 2021. (ECF No. 102-7, PageID.3505-3506). As a result of the wrongful conviction, Mr. Smith was incarcerated for almost 27 years. (*Id.*). The following is a presentation of the facts leading to Mr. Smith's wrongful conviction.

1

**I.    The Facts Pertaining to Defendant Childs's Fabrication of Larry Smith's Statement About Wearing a Hood on March 24, 1994.**

At a September 9, 1994 hearing in the criminal case against Larry Smith, Defendant Childs testified that Mr. Smith made an allegedly incriminating statement about wearing a hood on March 24, 1994. (ECF No. 96-2, PageID.1885-1886, 24:9-25:2). At the same hearing, however, Mr. Smith denied making any statement to Defendant Childs about wearing a hood. (ECF No. 96-2, PageID.1915, 54:3-4).

Defendant Childs testified to her March 25, 1994 interview of Larry Smith [where he allegedly made the statement about wearing a hood] at the September 9, 1994 hearing by relying upon her notes of the interview. (ECF 96-2, PageID.1874-1875, 13:12-14:10). Defendant Childs claimed that she wrote the notes on March 25, 1994, but after the interview of Mr. Smith. (ECF 96-2, PageID.1875, 14:11-20). Defendant Childs never showed Mr. Smith her notes so he never had the chance to refute making the alleged statement about wearing the hood. (ECF 96-2, PageID1878, 17:2-11).

According to Defendant Childs, WCPO prosecutor and Defendant Robert Donaldson asked her for her notes because the notes were not in the homicide file for Larry Smith's case. (ECF 96-2, PageID.1875-1876, 14:21-15:5). Defendant Childs claimed that she eventually found her notes in the homicide file for another case and gave them to Defendant Donaldson in April of 1994. (ECF No. 96-2,

PageID.1876-1877, 15:6-16:5). Counsel for Mr. Smith had to repeatedly ask Defendant Donaldson for the notes in May, June, and July 1994. (ECF No. 96-2, PageID.1880, 19:2-7). Defendant Donaldson has contradicted Defendant Childs's testimony about providing the notes in April of 1994, claiming that Defendant Childs did not provide the notes until August of 1994. (ECF No. 96-2, PageID.1880, 19:8-18).

Defendant Childs then testified at Larry Smith's trial about her March 25, 1994 interview of Mr. Smith and about her notes of the interview. (ECF No. 97-4, PageID.2405-2407, 7:22-9:12). Contradicting Defendant Donaldson's testimony from the September 9, 1994 hearing that notes were not in the homicide file for Mr. Smith's file, Defendant Childs claimed that the notes of the interview were in the homicide file for Mr. Smith's case. (ECF No. 97-4, PageID.2407, 9:17-21). Then contradicting her own testimony from the September 9, 1994 hearing that she found the notes in April 1994 in another file, Defendant Childs claimed that she found the notes in August 1994 in the file for Mr. Smith's case. (ECF No. 97-4, PageID.2407-2409, 9:22-11:4).

There also is evidence casting doubt on Defendant Childs's claim of making her notes of her March 25, 1994 interview of Larry Smith on the same day as the interview. On May 3, 1994, Defendant Donaldson wrote a memo to DPD Sergeant Henahan stating that Defendant Childs took a verbal statement from Mr. Smith

"and is going to memorialize it." (Ex. A). So according to the memo, Defendant

Childs did not make her notes on March 25, 1994 and had not even made her notes

as of May 3, 1994. (*Id.*).

## II.   The Facts Pertaining to Defendants Karvonen, Mueller, Love, and Dembinski's Fabrication of the Ballistic Evidence.

There is the conflicting evidence about the number of .40 caliber shell

casings allegedly found by the DPD at the scene of the murder of Kenneth Hayes.

Defendant Karvonen wrote a DPD Evidence Technician report and testified at

Larry Smith's trial claiming that he found <u>seven</u> casings. (ECF No. 94-3,

PageID.1609; ECF No. 97-3, PageID.2283, 22:1-14). Defendant Mueller told a

different story in his DPD Preliminary Complaint Record and at Mr. Smith's trial,

claiming that he and Defendant Love found <u>five</u> casings. (Ex. B at p.2; ECF No.

97-4, PageID.2434-2435, 36:7-37:4). Defendant Love also prepared a DPD

Preliminary Complaint Record claiming that he and Defendant Mueller found <u>five</u>

casings. (Ex. C at p.2). Then there is the DPD Preliminary Complaint Record by

DPD Officer Erik D. Cox stating that <u>six</u> casings were found at the scene. (Ex. D at

p.2).

The .40 caliber shell casing allegedly found in Larry Smith's bedroom has

been destroyed and therefore cannot be compared to the .40 caliber shell casings

allegedly found at the scene of the murder of Kenneth Hayes. DPD Officer Keith

Chisolm allegedly found a .40 caliber shell casing in Mr. Smith's bedroom. (Ex.

4

E). For some unknown reason, the casing allegedly found in Mr. Smith's bedroom was destroyed on May 31, 2006. (Ex. F).

An empty box of bullets was allegedly found in Larry Smith's bedroom. The box was for the same caliber bullets as the caliber of the casings allegedly found at the scene the shooting Kenneth Hayes. Defendant Dembinski created a DPD Preliminary Complaint Record and testified at Mr. Smith's trial that he found an empty box of .40 caliber bullets in Mr. Smith's bedroom. (Ex. G at p.2; ECF No. 97-3, PageID.2306-2308, 45:25-47:4). DPD Officer David Pauch connected the dots at Mr. Smith's trial by testifying that the shell casings supposedly found at the scene could have come from the box allegedly found in Mr. Smith's bedroom. (ECF No. 97-3, PageID.2350, 89:2-20).

Both Larry Smith and his mother Debra Smith (who owned the residence where Mr. Smith lived) denied that there were any .40 caliber bullet evidence in Mr. Smith's bedroom. Mr. Smith specifically denied having any .40 caliber shell casings or an empty box of .40 caliber bullets. (ECF No. 95-2, PageID.1718, 147:11-148:6; PageID.1719, 151:5-11). At Mr. Smith's trial, Debra Smith testified that she routinely checked Mr. Smith's possessions to see what he brought into her home and never saw anything associated with a .40 caliber weapon. (ECF No. 97-4, PageID.2480, 82:2-9).

The only bullet found in the body of Kenneth Hayes was not a .40 caliber bullet but instead was a .32 caliber bullet which could not have been fired from a .40 caliber weapon. (ECF No. 97-3, PageID.2353-2354, 91:19-93:18).

Further, there were numerous problems in the DPD Firearms Unit. In 2008, the Michigan State Police ("MSP") conducted an audit of the DPD Firearms Unit and found that:  (1) the DPD Forensic Services Laboratory was in non-compliance with 66 out of 101 criteria; (2) the DPD claimed to be able to analyze all ballistics evidence in a case, which is a highly uncommon result; (3) technical review within the DPD Firearms Unit was non-existent; (4) firearms evidence was unsecured and unprotected, leaving it subject to loss and contamination and compromising its integrity; (5) there was a lack of documentation supporting the conclusions of DPD firearms examiners; and (6) analytical reports were insufficiently specific and sometimes done after the fact. (Ex. H at pp.2-10). The MSP determined that the errors within the DPD Firearms Unit created "a strong likelihood of wrongful convictions." (*Id.* at p.3).

### III.   The Facts Pertaining to Defendant Childs's Fabrication of Edward Allen's False Statement and False Trial Testimony.

Inmate informant Edward Allen ("Allen") provided significant information at his deposition in this case regarding Defendant Childs's involvement in Allen's fabricated statement and fabricated testimony at Larry Smith's trial. Allen testified that he lived at DPD headquarters because he was providing false confessions for

the DPD and the WCPO. (ECF 95-4, PageID.1750, 10:23-11:23). In 1994, a

WCPO prosecutor [Defendant Donaldson] spoke to Allen about falsely implicating

Larry Smith in the murder of Kenneth Hayes. As Allen testified:

> And he [the prosecutor] want me to help him and Monica
> Childs help the codefendant beat the case and get Larry
> caught up. That's how I end up finding out the information
> I needed for the Larry case. And I went to court with
> Monica Childs and Larry got found guilty.

(ECF 95-4, PageId.1750, 12:23-13:12). Allen further testified that Defendant

Childs provided him with the discovery package with the details surrounding the

murder of Kenneth Hayes so that Allen's false testimony about Mr. Smith

confessing to the crime would appear solid. (ECF No. 95-4, PageID.1750-1751,

13:13- 14:9). In fact, Allen had never even seen Mr. Smith until the WCPO

prosecutor [Defendant Donaldson] and Defendant Childs showed Allen a picture

of Mr. Smith so that Allen could identify Mr. Smith in court. (ECF No. 95-4,

PageID.1759, 47:17-48:22). The information that Allen used to falsely implicate

Mr. Smith was provided by Jay Clay [the co-defendant], the prosecutor [Defendant

Donaldson] and Defendant Childs. (ECF No. 95-4, PageID.1764, 67:1-7). And

Allen testified that Defendant Childs was happy after Mr. Smith was convicted on

the basis of Allen's false testimony. (ECF No. 95-4, PageID.1771, 96:23-97:10;

PageID1772, 98:17-100:25). Allen admitted that his testimony against Mr. Smith

was false, and that he falsely testified to fabricated confessions as part a scheme by

the DPD and the WCPO. (ECF No. 95-4, PageID.1774, 106:18-107:4;

PageID.1775-1776, 112:18-23 and 113:21-114:2).

Allen signed an affidavit in 2013. In the affidavit, Allen described how

Defendant Childs solicited his false testimony:

> Shortly after Mr. Culpepper visited me in the jail, I got a
> visit from Monica Childs of the Detroit Police
> Department. She told me she wanted me to testify in the
> Larry Smith murder case. She said she knew the charges
> against me were bogus and that I could beat the case. If I
> could not beat the case, testifying in the Larry Smith case
> would be an insurance policy because my testimony would
> insure police help. She also promised me a spot on the 9th
> floor of the police department instead of the jail. Monica
> Childs told me that I would have to testify that Smith
> bragged about committing the crimes.

(ECF No. 101-3, PageID.3383 at ¶ 4). Allen also set forth Defendant Childs's

improper purpose in fabricating Allen's false testimony: "She was very pleased

with my trial testimony and said, 'You put my name in lights.' She seemed to want

Larry Smith in prison." (ECF No. 101-3, PageID.3384 at ¶ 8). Allen also described

the benefits DPD witnesses on the 9th floor such as himself received in exchange

for the fabricated testimony, including food, drugs, conjugal visits, cigarettes, and

the ability to make telephone calls. (ECF No. 101-3, PageID.3384-3385 at ¶¶ 9-

10). Lastly, Allen explained that the DPD would supply the police witnesses with

the discovery packets from the criminal cases so that their false testimony would

match the criminal charges. (ECF No. 101-3, PageID.3385 at ¶¶ 11).

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the absence of genuine disputes of fact. *Jackson v. Pollick*, 1991 WL 157247, *1 (6th Cir. Aug. 16, 1991). When the moving party also bears the burden of persuasion, "the party's initial summary judgment burden is higher in that it must show that the record contains evidence that is so powerful that no reasonable jury would be free to disbelieve it." *Surles v. Andison*, 678 F.3d 452, 455-456 (6th Cir. 2012) (quotations and punctuation omitted). If the moving party satisfies the burden of showing that there is no genuine issue of material fact, then the opposing party must present evidence showing a dispute of material fact which precludes summary judgment. *Jackson*, 1991 WL 157247 at *1.

To decide a motion for summary judgment, the court shall construe the facts and draw all inferences from the facts in favor of the non-moving party. *Savage v. Federal Express Corporation*, 856 F.3d 440, 446 (6th Cir. 2017). The court may not make credibility determinations or weigh the evidence. *Savage*, 856 F.3d at 446. If there is sufficient evidence for a jury to reasonably find in favor of the non-

movant, summary judgment is inappropriate. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Lastly, the moving party cannot make new arguments or introduce new facts in a reply brief. *Canfield v. Meyer*, 2014 WL 4662328, *5 (W.D. Mich. Sept. 18, 2014). Because the non-moving party has no opportunity to respond to a reply brief, any facts or arguments raised for the first time in a reply brief are considered waived. *Canfield*, 2014 WL 4662328 at *5.

## ARGUMENT

### I.      The Court Should Not Dismiss This Case For a Lack of Jurisdiction.

According to the DPD Defendants, the Court should dismiss this case for a lack of jurisdiction pursuant to the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) due to an alleged procedural defect in how the Michigan state court vacated Larry Smith's conviction. (ECF No. 93, PageID.1465-1469). The DPD Defendants' jurisdiction argument should fail because the Court lacks the authority to review the decision of the Michigan state court.

The District Court for the Eastern District of Michigan has already considered and appropriately rejected the same argument that the DPD Defendants are making here. In *Alexandre Ansari v. Moises Jiminez, et al.*, Defendant Jiminez claimed the district court lacked jurisdiction under the *Heck* doctrine because of an alleged procedure defect in the Michigan state court order vacating the plaintiff's

10

criminal conviction. (2:20-cv-10719, ECF No. 80, PageID.1974-1978). Citing

Supreme Court and Sixth Circuit precedent, the district court correctly concluded

that it lacked the authority to review the Michigan state court decision. (2:20-cv-

10719, ECF No. 80, PageID.1977-1978). Specifically, the district court relied upon

*D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983) and *Exxon Mobil*

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) for the well-

established law that district courts do not have power to review state court

decisions because such power is vested only with the Supreme Court. (*Id.*). In

addition, the district court recognized Sixth Circuit precedent in *Hall v. Callahan*,

727 F.3d 450, 454 (6th Cir. 2013) stating that federal district courts are not

appellate courts for state court decisions. (*Id.*).

The same is true in this case. The Court does not have the authority to

review Michigan state court decision vacating Larry Smith's conviction because

only the Supreme Court has that power. *See Feldman*, 460 U.S. at 482 n.16; *Exxon*

*Mobil Corp.*, 544 U.S. at 292. And the Court is not an appellate court for the

Michigan state court decision vacating Mr. Smith's conviction. *See Hall*, 727 F.3d

at 454. Accordingly, the Court should decline to accept the DPD Defendants'

challenge to jurisdiction in this case. (*See* 2:20-cv-10719, ECF No. 80,

PageID.1977-1978).

## II.  Collateral Estoppel and Res Judicata Do Not Bar Plaintiff's Claims.

The DPD Defendants argue that Plaintiff's claims are barred by collateral estoppel and res judicata because they were already litigated in the state court post-judgment proceedings and the federal habeas corpus proceedings in the criminal case against Larry Smith. (ECF No. 93, PageID.1469-1473). The Court should reject the DPD Defendants' collateral estoppel and res judicata argument because the criminal conviction against Mr. Smith has been vacated, which deprives the post-judgment proceedings and the federal habeas corpus proceedings of any preclusive effect.

It is long-established that there is no collateral estopped or res judicata when a criminal judgment has been vacated. *Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989). "And vacated rulings have no preclusive effect under Michigan law." *Peterson v. Heymes*, 931 F.3d 546, 554 (6th Cir. 2019). In *Siggers v. Alex*, the district court addressed whether collateral estoppel bars a fabrication of evidence claim based upon prior criminal case proceedings. 2021 WL 4391170, **4-6 (E.D. Mich. Sept. 24, 2021). The district court correctly concluded that there was no preclusive effect from either federal habeas corpus proceedings or state court post-judgment proceedings when the criminal conviction has been vacated. *Siggers*, 2021 WL 4391170 at **4-6. The district court therefore denied the defendant's motion for summary judgment on the grounds of collateral

estoppel. *Siggers*, 2021 WL 4391170 at **4-6.

Here, the criminal conviction against Larry Smith has been vacated. (ECF No. 102-7, PageID.3505-3506). As a result, there is no preclusive effect from either the state court post-judgment proceedings or the federal habeas corpus proceedings in the criminal case against Mr. Smith. Accordingly, collateral estoppel and res judicata do not bar Plaintiff's claims against the DPD Defendants. *See Erebia*, 891 F.2d at 1215; *Peterson*, 931 F.3d at 554; *Siggers*, 2021 WL 4391170 at **4-6.

### III.   The DPD Defendants Have Waived Any Qualified Immunity Argument About Clearly Established Rights.

The DPD Defendants claim that they are entitled to qualified immunity for Plaintiff's federal claims. (ECF No. 93, PageID.1474-1488). In making this claim, the DPD Defendants do not argue the clearly established right element of qualified immunity. (*Id.*). As a result, the DPD Defendants have waived any such argument. *See Canfield*, 2014 WL 4662328 at *5.

Instead of arguing that Larry Smith's rights were not clearly established, the DPD Defendants assert a variety of arguments under the umbrella of qualified immunity. (ECF No. 93, PageID.1474-1488). As will discussed in detail below, the Court should reject the DPD Defendants' arguments.

### IV.     There is No Reason to Dismiss Plaintiff's Claim for Unlawful Detention Pursuant to Legal Process.

The DPD Defendants argue there are two grounds for the dismissal of Plaintiff's unlawful detention claim:  (a) the claim is barred by Michigan's statute of limitations and (b) the DPD Defendants are entitled to qualified immunity. (ECF No. 93, PageID.1476-1477). To make this argument, the DPD Defendants rely upon false premise that Plaintiff's claim is for false arrest. (*Id.*). In fact, Plaintiff's claim is for unlawful detention <u>pursuant to legal process</u>. (ECF No. 23, PageID.197 at ¶¶153-158).

### A.     Plaintiff's claim for unlawful pretrial detention pursuant to legal process is not barred by the statute of limitations.

The DPD Defendants assert that Plaintiff's unlawful detention claim accrued in 1994 when Larry Smith was arraigned and therefore the two-year statute of limitations[1] expired in 1996. (ECF No. 93, PageID.1476). This assertion ignores Supreme Court precedent.

In *Manuel v. City of Joliet, Ill.*, the Supreme Court recognized that there is a Fourth Amendment claim for unlawful detention after the commencement of legal

---

[1] The DPD Defendants claim that the statute of limitations for Plaintiff's Fourth Amendment claim is two years. (ECF No. 93, PageID.1476). In fact, the statute of limitations for Plaintiff's Section 1983 claims is three years. *See Herrin v. Dunham*, 481 F.Supp.2d 854, 857 (E.D. Mich. 2007). For purposes of the DPD Defendants' motion it does not matter because Plaintiff brought his Section 1983 claims within two years of when the criminal proceedings against Larry Smith terminated in Mr. Smith's favor.

14

process. 580 U.S. 357, 366 (2017). The claim for unlawful pretrial detention accrues not when the legal process begins, but instead when the criminal proceedings terminate in Plaintiff's favor. *Hoskins v. Knox County, Kentucky*, 2018 WL 1352163, **14-15 (E.D. Kent. Mar. 15, 2018). The criminal proceedings against Larry Smith terminated in his favor on February 4, 2021. (ECF No. 102-7, PageID.3505-3506). Accordingly, the three-year statute of limitations for Plaintiff's unlawful detention pursuant to legal process claim expired on February 4, 2024. *See Manuel*, 580 U.S. at 366; *Hoskins*, 2018 WL 1352163 at **14-15. Plaintiff filed his Amended Complaint on January 27, 2022 (ECF No. 23, PageID.174-207), meaning that the unlawful detention pursuant to legal process claim is timely. *See id.*

It should be noted that the DPD Defendants did not address the decision in *Manuel* or the accrual date for an unlawful detention pursuant to legal process claim in their initial brief. (ECF No. 93, PageID.1476). The Court should reject any arguments on these matters presented for the first time in the DPD Defendants' reply brief. *See Canfield*, 2014 WL 4662328 at *5.

**B.**  **The DPD Defendants are not entitled to qualified immunity for Plaintiff's unlawful detention pursuant to legal process claim.**

The DPD Defendants' qualified immunity presentation focuses on the arrest of Larry Smith. (ECF No. 93, PageID.1476-1477). Specifically, the DPD Defendants argue that:  (1) there was probable cause for the arrest of Mr. Smith;

15

(2) Plaintiff is barred from relitigating the issue due to the prior criminal case

proceedings; and (3) Plaintiff has not shown that any of the DPD Defendants

arrested Mr. Smith. (ECF No. 93, PageID.1476-1477).

All three arguments should fail. First, as stated above, Plaintiff's claim is not

for false arrest but instead for unlawful detention pursuant to legal process.

Whether there was probable cause for Larry Smith's arrest is irrelevant. Second, as

also stated above, the fact that Mr. Smith's conviction has been vacated negates the

DPD Defendants' collateral estoppel and res judicata defense. Third, the identity of

the DPD members who arrested Mr. Smith does not matter because Plaintiff's

claim is for unlawful detention pursuant to legal process.

The DPD Defendants did not address Plaintiff's unlawful detention pursuant

to legal process claim or whether they are allegedly entitled to qualified immunity

for the claim. (ECF No. 93, PageID.1476-1477). The Court should not consider

any new facts or arguments about the claim or the DPD Defendants' alleged

entitlement to qualified immunity for the claim in their reply brief. *See Canfield*,

2014 WL 4662328 at *5.

### V.    There is No Reason to Dismiss Plaintiff's Fabrication of Evidence of Claim Pertaining to Larry Smith's Alleged Statement About Wearing a Hood.

The DPD Defendants begin their argument by asserting that Plaintiff cannot

maintain the fabrication of evidence claim because there was probable cause for

the arrest of Larry Smith. (ECF No. 93, PageID.1477-1478). This assertion reflects an apparent misunderstanding of the claim. Plaintiff's claim is not about Mr. Smith's arrest, but instead that the DPD Defendants fabricated evidence that was used against Mr. Smith at trial. (ECF No. 23, PageID.198 at ¶160).

### A. The DPD Defendants have failed to show a lack of disputed fact pertaining to Larry Smith's alleged statement about wearing a hood.

The DPD Defendants claim that Plaintiff has failed to establish that Larry Smith's alleged statement to Defendants Childs about wearing a hood was fabricated. (ECF No. 93, PageID.1478-1479). By making this claim, the DPD Defendants are getting the summary judgment standard backwards. It is the DPD Defendants who bear the burden to establish the absence of a genuine issue of material fact pertaining to Mr. Smith's statement. *See Jackson*, 1991 WL 157247 at *1.

The DPD Defendants have completely failed to satisfy their burden showing the lack of a disputed fact pertaining to Defendant Childs's fabrication of Larry Smith's alleged statement about wearing a hood. Indeed, the only fact relied upon by the DPD Defendants is Defendant Childs's testimony at the September 9, 1994 hearing in Mr. Smith's criminal case. (ECF No. 93, PageID.1479) (citing ECF No. 96-2). At the hearing, Defendant Childs testified that Mr. Smith made the alleged statement about wearing a hood. (ECF No. 96-2, PageID.1885-1886, 24:9-25:2).

17

At the same hearing, however, Mr. Smith denied making any statement to Defendant Childs about wearing a hood. (ECF No. 96-2, PageID.1915, 54:3-4).

Relying upon *Scott v. Harris*, 550 U.S. 372, 380 (2007), the DPD Defendants seem to argue that Mr. Smith's testimony should not be accepted over Defendant Childs's testimony for summary judgment purposes because it is contradicted by the record. (ECF No. 93, PageID.1478-1479). The DPD Defendants fail, however, to identify anything in the record which allegedly contradicts Mr. Smith's testimony other than Defendant Childs's testimony. (*Id.*). For purposes of summary judgment, the Court must construe the facts and draw all inferences from the facts in favor of Mr. Smith. *See Savage*, 856 F.3d at 446. In addition, the court may not make any determinations pertaining to Mr. Smith or Defendant Childs's credibility and cannot weigh their testimony. *See id.* The conflicting testimony therefore should be sufficient to create a dispute of material fact precluding summary judgment on the fabrication of evidence claim. *See* Fed. R. Civ. P. 56(a).

### B. There is significant evidence that Defendant Childs fabricated Larry Smith's statement about wearing a hood.

Because the DPD Defendants have failed to establish the absence of a genuine issue of material fact pertaining to Larry Smith's alleged statement about wearing a hood, Plaintiff should not have to present evidence of a dispute of fact. *See Jackson*, 1991 WL 157247 at *1. Nevertheless, Plaintiff presents the following

evidence showing that Defendant Childs fabricated Mr. Smith's alleged statement. Specifically, the evidence pertains to the inconsistent testimony and dubious whereabouts of Defendant Childs's notes of her March 25, 1994 interview of Mr. Smith where he allegedly made the statement about wearing a hood.

At the September 9, 1994 hearing in the criminal case against Larry Smith, Defendant Childs testified to her March 25, 1994 interview of Mr. Smith by relying upon her notes. (ECF 96-2, PageID.1874-1875, 13:12-14:10). Defendant Childs claimed that she wrote the notes on March 25, 1994, but after the interview of Mr. Smith. (ECF 96-2, PageID.1875, 14:11-20). Defendant Childs never showed Mr. Smith her notes so he never had the chance to refute making the alleged statement about wearing the hood. (ECF 96-2, PageID1878, 17:2-11)

According to Defendant Childs, Defendant Donaldson asked her for her notes because the notes were not in the homicide file for Mr. Smith's case. (ECF 96-2, PageID.1875-1876, 14:21-15:5). Defendant Childs claimed that she eventually found the notes in the homicide file for another case and gave them to Defendant Donaldson in April of 1994. (ECF No. 96-2, PageID.1876-1877, 15:6-16:5).. Counsel for Mr. Smith had to repeatedly ask Defendant Donaldson for the notes in May, June, and July 1994. (ECF No. 96-2, PageID.1880, 19:2-7). Defendant Donaldson contradicted Defendant Childs's testimony about providing the notes in April of 1994, claiming that Defendant Childs did not provide the

notes until August of 1994. (ECF No. 96-2, PageID.1880, 19:8-18).

Defendant Childs then testified at Larry Smith's trial about her March 25, 1994 interview of Mr. Smith and about her notes of the interview. (ECF No. 97-4, PageID.2405-2407, 7:22-9:12). Contradicting Defendant Donaldson's testimony from the September 9, 1994 hearing that notes were not in the homicide file for Mr. Smith's file, Defendant Childs claimed that the notes of the interview were in the homicide file for Mr. Smith's case. (ECF No. 97-4, PageID.2407, 9:17-21). Then contradicting her own testimony from the September 9, 1994 hearing that she found the notes in April 1994 in another file, Defendant Childs claimed that she found in the notes in August 1994 in the file for Mr. Smith's case. (ECF No. 97-4, PageID.2407-2409, 9:22-11:4).

At her deposition in this case, Defendant Childs again contradicted herself about her missing notes of the March 25, 1994 interview of Larry Smith. Instead of stating that she found the notes when Defendant Donaldson could not find them, Defendant Childs testified that [DPD Sergeant] Pat Henahan was looking for notes and then found the notes in another file. (ECF No. 96-3, PageID.1958, 116:5-10).

There also is evidence casting doubt on Defendant Childs's claim of making her notes of her March 25, 1994 interview of Larry Smith on the same day of the interview. On May 3, 1994, Defendant Donaldson wrote a memo to DPD Sergeant Henahan stating that Defendant Childs took a verbal statement from Mr. Smith

"and is going to memorialize it." (Ex. A). So according to the memo, Defendant Childs did not make her notes on March 25, 1994 and had not even made her notes as of May 3, 1994. (*Id.*).

Thus, there are conflicting facts pertaining to when Defendant Childs made her notes of her March 25, 1994 interview of Larry Smith and about the whereabouts of the notes. The facts pertaining to the notes and all inferences therefrom must be construed in Plaintiff's favor. *See Savage*, 856 F.3d at 446. An inference in Plaintiff's favor from these facts is that Defendant Childs fabricated her notes as well as fabricated Mr. Smith's statement about wearing a hood. Because a jury could reasonably make this inference and find in Plaintiff's favor, summary judgment on the fabrication of evidence claim pertaining to Mr. Smith's alleged statement about wearing a hood is improper. *See McLean*, 224 F.3d at 800. In the alternative, the facts pertaining to Defendant Childs's notes create a dispute of fact as to whether Defendant Childs fabricated Mr. Smith's statement about wearing a hood which should preclude summary judgment. *See* Fed. R. Civ. P. 56(a).

In their initial brief, the DPD Defendants did not mention the contradictory facts pertaining to and the questionable whereabouts of Defendant Childs's notes of her March 25, 1994 interview of Larry Smith. The Court should not consider any alleged facts or arguments about the notes raised for the first time in the DPD

Defendants' reply brief. *See Canfield*, 2014 WL 4662328 at *5.

The DPD Defendants attempt to avoid any factual dispute pertaining to Defendant Childs's fabrication of Larry Smith's statement about wearing a hood by arguing that the issue was already addressed during the proceedings in Mr. Smith's criminal case. (ECF No. 93, PageID.1479-1480). As explained in Section II above, the doctrines of collateral estoppel and res judicata do not apply in this case because Mr. Smith's conviction was vacated.

## VI.   There is No Reason to Dismiss Plaintiff's Fabrication of Evidence Claim Pertaining to the Ballistics Evidence.

The DPD Defendants claim that Plaintiff cannot maintain the fabrication of evidence claim about the ballistics evidence. (ECF No. 93, PageID.1480). This claim suffers from the same problems as the DPD Defendants' arguments with respect to Larry Smith's alleged statement about wearing a hood, as will be explained below.

### A.   The DPD Defendants have not established the absence of a genuine issue of fact pertaining to the ballistics evidence.

With respect to the ballistics evidence, the DPD Defendants again have the summary judgment standard backwards. The DPD Defendants argue that Plaintiff cannot prove that any of the DPD Defendants fabricated the ballistics evidence. (ECF No. 93, PageID.1480). In fact, it is the DPD Defendants who must prove the absence of a genuine dispute of fact to be entitled to summary judgment. *See*

*Jackson*, 1991 WL 157247 at \*1.

The only fact referenced (although not cited) by the DPD Defendants is Larry Smith's deposition testimony, which they claim is contradicted by the record. (ECF No. 93, PageID.1480). The DPD Defendants fail, however, to explain what testimony from Mr. Smith is supposedly contradicted by the record. (*Id.*). The DPD Defendants therefore have not established the absence of a dispute of fact pertaining to the ballistics evidence, and are not entitled to summary judgment. *See Jackson*, 1991 WL 157247 at \*1.

### B. There is significant circumstantial evidence that the ballistic evidence was fabricated.

Due to the DPD Defendants' failure to establish the absence of a genuine issue of material fact relating to the ballistics evidence, Plaintiff should not have to present evidence of a dispute of fact. *See Jackson*, 1991 WL 157247 at \*1. Notwithstanding, Plaintiff will present the evidence showing that the ballistics evidence was fabricated.

Plaintiff acknowledges that there is no direct evidence showing that Defendants Karvonen, Mueller, Love, and Dembinski fabricated the ballistics evidence. The lack of direct evidence should not be a surprise given that police officers are extremely unlikely to admit to fabricating evidence or to admit committing perjury during a trial. Plaintiff can still prevail on the claim, however, because circumstantial evidence can be used to prove the fabrication of evidence.

*See Ferris v. City of Cadillac, Mich.*, 726 Fed.Appx. 473, 479 (6th Cir. Mar. 30, 2018) (recognizing that "whether evidence is 'fabricated' will often turn on circumstantial evidence."). In this case, there is substantial circumstantial evidence that the ballistics evidence was fabricated.

To begin with, there is the conflicting evidence about the number of .40 caliber shell casings allegedly found by the DPD at the scene of the murder of Kenneth Hayes. Defendant Karvonen wrote a DPD Evidence Technician report and testified at Larry Smith's trial claiming that he found <u>seven</u> casings. (ECF No. 94-3, PageID.1609; ECF No. 97-3, PageID.2283, 22:1-14). Defendant Mueller told a different story in his DPD Preliminary Complaint Record and at Mr. Smith's trial, claiming that he and Defendant Love found <u>five</u> casings. (Ex. B at p.2; ECF No. 97-4, PageID.2434-2435, 36:7-37:4). Defendant Love also prepared a DPD Preliminary Complaint Record claiming that he and Defendant Mueller found <u>five</u> casings. (Ex. C at p.2). Then there is the DPD Preliminary Complaint Record by Officer Erik D. Cox stating that <u>six</u> casings were found at the scene. (Ex. D at p.2). The fact that the DPD cannot get its story straight about the number of casings found at the scene creates an inference in Plaintiff's favor that the Defendants Karvonen, Mueller, and Love fabricated finding the casings.

Crucially, there is the fact that the alleged .40 caliber shell casing allegedly found in Larry Smith's bedroom has been destroyed and therefore cannot be

24

compared to the .40 caliber shell casings allegedly found at the scene of the murder of Kenneth Hayes. DPD Officer Keith Chisolm allegedly found a .40 caliber shell casing in Mr. Smith's bedroom. (Ex. E). For some unknown reason, the casing allegedly found in Mr. Smith's bedroom was destroyed on May 31, 2006. (Ex. F). The inference in Plaintiff's favor from the unexplained destruction of the casing is that the finding of the casing in Mr. Smith's bedroom was fabricated.

There also is the fact that the empty box of bullets which was allegedly found in Larry Smith's bedroom conveniently matched the caliber of the casings allegedly found at the scene the shooting Kenneth Hayes. Defendant Dembinski created a DPD Preliminary Complaint Record and testified at Mr. Smith's trial that he found an empty box of .40 caliber bullets in Mr. Smith's bedroom. (Ex. G at p.2; ECF No. 97-3, PageID.2306-2308, 45:25-47:4). DPD Officer David Pauch connected the dots at Mr. Smith's trial by testifying that the shell casings supposedly found at the scene could have come from the box allegedly found in Mr. Smith's bedroom. (ECF No. 97-3, PageID.2350, 89:2-20).

In addition, both Larry Smith and his mother Debra Smith (who owned the residence where Mr. Smith lived) denied that there were any .40 caliber bullet evidence in Mr. Smith's bedroom. Mr. Smith specifically denied have any .40 caliber shell casings or an empty box of .40 caliber bullets. (ECF No. 95-2, PageID.1718, 147:11-148:6; PageID.1719, 151:5-11). At Mr. Smith's trial, Debra

Smith testified that she routinely checked Mr. Smith's possessions to see what he brought into her home and that she never saw anything associated with a .40 caliber weapon. (ECF No. 97-4, PageID.2480, 82:2-9).

Finally, there is the fact that the only bullet found in the body of Kenneth Hayes was not a .40 caliber bullet but instead was a .32 caliber bullet which could not have been fired from a .40 caliber weapon. (ECF No. 97-3, PageID.2353-2354, 91:19-93:18). The reasonable inference in Plaintiff's favor from this fact is that Defendants Karvonen, Mueller, Love, and Dembinski sloppily fabricated evidence of .40 caliber shell casings while not realizing that Mr. Hayes was killed by a .32 caliber bullet.

In reply, DPD Defendants may argue that there were two shooters involved in the murder of Kenneth Hayes which explains the discrepancy between the .32 caliber and .40 caliber bullets. To begin with, the Court should reject any such argument because it was not presented in the DPD Defendants' initial brief (ECF No. 93, PageID.1480). *See Canfield*, 2014 WL 4662328 at *5. Moreover, there is no evidence of two shooters. In fact, witness Carl Voltz – who was sitting only a matter of feet from the shooter – testified that he saw only one shooter. (ECF No. 97-2, PageID.2197-2202, 77:5-82:6).

The Court also should consider the DPD Defendants' fabrication of ballistics evidence against Larry Smith in the context of the numerous problems in the DPD

Firearms Unit. In 2008, the MSP's audit of the DPD Firearms Unit resulted in some shocking findings. (Ex. H at pp.1-2). Among other problems, the MSP found that: (1) the DPD Forensic Services Laboratory was in non-compliance with 66 out of 101 criteria; (2) the DPD claimed to be able to analyze all ballistics evidence in a case, which is a highly uncommon result; (3) technical review within the DPD Firearms Unit was non-existent; (4) firearms evidence was unsecured and unprotected, leaving it subject to loss and contamination and compromising its integrity; (5) there was a lack of documentation supporting the conclusions of DPD firearms examiners; and (6) analytical reports were insufficiently specific and sometimes done after the fact (*Id.* at pp.2-10). Importantly, the MSP determined that the errors within the DPD Firearms Unit created "a strong likelihood of wrongful convictions." (*Id.* at p.3). A reasonable inference in Plaintiff's favor from these facts is that Mr. Smith was a victim of one of those wrongful convictions.

The facts set forth above about the ballistics evidence and all inferences from those facts must be construed in Plaintiff's favor. *See Savage*, 856 F.3d at 446. Furthermore, the Court should reject any new facts or arguments about the ballistics evidence offered by the DPD Defendants in their reply brief. *See Canfield*, 2014 WL 4662328 at *5. As a result, there is sufficient evidence for a reasonable jury to find that Defendants Karvonen, Mueller, Love, and Dembinski fabricated the ballistics evidence. Accordingly, the DPD Defendants are not

entitled to summary judgment on the fabricated ballistics evidence claim. *See McLean*, 224 F.3d at 800. At a minimum, the facts set forth above create a genuine dispute of fact regarding the ballistics evidence which should rule out summary judgment. *See* Fed. R. Civ. P. 56(a).

In their initial brief, the DPD Defendants repeat the argument that the state and federal courts have rejected Plaintiff's ballistic evidence claims during the criminal proceedings against Larry Smith. (ECF No. 93, PageID.1480). As set forth in Section II above, there is no preclusive effect from the criminal proceedings because Mr. Smith's conviction has been vacated.

### VII. There is No Reason to Dismiss Plaintiff's Fabrication of Evidence Claim Pertaining to Allen's False Statement and Testimony.

The DPD Defendants contend that Plaintiff cannot establish that they fabricated the false statement and false trial testimony of inmate informant Allen about Larry Smith confessing to the murder of Kenneth Hayes. (ECF No. 93, PageID.1481-1482). Once again, the DPD Defendants have it the wrong way because they must establish the absence of a genuine issue of material fact. *See Jackson*, 1991 WL 157247 at *1. Compounding their error, the DPD Defendants improperly construe the facts relating to Allen's statement and trial testimony in their favor. *See Savage*, 856 F.3d at 446. As will be set forth below, there is ample evidence that Defendant Childs fabricated Allen's statement and trial testimony.

To begin with, Allen provided significant information at his deposition in

this case regarding Defendant Childs's involvement in his fabricated statement and false testimony at Larry Smith's trial. Allen testified that lived at DPD headquarters because he was providing false confessions for the DPD and the WCPO. (ECF 95-4, PageID.1750, 10:23-11:23). In 1994, a WCPO prosecutor [Defendant Donaldson] spoke to Allen about falsely implicating Larry Smith in the murder of Kenneth Hayes. As Allen testified:

> And he [the prosecutor] want me to help him and Monica Childs help the codefendant beat the case and get Larry caught up. That's how I end up finding out the information I needed for the Larry case. And I went to court with Monica Childs and Larry got found guilty.

(ECF 95-4, PageId.1750, 12:23-13:12). Allen further testified that Defendant Childs provided him with the discovery package with the details surrounding the murder of Kenneth Hayes so that Allen's false testimony about Mr. Smith confessing to the crime would appear solid. (ECF No. 95-4, PageID.1750-1751, 13:13- 14:9). In fact, Allen had never even seen Mr. Smith until the WCPO prosecutor [Defendant Donaldson] and Defendant Childs showed Allen a picture of Mr. Smith so that Allen could identify Mr. Smith in court. (ECF No. 95-4, PageID.1759, 47:17-48:22). The information that Allen used to falsely implicate Mr. Smith was provided by Jay Clay [the co-defendant], the prosecutor [Defendant Donaldson] and Defendant Childs. (ECF No. 95-4, PageID.1764, 67:1-7). And Allen testified that Defendant Childs was happy after Mr. Smith was convicted on

the basis of Allen's false testimony. (ECF No. 95-4, PageID.1771, 96:23-97:10; PageID1772, 98:17-100:25). Allen admitted that his testimony against Mr. Smith was false, and that he falsely testified to fabricated confessions as part a scheme by the DPD and the WCPO. (ECF No. 95-4, PageID.1774, 106:18-107:4; PageID.1775-1776, 112:18-23 and 113:21-114:2).

Moreover, Allen's deposition testimony is consistent with an affidavit he signed in 2013. In the affidavit, Allen described how Defendant Childs solicited his false testimony:

> Shortly after Mr. Culpepper visited me in the jail, I got a visit from Monica Childs of the Detroit Police Department. She told me she wanted me to testify in the Larry Smith murder case. She said she knew the charges against me were bogus and that I could beat the case. If I could not beat the case, testifying in the Larry Smith case would be an insurance policy because my testimony would insure police help. She also promised me a spot on the 9th floor of the police department instead of the jail. Monica Childs told me that I would have to testify that Smith bragged about committing the crimes.

(ECF No. 101-3, PageID.3383 at ¶ 4). Allen also set forth Defendant Childs's improper purpose in fabricating Allen's false testimony:  "She was very pleased with my trial testimony and said, 'You put my name in lights.' She seemed to want Larry Smith in prison." (ECF No. 101-3, PageID.3384 at ¶ 8). Allen also described the benefits DPD witnesses on the 9th floor such as himself received in exchange for fabricating testimony, including food, drugs, conjugal visits, cigarettes, and the

ability to make telephone calls. (ECF No. 101-3, PageID.3384-3385 at ¶¶ 9-10). Lastly, Allen explained that the DPD would supply the police witnesses with the discovery packets from the criminal cases so that their false testimony would match the criminal charges. (ECF No. 101-3, PageID.3385 at ¶¶ 11).

The DPD Defendants question Allen's credibility by referring to his mental health status. (ECF No. 93, PageID.1481, n.5). Leaving aside that the DPD Defendants fail to offer any evidence that Allen's mental health status has any effect on his deposition testimony or affidavit, the DPD Defendants' attack on Allen's credibility is improper in a motion for summary judgment. *See Savage*, 856 F.3d at 446. Indeed, the Court must construe Allen's deposition testimony, his affidavit, and all inferences therefrom in Plaintiff's favor. *See id*. Because a reasonable jury could rely upon Allen's deposition testimony and affidavit to conclude that Defendant Childs fabricated Allen's statement about Larry Smith confessing to the murder of Kenneth Hayes, summary judgment is inappropriate. *See McLean*, 224 F.3d at 800. At least, Allen's deposition testimony and affidavit create a genuine issue of material fact pertaining to Defendant Childs's fabrication which prevents summary judgment. *See* Fed. R. Civ. P. 56(a).

The DPD Defendants also attempt to pin the blame for Allen's false statement and false trial testimony on Otis Culpepper, the attorney for Larry Smith's co-defendant. (ECF No. 93, PageID.1481-1482). Whether or not Mr.

Culpepper was involved is irrelevant. At issue here is Defendant Childs's role in fabricating Allen's statement and trial testimony.

## VIII.  There is No Reason to Dismiss Plaintiff's Malicious Prosecution Claim.

According to the DPD Defendants, Plaintiff cannot maintain his malicious prosecution claim because:  (a) there was probable cause to charge Larry Smith for the murder of Kenneth Hayes; (b) the DPD Defendants did not influence or participate in the decision to prosecute Mr. Smith; and (c) the criminal case did not terminate in Mr. Smith's favor. (ECF No. 93, PageID.1482-1485). The DPD Defendants are wrong on all three counts.

### A.    The Court does not need to make the probable cause determination.

There is no requirement for the Court to address the issue of probable cause for the prosecution of Larry Smith. As the Court has already recognized, a determination of the absence of probable cause is not necessary when a malicious prosecution claim is based upon fabricated evidence. (2:17-cv-13062, ECF No. 307, PageID.14905-14906) (citing *Sykes v. Anderson*, 625 F.3d 294, 315-16 (6th Cir. 2010). Because Plaintiff's malicious prosecution claim is based upon the DPD Defendants' fabrication of evidence, there is no need for the Court to determine whether there was probable cause for the prosecution of Mr. Smith. (*See* 2:17-cv-13062, ECF No. 307, PageID.14905-14906).

**B.      The DPD Defendants influenced and participated in the prosecution of Larry Smith.**

The DPD Defendants again have the summary judgment burden reversed by arguing that Plaintiff cannot show that the they instituted or maintained the criminal proceedings against Larry Smith. (ECF No. 93, PageID.1484). In fact, it is the DPD Defendants who must demonstrate the absence of a dispute of fact pertaining to the malicious prosecution claim. *See Jackson*, 1991 WL 157247 at *1. The DPD Defendants' argument pertaining to whether they influenced or participated in the prosecution Mr. Smith is totally devoid of citation to the record. (ECF No. 93, PageID.1484). As a result, there should be no question that the DPD Defendants have failed to establish the absence of disputed fact and are not entitled to summary judgment. *See Jackson*, 1991 WL 157247 at *1.

Because the DPD Defendants have not met their burden to establish the lack of a disputed fact, Plaintiff should not be required to present any evidence. *See Jackson*, 1991 WL 157247 at *1. Nevertheless, Plaintiff refers to the facts set forth in Section VI(B) pertaining to Defendants Karvonen, Mueller, Love, and Dembinski fabricating the ballistics evidence. This fabricated evidence was included in the DPD Investigator's Report/Request for Warrant which the DPD Defendants concede influenced the prosecution of Larry Smith. (ECF No. 95-11, PageID.1793, Numbers 7&8, 13, and 14). And as set forth in Section VII above, Defendant Childs participated in the prosecution of Mr. Smith by working with

Defendant Donaldson on the fabrication of Allen's statement and testimony. Because a jury could reasonably rely upon these facts to find that the DPD Defendants influenced and participated in the prosecution of Mr. Smith, summary judgment is not proper. *See McLean*, 224 F.3d at 800. There is at a minimum a genuine dispute as to the DPD Defendants involvement in the criminal prosecution of Mr. Smith, precluding summary judgment. *See* Fed. R. Civ. P. 56(a).

### C. The criminal proceedings against Larry Smith ended with a favorable termination.

The DPD Defendants claim that Larry Smith did not achieve a favorable termination when his criminal case was dismissed because the case needed to end with a finding that Mr. Smith was not guilty or innocent. (ECF No. 93, PageID.1484-1485). The United States Supreme Court disagrees.

In *Thompson v. Clark*, the Supreme Court held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." 142 S. Ct. 1332, 1341 (2022). Instead, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson*, 142 S. Ct. at 1341. Here, the criminal prosecution of Mr. Smith ended without a conviction because Mr. Smith's conviction was vacated. (ECF No. 102-7, PageID.3505-3506). Plaintiff therefore has satisfied the favorable termination requirement for the malicious prosecution claim. *See Thompson*, 142 S. Ct. at 1341.

The DPD Defendants attempt to get around the holding of *Thompson* by criticizing the manner in which Larry Smith's conviction was vacated. (ECF No. 93, PageID.1467-1468). As explained in Section I above, the Court lacks the authority to review the Michigan state court decision vacating Mr. Smith's conviction. Regardless, there is nothing in *Thompson* suggesting any procedural requirement for how a criminal prosecution ends. The only requirement is that the prosecution end without a conviction. *See Thompson*, 142 S. Ct. at 1341. Because the criminal prosecution of Mr. Smith ended without a conviction, Plaintiff may bring the malicious prosecution claim. *See id.*

## IX.    There Is No Reason to Dismiss Plaintiff's Conspiracy Claim.

The DPD Defendants present four arguments for the dismissal of Plaintiff's conspiracy claim:  (a) the claim is insufficiently pleaded; (b) Plaintiff cannot prove that the DPD Defendants conspired among themselves or any other defendant; (c) Plaintiff's other claims should be dismissed so the conspiracy claim also should be dismissed; and (d) the claim is time-barred. (ECF No. 93, PageID.1485-1487). All four arguments should fail.

First, the DPD Defendants' complaint about insufficient pleading is misplaced. (ECF No. 93, PageID.1486). To begin with, the DPD Defendants' criticism of Plaintiff's Amended Complaint for containing insufficient details is flawed because they rely upon only three paragraphs of the Amended Complaint

where Plaintiff set forth the legal elements of the conspiracy claim. (ECF No. 93, PageID.1486) (citing ECF No. 93-2, PageID.1522-1523 at ¶¶ 173-175). The DPD Defendants ignore the multitude of facts in the Amended Complaint pertaining to their actions in violating the constitutional rights of Larry Smith. (ECF No. 23, PageID.176-184 at ¶¶ 13-69). More importantly, the DPD Defendants' opinion of the Amended Complaint is irrelevant because they have brought a motion for judgment, not a motion to dismiss.

Second, the DPD Defendants' assertion that Plaintiff cannot prove the conspiracy claim is another example of having the summary judgment standard in reverse. The DPD Defendants bear the initial burden of establishing the lack of disputed fact. *See Jackson*, 1991 WL 157247 at *1. With only a short paragraph devoid of the facts from the record  (ECF No. 93, PageID.1486), the DPD Defendants have not met their burden and are not entitled to summary judgment. *See id.* Plaintiff therefore should not have to present any facts about the conspiracy. *See id.* In spite of the DPD Defendants' failure, Plaintiff refers to Section VI(B) above which discussed how Defendants Karvonen, Mueller, Love, and Dembinski worked together to fabricate the .40 caliber shell casing evidence and to Section VII above about Defendant Childs working with Defendant Donaldson on the fabrication of Allen's statement and trial testimony. Plaintiff therefore has presented sufficient evidence for a reasonable jury to find in Plaintiff's favor on the

conspiracy claim, making summary judgment improper. *See McLean*, 224 F.3d at 800. At a minimum, there are disputes of fact on the conspiracy claim preventing summary judgment. *See* Fed. R. Civ. P. 56(a).

Third, with respect to the DPD Defendants' contention that the conspiracy claim should be dismissed because Plaintiff's other claims should be dismissed (ECF No. 93, PageID.1487), Plaintiff refers to Sections IV-VIII above for why Plaintiff's other claims should not be dismissed.

Fourth, Plaintiff's conspiracy claim is not time-barred by the three-year statute of limitations. The DPD Defendants' argument is apparently based upon the assumption that the claim accrued in 1994. (ECF No. 93, PageID.1487). Plaintiff's conspiracy claim and the underlying claims upon which it is based in fact did not accrue until the criminal charges against Larry Smith were dismissed. *See Hoskins*, 2018 WL 1352163 at *18. Because the charges against Mr. Smith were not dismissed until November 4, 2021 (ECF No. 102-7, PageID.3505-3506), the conspiracy claim brought in Plaintiff's Amended Complaint on January 27, 2022 (ECF No. 23, PageID.199-200) was well within the three-year statute of limitations. *See id.*

The DPD Defendants did not present any facts or arguments pertaining to the accrual date for Plaintiff's conspiracy claim in their initial brief. (ECF No. 93, PageID1487). As a result, the Court should accept any facts or arguments about the

accrual date raised for the first time in the DPD Defendants' reply brief. *See Canfield*, 2014 WL 4662328 at *5.

## X. There is No Reason to Dismiss Plaintiff's Failure to Intervene Claim.

Without explanation or any cite to the record in this case, the DPD Defendants argue that Plaintiff has not specified how they failed to intervene. (ECF No. 93, PageID. 1487-1488). And again the DPD Defendants have reversed the summary judgment standard, because it is their burden to establish the absence of a genuine issue of material fact. *See Jackson*, 1991 WL 157247 at *1. Because the DPD Defendants have failed to meet their burden, they are not entitled to summary judgment. *See id.* Plaintiff therefore should not have to present any facts supporting the failure to intervene claim. *See id.* Despite the DPD Defendants' failure, Plaintiff refers to Section VI(B) above for facts on how Defendants Karvonen, Mueller, Love, and Dembinski had the opportunity to but failed to intervene in each other's fabrication of the ballistics evidence and to Section VII above for how Defendant Childs had the opportunity to but failed to intervene in Defendant Donaldson's fabrication of Allen's statement and testimony.

## XI. There Is No Reason to Dismiss Plaintiff's Michigan State Law Malicious Prosecution Claim.

Because the elements of the federal law and Michigan state law claim are the same, the DPD Defendants contend that Plaintiff's Michigan state law malicious prosecution claim should be dismissed for the same reasons why the federal

malicious prosecution claim should be dismissed. (ECF No. 93, PageID.1489-1490). In response, Plaintiff refers to Section VIII above for why Plaintiff's federal malicious prosecution claim should not be dismissed.

The DPD Defendants also point to the additional element of malice for the Michigan state law malicious prosecution claim, and argue without citing to the record that Plaintiff has not pleaded or shown that they acted with malice. (ECF No. 93, PageID.1490). The DPD Defendants again skip over the fact that it is their burden to establish a lack of disputed fact with respect to the malice element. *See Jackson*, 1991 WL 157247 at *1. Summary judgment on the claim therefore not proper. *See id.*

Plaintiff should not be required to show any evidence of malice due to the DPD Defendants' failure to establish the lack of disputed fact. S*ee Jackson*, 1991 WL 157247 at *1. Nevertheless, Plaintiff presents the following. The additional element of the Michigan state law malicious prosecution claim can be established by showing that a defendant acted with malice or with "a primary purpose other than bringing the offender to justice." *Koski v. Vohs*, 137 Mich.App. 491, 358 N.W.2d 620, 627 (1984), *rev'd on other grounds*, 426 Mich. 424, 395 N.W.2d 226 (1986). Allen testified in this case that after Larry Smith was found guilty, Defendant Childs was happy because Allen put her name in lights. (ECF 95-4, PageID.1771, 96:23-97:10). A reasonable inference in Plaintiff's favor from

Allen's testimony is that the DPD Defendants acted not with the purpose of bringing the killer of Kenneth Hayes to justice, but instead to achieve recognition. Because a reasonable jury could rely upon this testimony to determine that the DPD Defendants acted with a purpose other than to bring Mr. Hayes's killer to justice, summary judgment on the Michigan state law malicious prosecution claim is not appropriate. *See Canfield*, 2014 WL 4662328 at *5. At a minimum, this testimony creates a dispute of fact which precludes summary judgment. *See* Fed. R. Civ. P. 56(a).

The DPD Defendants also argue that the two-year statute of limitations for Plaintiff's Michigan state law malicious prosecution claim expired in 1996 because the claim accrued when Larry Smith was arrested in 1994. (ECF No. 93, PageID.1490). This argument is incorrect because a cause of action does not accrue until the plaintiff can plead all elements of the claim. *Moll v. Abbot Laboratories*, 444 Mich. 1, 506 N.W.2d 816, 824 (1993), *abrogated on other grounds by Trentadue v. Buckler Automatic Lawn Sprinkler Co.*, 479 Mich. 378, 738 N.W.2d 664 (2007). Here, Mr. Smith could not plead the favorable termination element of the malicious prosecution claim until his conviction was vacated on November 4, 2021 (ECF No. 102-7, PageID.3505-3506). The malicious prosecution claim therefore did not accrue until November 4, 2021. *See Moll*, 506 N.W.2d at 824. Plaintiff therefore brought the malicious prosecution claim on

January 27, 2022 (ECF No. 23, PageID.203-204) before the two-year statute of limitations expired. *See Moll*, 506 N.W.2d at 824.

## XII. There Is No Reason to Dismiss Plaintiff's Michigan State Law Abuse of Process Claim.

The DPD Defendants assert that that Plaintiff's abuse of process claim is barred by the three-year statute of limitations. (ECF No. 93, PageID.1490). In support of this assertion, the DPD Defendants rely upon *Howard v. Trott & Trott, P.C.*, 2012 WL 3966274 (Mich. Ct. App. Sept. 11, 2012) where the court barred the claim because it was brought six years after an eviction hearing "which was the culmination of the allegedly abusive events." (*Id.*). The DPD Defendants then claim that Larry Smith's trial was the culmination of the abusive events in this case, so Plaintiff's abuse of process claim is time-barred. (*Id.*).

Contrary to the claim of the DPD Defendants, the culmination of the abusive process in this case did not occur until November 4, 2021 when Larry Smith's conviction was vacated and he was released from prison. (ECF No. 102-7, PageID.3505-3506). Accordingly, Plaintiff's abuse of process claim brought on January 27, 2022 (ECF No. 23, PageID.203-204) is timely.

## XIII. There Is No Reason to Dismiss Plaintiff's Michigan State Law Intentional Infliction of Emotional Distress Claim.

The DPD Defendants argue that Plaintiff's Michigan state law intentional infliction of emotional distress claim is barred under the three-year statute of

limitations because the wrong which is the basis of the claim occurred in 1994.

(ECF No. 93, PageID.1490-1491). One of the cases cited by the DPD Defendants

for their argument states that "[t]he time of the wrong that triggers the running of

the limitation period is the date on which the plaintiff was harmed by the

defendant's act." *Nelson v. Ho*, 222 Mich.App. 74, 564 N.W.2d 482, 487 (1997).

Here, the wrong suffered by Larry Smith continued until his conviction was

vacated and he was released from prison on November 4, 2021. (ECF No. 102-7,

PageID.3505-3506). As a result, Plaintiff brought the malicious prosecution claim

on January 27, 2022 (ECF No. 23, PageID.203-204) before the three-year statute

of limitations expired.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny

the DPD Defendants' motion for summary judgment.

Date:  August 28, 2023          s/Jarrett Adams
                                Jarrett Adams, Esq.
                                New York State Bar Number 5455712
                                Law Offices of Jarrett Adams, PLLC
                                40 Fulton Street, Floor 28
                                New York, NY 10038
                                jadams@jarrettadamslaw.com
                                (646) 880-9707
                                *Attorney for Plaintiff, Larry Smith*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2023, I caused a true and correct copy of the foregoing to be served upon all counsel of record via the CM/ECF system for the United States District Court for the Eastern District of Michigan.

Respectfully submitted this 28th day of August, 2023.

s/Jarrett Adams
Jarrett Adams, Esq.
New York State Bar Number 5455712
Law Offices of Jarrett Adams, PLLC
40 Fulton Street, Floor 28
New York, NY 10038
jadams@jarrettadamslaw.com
(646) 880-9707
*Attorney for Plaintiff, Larry Smith*